# NONPROFi. ORGANIZATION LIABILITY I..SURANCE

## *First Specialty Insurance Corporation*

A Stock Company
5200 Metcalf
Overland Park, Kansas  66201
(800) 241-3470

### *PLEASE READ THIS POLICY CAREFULLY*

**NOTICE:  THIS IS A CLAIMS MADE POLICY.  EXCEPT AS MAY BE OTHERWISE PROVIDED HEREIN, THIS COVERAGE IS LIMITED TO LIABILITY FOR ONLY THOSE CLAIMS WHICH ARE FIRST MADE AGAINST THE INSURED AND REPORTED TO THE COMPANY WHILE THIS POLICY IS IN FORCE.**

*DECLARATIONS*

Customer Number: 80018133

Policy No.: <u>NPA-000122-3</u>
Renewal of: <u>NPA-000122-2</u>

Item 1.     Named Insured: Cellular Telecommunications Industry Association
                                   The Wireless Foundation

Item 2.     Mailing Address: 1250 Connecticut Avenue N.W.
                                      Suite 800
                                      Washington, DC  20036

Item 3.     Policy Period:        Effective Date:   June     1, 2000

                                         Expiration Date: June     1, 2001
                                         12:01 a.m. Standard Time At The Address Stated Herein

Item 4.     Retention:          $ 25,000          each loss

Item 5.     Limits of Liability:   $ 7,000,000      each loss and aggregate for each Policy Period

Item 6.     Premium:            $ 60,217

The Declarations page and the forms listed below and attached hereto, together with the completed and signed proposal shall constitute the contract between the Insured(s) and the Company.

Forms and endorsement made a part of this policy are listed on the attached Schedule 1A.

_____
Authorized Representative Countersignature

<u>August   8, 2000</u>
Date

COPY
FSIC-I- 3801 (11/98)

SCHEDULE 1A

SCHEDULE OF FORM(S) AND ENDORSEMENT(S)

NAMED INSURED: Cellular Telecommunications Industry Association POLICY NO: NPA-000122-3
CUSTOMER NO:  80018133                    RENEWAL OR REPLACEMENT OF:  NPA-000122-2

| | |
|---|---|
| FSIC-I-3803 (11/98) | Policy - Accreditation |
| FSIC-MANU(11/98) | Claims Reporting Procedure Endorsement |
| FSIC-MANU(11/98) | Service of Suit |
| FSIC-MANU(11/98) | Marital Estate |
| FSIC-MANU(11/98) | Amendment of Exclusion C |
| FSIC-MANU(11/98) | Vicarious Liability |
| FSIC-MANU(11/98) | Addition of Insured |
| FSIC-I-3829(11/98) | Punitive Damages Coverage |
| FSIC-Y203(07/98) | Year 2000 Amendatory Endorsement |
| FSIC-I-3824(11/98) | Coverage for Nonmonetary Claims Endorsement |
| FSIC-I-3870(11/98) | Prior/Pending Litigation Exclusion |

COPY

FSIC-I-3802 (11/98)

*First Specialty Insurance Corporation*

**POLICY**

## NONPROFIT ORGANIZATION PROFESSIONAL SERVICES LIABILITY INSURANCE
### (INCLUDING ERRORS AND OMISSIONS LIABILITY)

### THIS IS A CLAIMS MADE AND REPORTED POLICY.
### PLEASE READ YOUR POLICY CAREFULLY.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we," "us," and "our" refer to the company providing this insurance.

The word "insured" means any person or organization qualifying as such under **Section IV. DEFINITIONS**, Paragraph E.

Other words and phrases that appear in quotation marks have special meaning. Refer to **DEFINITIONS, (Section IV)**.

In consideration of the payment of premium and in reliance upon the statements in the application attached hereto and made a part hereof, and subject to the limit of liability set forth in the Declarations, and subject to all of the terms, conditions, and exclusions of this policy, we agree with the "insured" as follows:

**INSURING AGREEMENTS**

**I.    COVERAGE**

We will pay on behalf of the "insureds" all "loss" which the "insureds" shall be legally obligated to pay as a result of any "claim" or "claim(s)" made against the "insured" due to a "wrongful act", provided that the "claim" is first made during the "policy period" and written notice of the "claim" is received by us during the "policy period", within sixty (60) days thereafter, or during the discovery period.

**II.    DEFENSE, INVESTIGATION AND SETTLEMENT OF CLAIMS**

As respects such insurance as is afforded by this policy, we shall:

A.    have the right and duty to select counsel and arbitrators and to defend any "claim" against the "insured(s)" for "loss," even if such "claim" is groundless, false, or fraudulent and shall have the right to make such investigation, negotiation, and settlement, subject to Section II(B) below, of any "claim" as it deems expedient.

B.    not settle any "claim" without the written consent of the "insured(s)," which consent shall not be unreasonably withheld.  If, however, the "insured" refuses to consent to a settlement recommended by us and elects to contest the "claim" or continue legal proceedings in connection with such "claim," our liability shall not exceed the amount for which the "claim" could have been settled, including "claims expenses" incurred up to the date of such refusal, or the applicable limit of liability, whichever is less;

C.    not be obligated to pay for any "loss" or defend or continue to defend any "claim" after our liability has been exhausted by payment of "loss," or by deposit of the applicable limit of liability in a court of competent jurisdiction.

D.    pay premiums on appeal bonds required in any action or suit brought against the "insured" alleging a "wrongful act," and/or premiums on bonds to release attachments for an amount not in excess of the limit of liability, but without any obligation to apply for or furnish any such bonds.

COPY

FSIC-1-3803 (11/98)

E.    pay all reasonable expenses, other than loss of earnings or employee salaries, incurred by the "insured" at our request.

## III.    TERRITORY

This policy applies to "wrongful act(s)" committed anywhere in the world provided the "claim" is made and suit or arbitration proceedings are brought against the "insured" in the United States of America, its territories or possessions, or Canada.

## IV.    DEFINITIONS

A.    "Claim" means any demand made upon the "insured" for monetary damages, whether formal or informal, written or oral, as a result of a "wrongful act."

B.    "Claims expenses" shall mean fees charged by any lawyer designated by us and, if authorized by us, all other fees, costs, and expenses resulting from investigation, adjustment, defense, and appeal of any "claim," suit, or proceeding. "Claim expenses" shall not include salaries and expenses of employees or officials of the "insured" associated with the defense and investigation of a "claim."

C.    "Employment practices claim(s)" means any "claim" brought by:

1.    An applicant for employment with the "entity";

2.    Employee of the "entity"; or

3.    Former employee of the "entity",

wherein one or more of the following are alleged:

a.    Breach of actual or implied contract of employment;

b.    Violation of anti-discrimination statutes, including harassment;

c.    Libel or slander related to any employment relationship with the "entity";

d.    Retaliation for the exercise of a public right or duty;

e.    Intentional or negligent infliction of emotional distress arising out of any employment relationship with the "entity";

f.    Wrongful failure to hire or promote, wrongful demotion or discipline, or wrongful termination;

g.    Employment-related misrepresentation(s) to an employee or applicant for employment; or

h.    Wrongful deprivation of career opportunity, negligent employee evaluation, including the giving of negative or defamatory statements in connection with an employee reference.

D.    "Entity" shall mean only the nonprofit organization, association, or corporation which is named in the Declarations and is legally constituted at the inception date of this policy and any nonprofit subsidiaries formed or acquired after the inception date of this policy, subject to written advice to us within 120 days of acquisition or formation and payment of any additional premium as may be required.

COPY
FSIC- I -3803 (11/98)

E.  "Insured(s)" means the "entity" named in the Declarations and any individual who was, now is, or shall be a director, officer, employee, or volunteer of the "entity" and shall include any executive board member or committee member whether salaried or not.    "Insured" shall also include the estates, heirs, legal representatives, or assigns of the "insureds" in the event of their incompetency, insolvency, or bankruptcy.

"Insured" shall also include those "insureds" serving on the board of an entity other than listed in the Declarations provided that such outside entity is tax exempt, the appointment of the "insured" to the outside entity is based solely upon that person's being an employee, officer, director, or trustee of the "entity" listed in the Declarations, and the "entity" directs the "insured" to serve on the outside entity.

F.  "Loss" shall mean any amount which the "insured(s)" are legally obligated to pay, or which the "entity" shall be required or permitted by law to pay, as indemnity to the "insured(s)" for any "claim" or "claim(s)" made against them for "wrongful act(s)" and shall include, but not be limited to monetary damages, judgments, settlements, and "claims expenses." "Loss" shall not include the following:

1.  Punitive or exemplary damages or the multiplied portion of any damage award;

2.  Criminal nor civil fines or penalties;

3.  Taxes;

4.  Matters deemed uninsurable under the law pursuant to which this policy shall be construed.

G.  "Personal injury" means malicious prosecution, defamation, libel, slander, a publication or utterance in the course of or related to publishing, broadcasting, or advertising activities, emotional distress, humiliation, mental anguish, loss of reputation, or embarrassment.

H.  "Policy period" shall mean the period of time shown in the Declarations or any amendments thereto.

I.  "Professional services" means accreditation, certification, credentialing, peer review, self regulation, professional assessment, program sponsoring, or standard setting activities, and includes those functions identified in the Application for this Policy as "Professional Services" conducted by or on behalf of the "entity" or any "insured."

J.  "Subsidiary" shall mean any nonprofit organization, association, or corporation of which the "entity" named in item A of the Declarations Page owns more than 50% of the outstanding voting stock or appoints 50% or more of the board of directors.

K.  "Wrongful act" shall mean any actual or alleged error or omission, misstatement, misleading statement, discrimination, harassment, civil rights violations, breach of duty, or negligent act committed by an "insured," "employment practice claim," or "personal injury" based upon or arising out of the (non)performance of "professional services" on behalf of the "entity."

## V.  EXCLUSIONS

This policy does not apply to:

A.  Any "claim" based upon or arising out of the gaining of any personal profit or advantage to which the "insured" is not legally entitled.  However, notwithstanding the foregoing, the "insureds" shall be protected under the terms of this policy as to any "claims" upon which suit is brought against them by reason of any alleged gain of personal profit or advantage to which they were not legally entitled, unless a judgment or other final adjudication thereof adverse to the "insureds" shall establish that acts of active and deliberate gaining of personal profit or advantage with actual purpose and intent were material to the cause so adjudicated;

COPY
FSIC-1-3803 (11/98)

B.  Any "claim(s)" based upon, arising out of, or attributable to any "insured" committing in fact any fraudulent or dishonest act, however, notwithstanding the foregoing, the "insured(s)" shall be protected under the terms of this policy as to any "claim(s)" upon which suit is brought against them by reason of any alleged dishonesty on the part of the "insured(s)," unless a judgment or other final adjudication thereof adverse to the "insured(s)" shall establish that acts of active and deliberate dishonesty committed by the "insured(s)" with actual dishonest purpose and intent were material to the cause of action so adjudicated;

C.  Any "claim" alleging "loss" based upon, arising from or caused by bodily injury, sickness, disease, or death. However, we shall pay for "claims" expenses associated with "claim(s)" arising from or caused by sickness, disease, or death which is based upon, attributable to, or arising out of the (non)performance of "professional services" by the "insured(s)."

D.  Any "claim" alleging loss to or criminal abstraction of, damage to, or destruction of any tangible property or the loss of use of such property by reason of the foregoing;

E.  Any "claim" alleging the willful violation of any statute or ordinance committed by or with the knowledge or consent of an "insured";

F.  Any "claim" arising out of the discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials, or other irritants, contaminants, or pollutants into or upon land, the atmosphere, or any watercourse or body of water, to include ground water;

G.  Any "claim" arising out of the "insured(s)" activities in a fiduciary capacity as respects to any employee benefit plan, including ERISA liability;

H.  Any "claims" for breach of any oral, written, or implied contract between the "insured(s)" and any other person unless liability would exist in the absence of such contract. This exclusion does not apply to any oral, written, or implied contract relating to an "employment practices claim" as defined herein.

I.  Any "claims," demands, or actions seeking relief or redress for either a willful, knowing, intentional, tortuous, or negligent breach of or failure to perform in whole or in part any oral, written, or implied contract between the "insureds" and any other person, except any oral, written, or implied contract relating to that persons employment by the "insured."

J.  Any "claim" directly or indirectly based upon, arising out of, or related to:

   (a)  asbestos or any asbestos related injury or damage;

   (b)  any alleged "wrongful act" involving asbestos, its use, exposure, presence, existence, detection, removal, elimination, or avoidance; or

   (c)  the use, exposure, presence, existence, detection, removal, elimination, or avoidance of asbestos in any environment, building, or structure.

## VI.  ENTIRE AGREEMENT

A.  It is agreed that the particulars and statements contained in the written application, a copy of which is attached hereto, and the declarations are reaffirmed as of the inception date of this policy.

B.  Any fact pertaining to any "insured" shall not be imputed to any other "insured" for the purpose of determining the application of any of the exclusions in Section V and any amendments thereto.

C.  In issuing this policy, we have relied on the declarations and statements which are contained in the application (a copy of which is attached hereto) and which are deemed to be incorporated in this policy, provided,

COPY

however, that except for material circumstances known to the person who subscribed the application, any misstatement or omission in such application in respect of a specified "wrongful act" by a particular "insured," or his cognizance of any manner which he has reason to suppose might afford grounds for a future "claim" against him, shall not be imputed to any other "insured" for purposes of determining the availability of coverage under this policy.

## VII.  LIMIT OF LIABILITY

A.  All "claims expenses," judgments, awards, and "claim(s)" for prejudgment interest are included within the policy limits.  Payment of "claims expenses," judgments, awards, or prejudgment interest reduces the policy limits by the amount paid;

B.  The limit of liability specified in the Declarations shall be the maximum liability for any one  "claim" and shall be the aggregate limit for each policy year;

C.  We shall only be liable to pay, subject to the limits of liability, for "loss" in excess of the retention stated in the Declarations for each and every "loss" hereunder.  The "insured" agrees that such retention shall be uninsured;

D.  The retention may only be satisfied by an actual cash payment by the "entity" or the "insured(s)."  The retention may not be satisfied by the release or waiver of a "claim" or counterclaim;

E.  In the event this policy is extended in accordance with the provisions of the discovery period, our total liability shall not exceed the aggregate limit of liability stated in the Declarations.

## VIII.  DISCOVERY PERIOD

If we shall cancel or refuse to renew this Policy, or the "entity" or the "insured" cancels or does not renew the policy, the "entity" or the "insured(s)" shall have the right, upon payment, of an additional premium of 75% of the premium hereunder, to an extension of the coverage granted by this policy in respect of any "claim" or "claim(s)" which may be made against the "insured(s)" during the period of twelve (12) calendar months following the date of such cancellation or non-renewal, but only in respect of any "wrongful act" which occurred before the date of such cancellation or non-renewal; provided, however, that the application for this extension is made to us in writing and payment of the premium is received within sixty (60) days of the effective date of cancellation or the expiration date of the policy.  The purchase of the discovery period shall not increase the limit of liability stated in the Declarations. The limit of liability for any "claim(s)" reported during the discovery period shall be part of and not in addition to the limit of liability.

## IX.  INSUREDS DUTIES PRECEDENT TO COVERAGE

As a condition precedent to the availability of coverage under this policy the "insured's" duties in the event of a claim are as follow:

A.  Upon receipt of a claim, the "insured" must give written notice, as required above which shall not be deemed received unless sent by prepaid mail properly addressed to:

> First Specialty Insurance Corporation
> c/o Westport Insurance Corporation
> 181 West Madison, Suite 2600
> Chicago, IL  60602
> Attention:  NPD&O Claims Department

COPY

FSIC- I -3803 (11/98)

B.    No insurance agent or broker is authorized to act as our agent to receive written or oral notice of "loss," and any notice given to an insurance agent or broker shall not be deemed notice to us.

C.    The "entity" or any "insured" shall not, except at their own cost or without our prior written consent, make any payment, admit liability, settle any "claim," assume any obligation or incur any "claims expenses" of any kind.

## X.    INSURED(S) DUTIES SUBSEQUENT TO CLAIM

The "insured" shall, as a condition to the "insured(s)" right to be defended or indemnified under this policy, cooperate with us in the defense, investigation, and settlement of any claim, and shall submit to us, upon request, any information we require in the investigation and defense of such "claim."

## XI.    REPORTING OF POTENTIAL CLAIMS

A.    If during the "policy period" or during the extended discovery period:

1.    The "entity" or "insured" shall receive written or oral notice from any party that it is the intention of that party to hold one or more "insured(s)" responsible for the results of any "wrongful act" alleged to have been done by the "insured(s)" while acting in their insured capacity or

2.    The "entity" or any "insured" shall become aware of any occurrence which may subsequently give rise to a "claim" being made against an "insured" for any alleged "wrongful act";

Then the "entity" or the "insured" shall, as soon as practicable during the policy period, sixty (60) days thereafter, or during the discovery period, give written notice to us of the receipt of the notice under Clause XI (A1) or the occurrence under Clause XI (A2) of the policy.

B.    Upon our receipt of the "insured's" written notice, any "claim" subsequently made against the "entity" or the "insured" arising out of the "wrongful act" shall be treated as a "claim" made during the "policy period" in which the notice was given, or sixty (60) days thereafter, or if given during the discovery period, then as a "claim" made during the discovery period. Written notice of a potential "claim" shall include:

1.    The specific "wrongful act" including the date(s) thereof; and

2.    The "loss" that may reasonably result; and

3.    The date and circumstances by which any "insured" became aware of the "wrongful act."

## XII.    CANCELLATION

This policy may be canceled by the "entity" for itself and all other "insured(s)" by surrender thereof to us or any of its authorized agents, or by mailing to us written notice stating when thereafter the effective date of cancellation. If the policy is canceled by the "entity" or any "insured," we shall retain the customary short rate proportion of the premium.

If we cancel or refuse to renew this policy, we shall mail to the "entity" at the last mailing address known by us, written notice stating when, not less than sixty (60) days thereafter, such cancellation shall be effective, or not less than ten (10) days notice when the cancellation is being effected by reason of the "insured's" non-payment of premium. The mailing of notice aforementioned shall be sufficient notice. The notice of cancellation will state the reasons for cancellation. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the "policy period." If we cancel, earned premium shall be computed pro-rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter, but payment or tender of unearned premium is not a condition of cancellation.

**XIII. CONFORMANCE WITH STATE STATUTES**

Terms of this policy which are in conflict with the statutes of the state wherein this policy is issued are hereby amended to conform to such statutes.

**XIV. ACCEPTANCE**

By acceptance of this policy, the "entity" and the "insured(s)" agree that this policy embodies all agreements existing between themselves and us or any of our agents relating to this insurance.

**XV. OTHER INSURANCE**

If the "entity" or any "insured" has other insurance insuring against a "loss" covered by this policy, the insurance provided by this policy shall apply in excess of such other insurance.

**XVI. ACTION AGAINST US**

No action shall be brought against us unless as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, and until the amount of the "insured's" obligation to pay shall have been finally determined either by judgment against the "insured(s)" after actual trial or by written agreement of the "insured(s)," the claimant, and us.

**XVII. SUBROGATION**

In the event of any payment under this policy, we shall be subrogated to all the "insured's" rights of recovery therefore against any person or organization. The "insured(s)" shall execute and deliver such instruments and papers and do whatever else is necessary to secure such rights. The "insured(s)" shall do nothing after "loss" to prejudice such rights.

**XVIII. CHANGES**

Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy, or estop us from asserting any right under the terms of this policy, nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of the policy.

**XIX. ASSIGNMENT**

Assignment of interest under this policy shall not bind us until its consent is endorsed hereon.

**XX. AUTHORIZATION CLAUSE AND NOTICES**

By acceptance of this policy, all "insured(s)" agree that the "entity" shall act on behalf of all "insured(s)" with respect to the giving and receiving of notice of "claim" or cancellation, the payment of premiums and the receiving of any return premiums that may become due under this policy. Notice to that individual named in the proposal at the address of the "entity" shall also constitute notice to all "insureds."

**XXI. NUCLEAR ENERGY LIABILITY EXCLUSION (BROAD FORM)**

It is agreed that the policy does not apply:

A.    Under any Liability Coverage, to injury, sickness, disease, death, or destruction

1.    with respect to which an "insured" under the policy is also an "insured" under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability

Underwriters, or Nuclear Insurance Association of Canada, or would be an "insured" under any such policy but for its termination upon exhaustion of its limit of liability; or

2. resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, (2) the "insured" is or, had this policy not been issued, would be entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments Coverage, or under any supplementary payments provision relating to immediate medical or surgical relief, to expenses incurred with respect to bodily injury, sickness, disease, or death resulting from the hazardous properties of nuclear material and arising out of the operation of any nuclear facility by any person or organization.

C. Under any Liability Coverage, to injury, sickness, disease, death, or destruction resulting from the hazardous properties of nuclear material, if:

1. the nuclear material (1) is at any nuclear facility owned by or operated by or on behalf of an "insured" or (2) has been discharged or dispersed therefrom;

2. the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported, or disposed of by or on behalf of an "insured," or

3. the injury, sickness, disease, death, or destruction arises out of the furnishing by an "insured" of services, materials, parts, or equipment in connection with the planning, construction, maintenance, operation, or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions, or Canada, this exclusion (c) applies only to injury to or destruction of property at such nuclear facility.

D. As used in this section "hazardous properties" includes radioactive, toxic, or explosive properties; "nuclear material" means source material, special nuclear material, or byproduct material; "source material," "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material

1. containing by-product material other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its source material content, and

2. resulting from the operation by any person or organization of any nuclear facility included under the first two paragraphs of the definition of nuclear facility.

"nuclear facility" means

1. any nuclear reactor,

2. any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing, or packaging waste,

3. any equipment or device used for the processing, fabricating, or alloying of special nuclear material if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

COPY

4.   any structure, basin, excavation, premises, or place prepared or used for the storage or disposal of waste, and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

With respect to injury to or destruction of property the word "injury" or "destruction" includes all forms of radioactive contamination of property.

This policy is not valid unless a Declarations page is signed by our authorized representative.

IN WITNESS WHEREOF, we have caused the signatures of our executive officers to be affixed hereto, and have caused this policy to be countersigned by our authorized representative.

President                          Secretary

COPY
FSIC-1-3803 (11/98)

## *First Specialty Insurance Corporation*

ENDORSEMENT

### *THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.*

Claims Reporting Procedure Endorsement

It is agreed and understood that our claim handling process will allow Cellular Telecommunications Industry Association the opportunity to participate in the selection process should a claim be made against them.

If it is determined that counsel, other than our panel counsel, should be retained to represent the insured, it is understood that First Specialty Insurance Corporation will be responsible for "reasonable fees" in an amount not to exceed our customary rates for the specific jurisdiction.

This policy is a duty defend policy, which ultimately affords the carrier the right to select and retain counsel on behalf of the insured.  By  agreeing to involve the insured in the selection process, First Specialty  Insuance Corporation is not waiving the right to rely on the policy terms and conditions.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

**Endorsement Effective:**
June    01, 2000, 12:01 A.M. Standard Time.

**Policy Number:**
NPA-000122-3

**Endorsement No.**

**Name Insured:**
Cellular Telecommunications Industry
Association

### *FIRST SPECIALTY INSURANCE CORPORATION*

Countersigned.

.....................................................

Authorized Representative

President

Secretary

COPY

## *Fir  Specialty Insurance Corpor  ion*

ENDORSEMENT

### THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

Service of Suit

COPY

## First Specialty Insurance Corporation

ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

It is agreed that service or process in any lawsuit instituted against the Company may be made upon:

General Counsel
First Specialty Insurance Corporation
181 West Madison Ave, Suite 26
Chicago, IL 60602

and that in any suit instituted against the above party upon this contract, the Company will abide by the final decision of such Court or of any Appellate Court in the event of an appeal.

The above party is authorized and directed to accept service of process on behalf of the Company in any suit and/or upon the request of the insured to give a written undertaking to the insured that he will enter a general appearance upon the Company's behalf in the event such a suit shall be instituted.

Further, pursuant to any statute or any state, territory, or district of the United States which makes provision therefore, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance or other officer specified for that purpose in the statute, or his successor or successors in office, as their true and lawful attorney upon whom may be served any lawful process in any action, suit, or proceeding instituted by or on behalf of the insured or any beneficiary hereunder arising out of this contract of insurance, and hereby designates the above as the party to whom the said officer is authorized to mail such process or a true copy thereof.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

| | | |
|---|---|---|
| **Endorsement Effective:** | **Policy Number:** | **Endorsement No.** |
| June     01, 2000, 12:01 A.M. Standard Time. | NPA-000122-3 | |

**Name Insured:**
Cellular Telecommunications Industry
Association

*FIRST SPECIALTY INSURANCE CORPORATION*

Countersigned.

......................................................
Authorized Representative                          President                                    Secretary

COPY

# First Specialty Insurance Corporation

ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

### Marital Estate

Insureds shall include any lawful spouse, either by statutory or common law as recognized by the applicable jurisdiction, or a director, officer, trustee, employee, volunteer, or committee member, but on as respects to claims arising solely out of his or her capacity as a spouse where such claim seeks damages from the marital property, community property, jointly held property, or property transferred from such director, trustee, officer, employee, committee member or volunteer to his or her spouse.  However, no coverage shall be afforded under this policy for any wrongful act of any spouse of any director, officer, trustee, employee, volunteer or committee member.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

| | | |
|---|---|---|
| **Endorsement Effective:** | **Policy Number:** | **Endorsement No.** |
| June    01, 2000, 12:01 A.M. Standard Time. | NPA-000122-3 | |

**Name Insured:**
Cellular Telecommunications Industry
Association

**FIRST SPECIALTY INSURANCE CORPORATION**

Countersigned.

........................................................
Authorized Representative                     President                              Secretary

COPY

*First Specialty Insurance Corporation*

ENDORSEMENT

## THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

Amendment of Exclusion C

Exclusion C is deleted in its entirety and replaced as follows:

Any claim alleging LOSS based upon, arising from or caused by bodily injury, sickness, disease or death. However, we shall pay for Claims Expenses and Loss associated with "claim(s)" arising from or caused by sickness, disease, death or injury which is based upon attributable to, or arising out of the (non)performance of "professional services" by the "insured(s)."

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

**Endorsement Effective:**
June     01, 2000, 12:01 A.M. Standard Time.

**Policy Number:**
NPA-000122-3

**Endorsement No.**

**Name Insured:**
Cellular Telecommunications Industry
Association

*FIRST SPECIALTY INSURANCE CORPORATION*

Countersigned.

.........................................................
Authorized Representative

President

Secretary

COPY

Page 1 of 1

# *First Specialty Insurance Corporation*

**ENDORSEMENT**

### *THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.*

Vicarious Liability

Coverage provided by this endorsement shall apply to LOSS associated with CLAIMS based upon, attributable to or arising out of vicarious liability of the INSURED as a result of the performance of, or failure to perform, PROFESSIONAL SERVICES as defined in Section IV. DEFINITIONS I.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

| | | |
|---|---|---|
| **Endorsement Effective:** | **Policy Number:** | **Endorsement No.** |
| June    01, 2000, 12:01 A.M. Standard Time. | NPA-000122-3 | |

**Name Insured:**
Cellular Telecommunications Industry Association

### *FIRST SPECIALTY INSURANCE CORPORATION*

Countersigned.

...............................................

Authorized Representative                    President                    Secretary

COPY

## First Specialty Insurance Corporation

**ENDORSEMENT**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

Addition of Insured

CIBERNET Corporation
CTIA Foundation For Wireless Telecommunications

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

| **Endorsement Effective:** | **Policy Number:** | **Endorsement No.** |
|---|---|---|
| June    01, 2000, 12:01 A.M. Standard Time. | NPA-000122-3 | |

**Name Insured:**
Cellular Telecommunications Industry
Association

**FIRST SPECIALTY INSURANCE CORPORATION**

Countersigned.

..................................................
Authorized Representative                        President                                    Secretary

COPY

*Fi\_ t Specialty Insurance Corpo\_ \_ion*

ENDORSEMENT

***THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.***

# PUNITIVE DAMAGES COVERAGE

The coverage provided by this policy is amended as follows:

Section IV. **DEFINTIONS**, F., "Loss", is hereby amended to delete:

1.      Punitive or exemplary damages or the multiplied portion of any damage award.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

| Endorsement Effective: | Policy Number: | Endorsement No. |
|---|---|---|
| June     01, 2000, 12:01 A.M. Standard Time. | NPA-000122-3 | |

**Name Insured:**
Cellular Telecommunications Industry
Association

***FIRST SPECIALTY INSURANCE CORPORATION***

Countersigned.

...................................................
Authorized Representative                    President                                        Secretary

Fi t Specialty Insurance Corpo ion

ENDORSEMENT

*THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.*

## YEAR 2000 AMENDATORY ENDORSEMENT

It is agreed that the year 2000 A.D. or subsequent years exclusion is hereby deleted.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

| | | |
|---|---|---|
| **Endorsement Effective:** | **Policy Number:** | **Endorsement No.** |
| June    01, 2000, 12:01 A.M. Standard Time. | NPA-000122-3 | |

**Name Insured:**
Cellular Telecommunications Industry
Association

*FIRST SPECIALTY INSURANCE CORPORATION*

Countersigned.

......................................
Authorized Representative                President                          Secretary

Fir Specialty Insurance Corpor ion

ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## COVERAGE FOR NONMONETARY CLAIMS

In consideration of the premium charged, this policy is amended to include the following:

**Section II., DEFENSE, INVESTIGATION AND SETTLEMENT OF CLAIMS** is hereby amended to include the following paragraph:

The Company shall be liable to make payment for "claims expenses" associated with any "claim" made against the "insured" for non monetary relief, unless such "claim" is otherwise excluded by this policy. Further, the Company's liability is limited to payment of "claims expenses" and in no event shall the Company be required to make payment for any other portion of "loss".

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

| **Endorsement Effective:** | **Policy Number:** | **Endorsement No.** |
|---|---|---|
| June    01, 2000, 12:01 A.M. Standard Time. | NPA-000122-3 | |

**Name Insured:**
Cellular Telecommunications Industry
Association

**FIRST SPECIALTY INSURANCE CORPORATION**

Countersigned.

.......................................................
Authorized Representative

President

Secretary

COPY
FSIC -I-3824 (11/98)

Page 1 of 1

*First Specialty Insurance Corporation*

ENDORSEMENT

***THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.***

# PRIOR/PENDING LITIGATION EXCLUSION

This Policy does not apply to any "claim" made against any "insured" based upon, "arising out of," in consequence of, or in any way involving:

1.  Any litigation brought prior to or pending at the inception of this insurance; or

2.  Any fact, circumstance or situation underlying or alleged in such litigation.

All other terms and conditions of this policy shall remain unchanged.

This endorsement forms a part of the policy to which attached, effective on the inception date of the policy unless otherwise stated herein.

(The information below is required only when this endorsement is issued subsequent to the preparation of the policy.)

| **Endorsement Effective:** | **Policy Number:** | **Endorsement No.** |
|---|---|---|
| June    01, 2000, 12:01 A.M. Standard Time. | NPA-000122-3 | |

**Name Insured:**
Cellular Telecommunications Industry
Association

***FIRST SPECIALTY INSURANCE CORPORATION***

Countersigned.

........................................................
Authorized Representative

President

Secretary