ENTERED
RECEIVED

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND    SEP 1 9 2002

|  |  |  |
|---|---|---|
| IN RE WIRELESS TELEPHONE RADIO FREQUENCY EMISSIONS PRODUCTS LIABILITY LITIGATION | : : : : : : | MDL NO. 1421<br><br>Civil Action No. 01-MD- 1421 |
| THIS DOCUMENT RELATES TO:<br>Pinney, et al. v. Nokia, et al. (D. Md.) | : : : | *CCB01- 1456* |

*********************************************************************

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

**J. DOUGLAS PINNEY, M.D.,**                            *
    2020 Skyline Road
    Towson, Maryland 21204                         *

       and                                         *

**RICHARD COLONELL**                                    *
    4111 Ravenhurst Circle
    Glen Arm, Maryland 21057                       *

**LINDA BARRELL**                                       *
    3 Stockmill Road
    Pikesville, Maryland 21208                     *

    *Plaintiffs individually and on behalf of*      *
    *all others similarly situated,*
                             *

    v.                                              *

**NOKIA, Inc.**                                         *
A/K/A Nokia Mobile Phones, Inc.
6000 Connection Drive                                   *
Irving, Texas 75039.
    SERVE ON:  Resident Agent                       *
              National Registered Agents, Inc.   *
              11 East Chase Street
              Baltimore, MD 21202                *

1

and                                                    *

Westinghouse Communications                            *
32 South Street
Baltimore, Maryland 21202.                             *

**NEC AMERICA, INC. ("NEC")**                          *
8 Old Sod Farm Road
Melville, New York 11747                                *
   SERVE ON: Resident Agent
      CSC-Lawyers Incorporating Service
      11 East Chase Street
      Baltimore, MD 21202                     *


      and                *

**ERICSSON WIRELESS COMMUNICATIONS, INC.***
A/K/A Ericsson, Inc.
740 East Campbell Road                                 *
Richardson, Texas 75081
   SERVE ON: Resident Agent         *
      National Registered Agents, Inc.
      11 East Chase Street                  *
      Baltimore, MD 21202

      and                *

**MOTOROLA, INC.**                                     *
5725 E. River Road
Chicago, Illinois 60631                                *
   SERVE ON: Resident Agent
      The Corporation Trust                 *
      300 East Lombard Street
      Baltimore, MD 21202                   *


      and                *

**SPRINT PCS LIMITED PARTNERSHIP**                     *
A/K/A Sprint Spectrum
A/K/A Sprint                                            *
formerly known as,
Bell Atlantic-Maryland, Inc.                           *
4900 Main Street, 12th Floor
Kansas City, Missouri 64112                            *
   SERVE ON: Resident Agent
      Prentice-Hall Corporation System *
      11 East Chase Street
      Baltimore, Maryland 21202             *

2

                                and                                *


**AUDIOVOX COMMUNICATIONS CORPORATION**                            *
A/K/A  Audiovox Corporation.
150 Marcus Blvd
Hauppauge, New York 11788                                          *
        SERVE ON:  Resident Agent
                   United Corporate Services, Inc.    *
                   20 South Charles Street, Ste. 1200
                   Baltimore, Maryland 21201          *


                                and                                *


**NEXTEL COMMUNICATIONS, INC.**                                    *
A/K/A Nextel,
A/K/A Nextel Communications of the Mid-Atlantic, Inc.*
A/K/A Nextel Partners, Inc.
2001 Edmund Halley Drive                                           *
Reston, Virginia 20191
        SERVE ON:  Resident Agent                     *
                   CSC-Lawyers Incorporating
                   Service Company                    *
                   11 East Chase Street
                   Baltimore, Maryland 21202          *


                                and                                *


**MATSUSHITA CORPORATION OF AMERICA**                 *
A/K/A Panasonic Corporation
9401 West Grand Avenue                                *
Frankin Park, Illinois 60131.
        SERVE ON:  Resident Agent                     *
                   The Corporation Trust
                   300 East Lombard Street            *
                   Baltimore, Maryland 21202
                                                      *


                                and


**PHILIPS ELECTRONIC NORTH AMERICA**                  *
**CORPORATION**
100 East 42nd Street                             *
New York, New York 10017.
        SERVE ON:  Resident Agent                     *
                   The Corporation Trust
                   300 East Lombard Street            *
                   Baltimore, Maryland 21202
                                                      *

3

and                                          *

**QUALCOMM INCORPORATED**
A/K/A Qualcomm, Inc.                          *
6455 Lusk Boulevard
San Diego, California, 92121                 *
      SERVE ON:  Resident Agent
             CSC-Lawyers Incorporating    *
             Service Company
             11 East Chase Street         *
             Baltimore, Maryland 21202
                             *

        and                          *

**SAMSUNG ELECTRONICS AMERICA, INC.**
A/K/A Samsung Electronics                     *
105 Challenger Road
Ridgefield Park, NJ 07660                     *
      SERVE ON:  Hank Byun
             105 Challenger Road          *
             Ridgefield Park, New Jersey 07660
                             *

        and                          *

**SANYO NORTH AMERICA, INC.**
A/K/A Sanyo North America Group               *
218 State Route 17 North
Rochelle Park, New Jersey 07662               *
      SERVE ON:  John Snyder, President
             218 State Route 17 North     *
             Rochelle Park, New Jersey 07662
                             *

        and                          *

**SONY ELECTRONICS, INC.**
The Corporation Trust Incorporated            *
300 East Lombard Street
Baltimore, Maryland 21202.                    *
      SERVE ON:  Resident Agent
             The Corporation Trust        *
             300 East Lombard Street
             Baltimore, Maryland 21202    *

        and                          *

**AT&T CORP.**                                *
A/K/A AT&T
195 Broadway                                  *

4

New York, New York.
    SERVE ON:  Resident Agent          *
                 Corporation Trust Incorporated
                 300 East Lombard Street    *
                 Baltimore, Maryland 21202
                                    *

           and                    *

**VERIZON MARYLAND INC.**
A/K/A Verizon Wireless,               *
A/K/A Verizon,
formerly known as, Bell Atlantic-Maryland, Inc.  *
1 East Pratt Street, Constellation Plaza
Baltimore, Maryland 21202.             *
        SERVE ON:  Resident Agent
                 Robert D. Lynd      *
                 1 East Pratt Street
                 Constellation Place     *
                 Baltimore, Maryland 21202
                                    *

           and                    *

**VERIZON COMMUNICATIONS INC.**
formerly known as Bell Atlantic Corporation   *
1 East Pratt Street, Constellation Plaza
Baltimore, Maryland 21202              *
        SERVE ON:  Resident Agent
                 The Corporation Trust  *
                 300 E. Lombard Street
                 Baltimore, Maryland 21202  *

           and                    *

**VERIZON WIRELESS**                  *
A/K/A Bell Atlantic Nynex
A/K/A Nynex, A/K/A Bell Atlantic Mobile, Inc.  *
formerly known as Bell Atlantic Nynex Mobile, Inc.
180 Washington Valley Road           *
Bedminster, New Jersey 07921
        SERVE ON:  Resident Agent      *
                 The Corporation Trust
                 300 East Lombard Street  *
                 Baltimore, Maryland 21202
                                    *

           and                    *

**CELLCO PARTNERSHIP D/B/A VERIZON WIRELESS**
formerly d/b/a Bell Atlantic Mobile,       *
formerly d/b/a Bell Atlantic NYNEX Mobile

5

180 Washington Valley Road                          *
Bedminster, New Jersey, 07921
      SERVE ON: Dennis F. Strigl, President        *
              180 Washington Valley Road
              Bedminster, New Jersey 07921       *

         and                                  *

**CINGULAR WIRELESS LLC**                           *
formerly known as Southwestern Bell Mobile Systems, Inc.
2711 Centerville Road, Suite 400                    *
Wilmington, Delaware 19808
      SERVE ON: Resident Agent                 *
              CSC-Lawyers Service
              Incorporating Service Company      *
              11 East Chase Street
              Baltimore, MD 21202                *

         and                                  *

**CINGULAR WIRELESS**                               *
A/K/A Washington/Baltimore Cellular Limited PA
7855 Walker Drive, Suite 100                        *
Greenbelt, Maryland 20770
      SERVE ON: Resident Agent                 *
              The Corporation Trust
              300 East Lombard Street             *
              Baltimore, Maryland 21202
                               *
         and

                               *

**SBC COMMUNICATIONS INC.**                         *
175 East Houston Street
San Antonio, Texas 78205
      SERVE ON: Resident Agent                 *
              C.T. Corporation Systems
              350 North Saint Paul Street         *
              Dallas, Texas 75201
                               *

         and                                  *

**CELLULAR ONE GROUP**                              *
A/K/A Cellular One
5001 Lyndon B Johnson Freeway, Ste 700
Dallas, Texas 75244                                 *
      SERVE ON: Richard J. Lyons, President
              5001 Lyndon B. Johnson Freeway,

Ste. 700                                    *
Dallas, Texas 75244
                                            *

        and                                 —

**VOICESTREAM WIRELESS CORPORATION**    *
A/K/A VoiceStream Wireless
3650 131st Avenue SE                        *
Suite 200
Bellvue, Washington, 98006                  *
        SERVE ON:  Resident Agent
                   CSC-Lawyers Service      *
                   Incorporating Service Company
                   11 East Chase Street     *
                   Baltimore, MD 21202
                                            *

        and                                 *

**C.E.I., INC.**
A/K/A Communications Electronics, Inc.      *
A/K/A Communications Electronics
9494 Deerco Road                            *
Timmonium, Maryland 21093
        SERVE ON:  Resident Agent           *
                   Bryan Cowling
                   1133 Bentalou Street     *
                   Baltimore, MD 21216
                                            *

        and                                 *

**BALTIMORE BUSINESS COMMUNICATIONS, INC.** *
2111 Greenspring Ave.
Timmonium, Maryland 21093
        SERVE ON:  Resident Agent           *
                   John A. Armstrong, Jr.
                   12 Galloway Avenue, Ste. 3A  *
                   Hunt Valley, MD 21030
                                            *

        and

**CELLULAR TELECOMMUNICATION**              *
**INTERNET ASSOCIATION**
1250 Connecticut Avenue, N.W., Suite 200    *
Washington, D.C.  20036
        SERVE ON:
        Resident Agent                      *
        John M. Townsend
        1775  I  Street  N.W. , Suite 600   *
        Washington, D.C. 20006

|  |  |
|---|---|
| and | * |
|  | * |
| **TELECOMMUNICATION** | |
| **INDUSTRY ASSOCIATION** | * |
| A/K/A TIA | |
| Washington, D.C | * |
|     SERVE ON: | |
|     Resident Agent | * |
|     Mathew T. Kranz | |
|     1201 Pennsylvania Avenue, NW | * |
|     Suite 315 | |
|     Washington, D.C. 20044 | * |

*Defendants*

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

## AMENDED COMPLAINT

NOW COME J. Douglas Pinney, Richard Colonell, and Linda Barrell through the Law

Offices of Peter G. Angelos P.C., and their undersigned counsel of record, on behalf of

themselves and all other persons similarly situated, pursuant to Maryland Rule 2-231, who

hereby aver as follows:

### I. NATURE OF THE CASE

1.    Through a course of conduct, the Defendants have manufactured, supplied,

promoted, sold, leased and provided service for wireless handheld telephones (WHHP) when

they knew or should have known that their products generate and emit radio frequency radiation

("RFR") that causes an adverse cellular reaction and/or cellular dysfunction ("biological injury")

through its adverse health effect on: calcium and ion distribution across the cell membrane,

melatonin production, neurological function, DNA (single and double strand breaks and

chromosome damage), enzyme activities, cell stress and gene transcription, and the permeability

of the blood brain barrier (collectively hereinafter sometimes described as "the health risk"

8

and/or "the biological effects"). For the purposes of this action WHHPs refers to those that are designed and manufactured so as to readily allow for the use of a headset in conjunction with the WHHP.

2.    Through a course of conduct the Defendants, acting individually and collectively, failed to adequately disclose to the consuming public the fact that WHHPs emit RFR that causes biological injury creating a risk to the user's health.

3.    WHHPs are sold in the United States and throughout the world. More than 100 million Americans use WHHPs and over 400 million have been sold throughout the world.

4.    This action is brought for monetary damages, declaratory and/or equitable relief.

5.    The purpose of this action is to hold accountable and to obtain maximum legal and equitable relief from those corporations and entities that are responsible for producing and placing into the stream of commerce WHHPs, which create a health risk to users by causing biological injury.

6.    WHHPs are wireless communication devices which transmit a wireless signal from the antenna of the WHHP to the antenna at a cell tower or from the antenna at a cell tower to the antenna on the WHHP depending upon whether the WHHP user is making a telephone call or receiving a telephone call.

7.    WHHPs are powered by a battery which creates the radio frequency radio waves.

8.    The waves referred to in paragraph 6 travel from the antenna on the WHHP to a cell tower or from the cell tower to the antenna on the WHHP.

9.    RFR is emitted from the antenna and penetrates the user's human tissue.

10.    Research and peer reviewed literature has demonstrated that RFR from WHHPs

9

causes certain types of biological injury which, in turn, creates risk to the users' health.

## II. JURISDICTION AND VENUE

11.     The Court has jurisdiction over this action pursuant to Annotated Code of Maryland (1995 Replacement Volume), Courts and Judicial Proceedings §§ 6-102 and 6-103. Plaintiff purchased their WHHPs in Maryland and was thereby damaged as set forth herein. The Defendants are all doing business in Maryland, received substantial compensation and profits from the promotion of, sale of, lease of and/or provision of service for WHHPs in Maryland and have made material omissions and misrepresentations in Maryland. At all times relevant herein, acts and conduct in furtherance of the conspiracy, which is the hub of the wrongful conduct alleged herein, occurred in Maryland.

Venue in this case is founded on Annotated Code of Maryland (1995 Replacement Volume), Courts and Judicial Proceedings §§ 6-201(b); 6-202(3); 6-202(8); and 6-202(11).

## III. PARTIES

### A. PLAINTIFFS AND PROPOSED CLASS REPRESENTATIVE.

12.     Plaintiff J. Douglas Pinney, M.D. is an adult individual who resides at 2020 Skyline Road, Towson, Maryland 21204. In 2000 Plaintiff purchased from Defendant AT&T a WHHP which was sold without a headset. The WHHP was manufactured by Defendant Motorola. Incident to and as a result of this purchase, Plaintiff was provided service by Defendant Verizon Wireless. Plaintiff has since purchased a headset.

13.     Plaintiff Richard Colonell is an adult individual who resides at 4111 Ravenhurst Circle, Glen Arm, Maryland 21057. Plaintiff purchased, on separate occasions, two WHHPs. Both were sold without headsets. One of the WHHPs purchased by Plaintiff was manufactured

10

by Defendant Motorola. Plaintiff purchased his WHHPs from Defendants C.E.I. and Baltimore Business Communications. Plaintiff's service for his WHHPs is provided by Verizon formerly known as Bell Atlantic Mobile.

14.    Plaintiff, Linda Barrell is an adult individual who resides at 3 Stockmill Road, Apt. I, Pikesville, Maryland 21208. In 2001, Plaintiff purchased from Defendant Verizon a WHHP which was sold without a headset. The WHHP was manufactured by Defendant Nokia.. Incident to and as a result of this purchase, Plaintiff was provided service by Defendant Verizon. Plaintiff purchased the WHHP for the primary use of Plaintiff's minor child.

**B. DEFENDANTS**

15.    At all times relevant to this Complaint, the Defendant NOKIA, Inc. a/k/a Nokia Mobile Phones, Inc. ("Nokia") is a Delaware corporation, and was authorized to do business under the laws of the State of Maryland, with its principal place of business at 6000 Connection Drive, Irving, Texas 75039. At all times relevant herein, NOKIA, through its agents, distributors, servants and/or employees engaged in the design, manufacture, marketing and sale of WHHPs, and transacted business in Baltimore City, Maryland and elsewhere in this State, as well as nationally and internationally.

16.    At all times relevant to this Complaint, the Defendant WESTINGHOUSE COMMUNICATIONS ("Westinghouse") which is owned by RSL COM U.S.A., Inc. is an unincorporated entity legally active and present in Maryland with its address at Westinghouse Communications Corporation Trust Incorporated, 32 South Street, Baltimore, Maryland 21202. At all times relevant herein, WESTINGHOUSE, through its agents, distributors, servants and/or employees engaged in the provision of voice services for WHHPs.

11

17. At all times relevant to this Complaint, the Defendant NEC AMERICA, INC. ("NEC") is a corporation organized and existing under the laws of the State of New York, and was authorized to do business under the laws of the State of Maryland, with its principal place of business at 8 Old Sod Farm Road, Melville, New York 11747. At all times relevant herein, NEC, through its agents, distributors, servants and/or employees engaged in the design, manufacture, marketing and sale of WHHPs, and transacted business in Baltimore City, Maryland and elsewhere in this State, as well as nationally and internationally.

18. At all times relevant to this Complaint, the Defendant Ericsson Wireless Communications, Inc. A/K/A Ericsson, Inc. ("ERICSSON") is a corporation organized and existing under the laws of the State of Delaware, and was authorized to do business under the laws of the State of Maryland, with its principal place of business at 740 East Campbell Road, Richardson, Texas 75081. At all times relevant herein, Ericsson, through its agents, distributors, servants and/or employees engaged in the design, manufacture, marketing and sale of WHHPs, and transacted business in Baltimore City, Maryland and elsewhere in this State, as well as nationally and internationally.

19. At all times relevant to this Complaint, the Defendant, Motorola, Inc. (hereinafter referred to as "MOTOROLA") is a corporation organized and existing under the laws of the State of Delaware, and was authorized to do business under the laws of the State of Maryland, having its principal place of business at 5725 E. River Road, Chicago, Illinois 60631. At all times relevant herein, Motorola, through its agents, distributors, servants and/or employees engaged in the design, manufacture, marketing and sale of WHHPs, and transacting business in Baltimore City, Maryland and elsewhere in this State, as well as nationally and internationally.

12

20.    At all times relevant to this Complaint, the Defendant, Sprint PCS Limited Partnership, A/K/A Sprint Spectrum, A/K/A Sprint, formerly known as, Bell Atlantic-Maryland, Inc. (hereinafter referred to as "SPRINT") is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 4900 Main Street, 12th Floor, Kansas City, Missouri 64112.  At all times relevant herein, Sprint, through its agents, distributors, servants and/or employees engaged in the sale and/or promotion of WHHPs, cellular telephone equipment and transmission services in Baltimore City, Maryland and elsewhere in this State, as well as, to cellular telephone owners and users throughout its service areas.

21.    At all times relevant to this Complaint, the Defendant, Audiovox Communications Corporation A/K/A Audiovox Corporation. (hereinafter referred to as "AUDIOVOX") is a corporation organized and existing under the laws of the State of Delaware, and was authorized to do business under the laws of the State of Maryland, having its principal place of business in the State of New York at 150 Marcus Blvd, Hauppauge, New York11788. At all times relevant herein, Audiovox, through its agents, distributors, servants and/or employees engaged in the design, manufacture, marketing and sale of WHHPs, and transacting business in Baltimore City, Maryland and elsewhere in this State, as well as nationally and internationally.

22.    At all times relevant to this Complaint, the Defendant, Nextel Communications, Inc., A/K/A Nextel, A/K/A Nextel Communications of the Mid-Atlantic, Inc., A/K/A Nextel Partners, Inc. (hereinafter referred to as "NEXTEL") is a corporation organized and existing under the laws of the State of Delaware, having its principal place of business at 2001 Edmund Halley Drive, Reston, Virginia 20191.  At all times relevant herein, Nextel, through its agents,

13

distributors, servants and/or employees engaged in the sale and/or promotion of WHHPs, cellular telephone equipment and transmission services in Baltimore City, Maryland and elsewhere in this State, as well as, to cellular telephone owners and users throughout its service areas.

23.    At all times relevant to this Complaint, the Defendant, Matsushita Corporation of America A/K/A Panasonic Corporation. (hereinafter referred to as "PANASONIC") is a corporation organized and existing under the laws of the State of Delaware, and was authorized to do business under the laws of the State of Maryland, having its principal place of business at 9401 West Grand Avenue, Frankin Park, Illinois 60131. At all times relevant herein, Panasonic, through its agents, distributors, servants and/or employees engaged in the design, manufacture, marketing and sale of WHHPs, and transacting business in Baltimore City, Maryland and elsewhere in this State, as well as nationally and internationally.

24.    At all times relevant to this Complaint, the Defendant, Philips Electronic North America Corporation (hereinafter referred to as "PHILIPS") is a corporation organized and existing under the laws of the State of Delaware, and was authorized to do business under the laws of the State of Maryland, having its principal place of business at 100 East 42nd Street, New York, New York 10017. At all times relevant herein, Philips, through its agents, distributors, servants and/or employees engaged in the design, manufacture, marketing and sale of WHHPs, and transacting business in Baltimore City, Maryland and elsewhere in this State, as well as nationally and internationally.

25.    At all times relevant to this Complaint, the Defendant, Qualcomm Incorporated A/K/A Qualcomm, Inc. (hereinafter referred to as "QUALCOMM") is a corporation organized and existing under the laws of the State of Delaware, and was authorized to do business under the

laws of the State of Maryland, having its principal place of business at 6455 Lusk Boulevard, San

Diego, California, 92121. At all times relevant herein, Qualcomm, through its agents,

distributors, servants and/or employees engaged in the design, manufacture, marketing and sale

of WHHPs and WHHP services . At all times relevant herein, Qualcomm was transacting

business in Baltimore City, Maryland and elsewhere in this State, as well as nationally and

internationally.

26.    At all times relevant to this Complaint, the Defendant, Samsung Electronics

America, Inc. A/K/A Samsung Electronics (hereinafter referred to as "SAMSUNG") is a

corporation having its principal place of business at 105 Challenger Road, Ridgefield Park, NJ

07660. At all times relevant herein, Samsung, through its agents, distributors, servants and/or

employees engaged in the design, manufacture, marketing and sale of WHHPs, and transacting

business in Baltimore City, Maryland and elsewhere in this State, as well as nationally and

internationally.

27.    At all times relevant to this Complaint, the Defendant, Sanyo North America, Inc.

A/K/A Sanyo North America Group (hereinafter referred to as "SANYO") is a corporation

having its principal place of business at 218 State Route 17 North, Rochelle Park, New Jersey

07662. At all times relevant herein, Sanyo, through its agents, distributors, servants and/or

employees engaged in the design, manufacture, marketing and sale of WHHPs, and transacting

business in Baltimore City, Maryland and elsewhere in this State, as well as nationally and

internationally.

28.    At all times relevant to this Complaint, the Defendant, Sony Electronics,

Inc.(hereinafter referred to as "SONY") is a corporation organized and existing under the laws of

the State of Delaware, and was authorized to do business under the laws of the State of

Maryland, having its principal place of business at The Corporation Trust Incorporated, 300 East

Lombard Street, Baltimore, Maryland 21202.  At all times relevant herein, Sony, through its

agents, distributors, servants and/or employees engaged in the design, manufacture, marketing

and sale of WHHPs, and transacting business in Baltimore City, Maryland and elsewhere in this

State, as well as nationally and internationally.

      29.    At all times relevant to this Complaint, the Defendant, AT&T Corp., A/K/A

AT&T, (hereinafter referred to as "AT&T") is a corporation organized and existing under the

laws of the State of New York, having its principal place of business at 195 Broadway, New

York, New York.  At all times relevant herein, AT&T, through its agents, distributors, servants

and/or employees engaged in the sale and/or promotion of WHHPs, cellular telephone equipment

and transmission services in Baltimore City, Maryland and elsewhere in this State, as well as, to

cellular telephone owners and users throughout its service areas.

      30.    At all times relevant to this Complaint, the Defendant, Verizon Maryland Inc.,

A/K/A Verizon Wireless, A/K/A Verizon, formerly known as, Bell Atlantic-Maryland, Inc.

(hereinafter referred to as "VERIZON") is a corporation organized and existing under the laws of

the State of Maryland, having its principal place of business at 1 East Pratt Street, Constellation

Plaza, Baltimore, Maryland 21202.  At all times relevant herein, Verizon, through its agents,

distributors, servants and/or employees engaged in the sale and/or promotion of WHHPs, cellular

telephone equipment and transmission services in Baltimore City, Maryland and elsewhere in

this State, as well as, to cellular telephone owners and users throughout its service areas.

      31.    At all times relevant to this Complaint, the Defendant, Verizon Communications,

Inc. formerly known as Bell Atlantic Corporation,(hereinafter referred to as "VERIZON COMMUNICATIONS") is a corporation organized and existing under the laws of the State of Delaware, and was authorized to do business under the laws of the State of Maryland, having its principal place of business at 1 East Pratt Street, Constellation Plaza, Baltimore, Maryland 21202.  At all times relevant herein, verizon Communications, through its agents, servants, distributors, and/or employees engaged in the sale and/or promotion of WHHPs, cellular telephone equipment and transmission services in Baltimore City, Maryland and elsewhere in this State, as well as, to cellular telephone owners and users throughout its service areas.

32.    At all times relevant to this Complaint, the Defendant, Verizon Wireless, A/K/A Bell Atlantic Nynex, A/K/A Nynex, A/K/A Bell Atlantic Mobile, Inc., formerly known as Bell Atlantic Nynex Mobile, Inc. (hereinafter referred to as "VERIZON WIRELESS") is a corporation organized and existing under the laws of the State of Delaware, and was authorized to do business under the laws of the State of Maryland, having its principal place of business at 180 Washington Valley Road, Bedminister, New Jersey 07921.  At all times relevant herein, Bell Atlantic Mobile, through its affiliate corporations, companies, and partnerships, agents, servants, distributors, and/or employees engaged in the sale and/or promotion of WHHPs, cellular telephone equipment and transmission services in Baltimore City, Maryland and elsewhere in this State, as well as, to cellular telephone owners and users throughout its service areas.

33.    At all times relevant to this Complaint, the Defendant, Cellco Partnership, d/b/a Verizon Wireless, formerly d/b/a Bell Atlantic Mobile, formerly d/b/a Bell Atlantic NYNEX Mobile (hereinafter referred to as "CELLCO"), is a partnership organized and existing under the laws of the State of Delaware, and was authorized to do business under the laws of the State of

17

Maryland, having its principal place of business at 180 Washington Valley Road, Bedminster,

New Jersey, 07921. At all times relevant herein, Cellco, through its agents, servants, distributors,

and/or employees engaged in the sale and/or promotion of WHHPs, cellular telephone equipment

and transmission services in Baltimore City, Maryland and elsewhere in this State, as well as, to

cellular telephone owners and users throughout its service areas.

     34.    At all times relevant to this Complaint, the Defendant, Cingular Wireless LLC

formerly known as Southwestern Bell Mobile Systems, Inc. A/K/A Southwestern Bell Wireless

(hereinafter referred to as "CINGULAR WIRELESS"), is a corporation organized and existing

under the laws of the State of Delaware, and was authorized to do business under the laws of the

State of Maryland, having its principal place of business at 2711 Centerville Road, Suite 400,

Wilmington, Delaware 19808. At all times relevant herein, Cingular Wireless, through its

agents, servants, distributors, and/or employees engaged in the sale and/or promotion of WHHPs,

cellular telephone equipment and transmission services in Baltimore City, Maryland and

elsewhere in this State, as well as, to cellular telephone owners and users throughout its service

areas.

     35.    At all times relevant to this Complaint, the Defendant, Cingular Wireless A/K/A

Washington/Baltimore Cellular Limited PA, (hereinafter referred to as "CINGULAR"), is a

limited partnership organized and existing under the laws of the State of Virginia, and was

authorized to do business under the laws of the State of Maryland, having its principal place of

business at 7855 Walker Drive, Suite 100, Greenbelt, Maryland 20770. At all times relevant

herein, Cingular, through its agents, servants, distributors, and/or employees engaged in the sale

and/or promotion of WHHPs, cellular telephone equipment and transmission services in

Baltimore City, Maryland and elsewhere in this State, as well as, to cellular telephone owners and users throughout its service areas.

36.     At all times relevant to this Complaint, the Defendant, SBC Communications Inc. (hereinafter referred to as "SBC"), is a corporation and existing under the laws of the State of Delaware, having its principal place of business at 175 East Houston Street, San Antonio, Texas 78205, and SBC was conducting its business at all times relevant herein through its affiliate corporations, companies, and partnerships, and its agents, servants, distributors, and/or employees engaged in the sale and/or promotion of WHHPs, cellular telephone equipment and transmission services in Baltimore City, Maryland and elsewhere in this State.

37.     At all times relevant to this Complaint, the Defendant, Cellular One Group, A/K/A Cellular One (hereinafter referred to as "CELLULAR ONE GROUP"), is a partnership organized and existing under the laws of the State of Delaware, and was authorized to do business under the laws of the State of Maryland, having its principal place of business at 5001 Lyndon B Johnson Freeway, Ste 700, Dallas, Texas 75244.  At all times relevant herein, Cellular One Group, through its agents, servants, distributors, and/or employees engaged in the sale and/or promotion of WHHPs, cellular telephone equipment and transmission services in Baltimore City, Maryland and elsewhere in this State, as well as, to cellular telephone owners and users throughout its service areas.

38.     At all times relevant to this Complaint, the Defendant, VoiceStream Wireless Corporation, A/K/A VoiceStream Wireless (hereinafter referred to as "VOICESTREAM"), is a partnership organized and existing under the laws of the State of Delaware, and was authorized to do business under the laws of the State of Maryland, having its principal place of business at

19

3650 131st Avenue SE, Suite 200, Bellvue, Washington, 98006. At all times relevant herein, VoiceStream, through its agents, servants, distributors, and/or employees engaged in the sale and/or promotion of WHHPs, cellular telephone equipment and transmission services in Baltimore City, Maryland and elsewhere in this State, as well as, to cellular telephone owners and users throughout its service areas.

39.    At all times relevant to this Complaint, the Defendant, C.E.I., Inc., A/K/A Communications Electronics, Inc. A/K/A Communications Electronics (hereinafter referred to as "CEI"), is a corporation organized and existing under the laws of the State of Maryland, and has its principal place of business at 9494 Deerco Road, Timmonium, Maryland 21093. At all times relevant herein, CEI, through its agents, servants, distributors, and/or employees engaged in the sale and/or promotion of WHHPs, cellular telephone equipment and transmission services throughout the State of Maryland.

40.    At all times relevant to this Complaint, the Defendant, Baltimore Business Communications, Inc. (hereinafter referred to as "Baltimore Communications"), is a corporation organized and existing under the laws of the State of Maryland, and has its principal place of business at 2111 Greenspring Ave., Timonium, Maryland 21093. At all times relevant herein, Baltimore Communications, through its agents, servants, distributors, and/or employees engaged in the sale and/or promotion of WHHPs, cellular telephone equipment and transmission services throughout the State of Maryland.

41.    At all times relevant to this Complaint, the Defendant, Cellular Telecommunication Industry Association N/K/A Cellular Telecommunication Internet Association (hereinafter referred to as "CTIA"), is the trade association existing under the laws

20

of the District of Columbia, having its principal place of business at 1250 Connecticut Avenue, N.W., Washington, D.C. 20036, and CTIA was conducting its business at all times relevant herein through its agents, servants, and/or employees and represented the safety in the use of WHHPs to the to cellular telephone owners and users in Maryland.

42.    At all times relevant to this Complaint, the Defendant, Telecommunication Industry Association (hereinafter referred to as "TIA"), is the trade association existing under the laws of the District of Columbia, having its principal place of business in Washington, D.C., and TIA was conducting its business at all times relevant herein through its agents, servants, and/or employees and represented the safety in the use of WHHPs to cellular telephone owners and users in Maryland.

43.    Defendants John Does 1 through 50 are as yet unnamed defendants who at all times relevant hereto through their agents, distributors, servants and/or employees were engaged in the design, manufacture, marketing and sale of WHHPs, and transacting business in Baltimore City, Maryland and elsewhere in this State, as well as nationally and internationally.

44.    Defendants John Does 51 through 100 are as yet unnamed defendants who at all times relevant hereto through their agents, servants, distributors, and/or employees were engaged in the sale and/or promotion of WHHPs, cellular telephone equipment and transmission services in Baltimore City, Maryland and elsewhere in this State, as well as, to cellular telephone owners and users throughout its service areas.

## IV. CLASS ACTION ALLEGATIONS

45.    The named Plaintiffs bring this class action on behalf of themselves and all other persons similarly situated for the purpose of asserting the claims alleged on a common

basis.

The proposed classes are defined as:

    a.    All purchasers or lessees of WHHPs who are residents of the State of Maryland, and who were residents of the State of Maryland when they purchased or leased a WHHP, who have not been diagnosed with a brain related tumor or cancer of the eye and who were not furnished a headset at the time they purchased or leased their WHHP;

    b.    All future purchasers of WHHPs who are residents of the State of Maryland and who have not been diagnosed with a brain related tumor or cancer of the eye; and

    c.    All purchasers or lessees of WHHPs who have purchased or leased WHHPs for use primarily by their minor children who are residents of the State of Maryland, and who were residents of the State of Maryland when they purchased or leased a WHHP, whose minor children have not been diagnosed with a brain related tumor or cancer of the eye and who were not furnished a headset at the time they purchased or leased their WHHP

46.    The class defined above in paragraph 45 a. and 45 b. shall be referred to as the "Class" and the class defined above in paragraph 45 c. shall be referred to as the "Minor Class".

47.    **Numerosity of the classes. Maryland Rule 2-231(a)(1).** The Plaintiffs are unable to state with precision the exact size of the classes noted above but believe that it is so

numerous that individual joinder of all of its members for each class is impracticable.

48.    <u>Existence and predominance of common questions of law and fact.</u>

<u>Maryland Rule 2-231(a)(2) and 2-231(b)(3)-(4).</u>  Common questions of law and fact exist as to

all members of the classes.  The common questions predominate over any questions affecting

only individual members of the classes.  These common legal and factual questions include, but

are not limited to, the following:

     a.    whether, during any period, the Defendants, acting individually or collectively, failed to conduct appropriate, reasonable and adequate testing of WHHPs to determine the association between RFR and biological effects and the risk to human health arising therefrom;

     b.    whether, during any period, the Defendants acting individually or collectively, failed to conduct appropriate, reasonable and adequate research to determine the association between RFR and harmful biological effects.

     c.    whether, during any period, the Defendants acting individually of collectively, failed to warn or otherwise inform the Plaintiff classes and others similarly situated of the association between RFR and biological effects and the risks to human health arising therefrom.

     d.    whether, during any period, the Defendants acting individually or collectively, failed to provide headsets which would have eliminated, reduced or minimized the biological effects from RFR and its risk to human health arising therefrom.

49.     **Typicality of claims and Adequacy of Representation.  Maryland Rule**

**2-231(a)(3)-(4).**  Plaintiffs are adequate representatives of the classes and their interests do not

conflict, but are identical with the interests of the members of the classes they seek to represent.

The claims being asserted by the Plaintiff classes are typical of those of each class.  They have

retained counsel competent and experienced in the prosecution of complex civil actions in the

areas of tobacco and asbestos litigation, and they intend to prosecute this action vigorously for

the benefit of the classes.  The interests of the members of each class will be fairly and

adequately protected by Plaintiffs and their counsel.

50.     **Superiority.  Maryland Rule 2-231(b)(3).**  A class action is superior to

other available methods for the fair and efficient adjudication of this litigation.   Individual

litigation is both impracticable and unnecessary under the model proposed herein.  Class

Members and minor children of Minor Class Members are all identically united in the risk of

injury to which they are exposed within each class.  No individual issues of injury exist, let alone

predominate in this case,  because membership in each class is premised only upon purchase or

lease of a WHHP without a headset.  In all respects, individual litigation would identically mirror

the class action litigation.  Individual litigation would be unduly burdensome to the courts and to

the claimants.  Individual litigation further presents a potential for inconsistent or contradictory

judgments and would increase delay and expense to all parties in the court system in resolving

the complex issue of the case.  This delay and expense would be particularly inefficient in this

case, where the risk of injury to which claimants within each class are exposed is identical.  The

class action device proposed herein provides the benefits of a single adjudication, economics of

scale and comprehensive supervision by a single court of thousands of claims which are identical

in all respects. In every respect, class action is the best method for the fair and efficient adjudication of this litigation. Notice of the pendency and of any resolution of this class action can be provided to members of each class by publication and use of the broadcast media.

## V. FACTS COMMON TO ALL CLASSES AND COUNTS

51.     Service providers are an integral component of the WHHP industry, without which WHHPs could not be used.

52.     Defendants Verizon, Westinghouse, Sprint, Nextel, AT&T, Verizon Communications, Verizon Wireless, Cellco, Cingular Wireless, Cingular, SBC, Cellular One Group and VoiceStream ("Cell Phone Carriers") are providers of cellular telephone service, and/or control or wholly own subsidiaries which are providers of cellular telephone service.

53.     Defendant Cell Phone Carriers are granted licenses by the FCC to broadcast wireless signals on specific frequency bands to provide cellular telephone service to consumers.

54.     Each manufacturer constructs WHHPs to fit the different specifications of the Cell Phone Carriers.

55.     Each Cell Phone Carrier provides manufacturers and/or sellers of WHHPs with specifications based on its specific frequency band. The specifications of the battery and circuitry for all WHHPs in a Cell Phone Carrier's network are determined by the Cell Phone Carrier's license and frequency information granted by the FCC.

56.     Each time a WHHP user makes or receives a call a wireless signal is transmitted from the WHHP antenna to the nearest cell tower or from the nearest cell tower to the WHHP antenna, thereby exposing the WHHP user to RFR.

57.     Land lines also play a central role in the operation and use of WHHPs. Based

upon the license granted by the FCC to and the frequency specifications provided to sellers and/or manufacturers of WHHPs, the Defendant Cell Phone Carriers create a network by which the wireless signal is transferred to land lines and the call is sent to a receiver or sent to the cell phone customer.

58.    While placing and receiving calls, each named Plaintiff of the Class or a minor child of a named Plaintiff of the Minor class held their WHHP in the manner for which WHHPs were designed and intended to be used so that the receiver was resting against their ear ("Customary Position"), the manner in which others similarly situated in each class customarily use their WHHPs.

59.    Each time a named Plaintiff of the Class or a minor child of a named Plaintiff of the Minor Class used their WHHP in the Customary Position, the antenna was located next to their head.

60.    Each time a named Plaintiff of the Class or a minor child of a named Plaintiff of the Minor Class used their WHHP, they were exposed to RFR which emanated from the antenna, thereby subjecting them to RFR and, in the absence of a headset, to RFR's biological effects and the risk to human health arising therefrom.

61.    The health risk created by the Class Plaintiffs' use of their WHHPs is identical to the risk to which all other members of the Class were exposed.

62.    The health risk created by the Minor Class Plaintiff's minor child's use of their WHHP is identical to the risk to which all other members of the Minor Class were exposed.

63.    Scientific and medical research, published in peer reviewed literature, has demonstrated biological injury from exposure to RFR within the radio frequency band of 300

26

megahertz to 2.4 gigahertz.

64.    Appropriately designed headsets when properly used eliminate the WHHP users' exposure to RFR. WHHPs designed and manufactured for use commercially available at all relevant times. Headsets to be used in conjunction with a WHHP have been commercially available at all relevant times.

65.    In the past Defendants have marketed headsets as an optional and available accessory at an additional cost. More recently Defendants have routinely provided headsets at no additional cost with the purchase of a WHHP. Other Defendants have provided headsets to past purchasers at no cost or at a discount for a limited period of time.

66.    At all relevant times Defendants knew or should have known that Class Plaintiffs and the minor child of Minor Class Plaintiff are exposed to RFR while using a WHHP and as a result are at increased risk for biological injury.

67.    At all relevant times Defendants knew or should have known that the increased risk of biological injury decreases the farther away the WHHP is located from the user during use of the WHHP.

68.    At all relevant times Defendants knew or should have known that headsets when used with a WHHP greatly reduce the risk of biological injury. Knowing of the great reduction in risk Defendants have designed and marketed inexpensive headsets that dramatically reduce exposure to RFR thus reducing the risk of biological injury to the user.

69.    At all relevant times Defendants have promoted headsets as a mere convenience to the user without including in the instructions for use that headsets can greatly reduce the risk of biological injury to the user.

70.    Defendants were aware or should have been aware of numerous studies and experiments that demonstrated the health risks and biological effects of RFR dating back to the late 1920s.

71.    As research and studies evolved over the ensuing decades, it was found, among other things, that animal research demonstrated physical injury and/or adverse biological effects as a result of varying levels of RFR.

72.    That during this same period of time research was also forthcoming as to the risk to human health posed by exposure to RFR.

73.    By the early 1960's it was well established in the scientific and medical communities that RFR is efficiently absorbed into human tissue and is capable of producing biological injury.

74.    It was equally well known in the scientific and medical community by that time that an antenna is the most efficient means of depositing RFR into the human body and penetrating human tissue and that the temporal lobe of the brain was the most sensitive area of the body to this type of radiation.

75.    Medical and scientific inquiry and research into the harmful biological effects of RFR continued unabated from the 1960's to the present day.  Throughout this period dozens of peer reviewed research papers were published which, individually and collectively, raised serious and credible questions regarding whether the RFR to which WHHP users were and are exposed posed a threat to their health.

76.    The Defendants knew or, by the application of reasonable, developed human skill and foresight, should have known of the unreasonably dangerous characteristics of WHHPs

because such knowledge was, at all times relevant to the claims herein, part of the "state of the art" body of knowledge in the relevant scientific and medical communities.

77.     At all times relevant to the claims herein, the Defendants failed to conduct adequate testing and research regarding the dangerous characteristics of WHHPs. Not only did the Defendants fail to engage in pre-market testing of WHHPs, but after introducing WHHPs into the marketplace, the Defendants continued to fail to fulfill their ongoing obligation to conduct adequate testing and research regarding the dangerous characteristics of WHHPs.

78.     Throughout this entire period the Defendants, acting individually and collectively through their respective trade associations, took steps to suppress, discredit and/or minimize this emerging science.

79.     Throughout this same period the Defendants, acting individually and collectively through their respective trade associations, took steps to ensure that they would be free to manufacture and mass market WHHPs to the consuming public, free from the constraints of any reasonable and necessary safety standards regulating RFR exposure. They accomplished this by obtaining and exercising dominance and control over the American National Standards Institute ("ANSI") Committee responsible for developing safety standards for RFR emitting devices.

80.     Defendants, individually and through their trade associations, undertook with great public fanfare to fund scientific inquiry into the potential health hazards posed by the use of WHHPs. When this industry-funded research failed to corroborate the industry's reckless and premature claims of safety, and, in fact, presented new evidence of potential health concerns, the industry responded by terminating the research funding and publicly disparaging, suppressing and minimizing the results.

81.    Despite their knowledge of the literature, research and the industry's own studies, the Defendants continued wrongfully to maintain that WHHPs posed no threat to human health despite mounting abundant evidence to the contrary.

82.    At all relevant times, the biological injury caused by low level RFR of WHHPs which, in turn, gives rise to a risk to the users' health, was fully known and appreciated by the Defendants. At all relevant times, the Defendants should have and easily could have minimized, reduced and or eliminated this health risk by acknowledging its existence and providing to each purchaser of WHHPs a headset with appropriate instructions for use. The Defendants negligently and recklessly failed and/or refused to take this simple step to reduce the health risks to consumers for fear that such action would inhibit their ability to mass market WHHPs to the consuming public, including the Plaintiffs and others similarly situated.

83.    On January 26, 1993, Defendant Motorola announced to the news media, which subsequently reported to the public, that "thousands of studies" had already shown cellular phones were safe. This statement was fraudulent, deceitful, and misleading.

84.    On July 16, 1993, in furtherance of its dishonest campaign to assure the consuming public of the "safety" of WHHP's, the Cellular Telecommunications Industry Association (CTIA), representing many of the named Defendants, held a press conference and issued a report entitled "Safety Update-Fast Facts: Portable Cell Phone Safety," which, in bold print, deceptively stated, the following:  **"Rest assured. Cellular telephones are safe!"** The report further stated that cell phones fall within the safety standards of the Federal Communications Commission (FCC). However, the Defendants fraudulently and deceitfully omitted the fact that the FCC had declared that it does *not* consider itself the "expert agency" for

evaluating health effects.

85.    This industry deception prompted Elizabeth Jacobson, Deputy Director for

Science at the Center for Devices and Radiological Health, Food and Drug Administration, on

July 19, 1993 to send a letter to CTIA president Thomas Wheeler, which clearly questioned and

challenged the misleading statements made by the Defendants to the public regarding the

"safety" of WHHPs.  In pertinent part, that letter stated:

> "I am writing to let you know that we were concerned about two
> important aspects of your press conference on July 16 concerning
> the safety of cellular phones, and to ask that you carefully consider
> the following comments when you make future statements to the
> press.
>
> First, both the written press statements and your verbal comments
> during the conference seemed to display an unwarranted
> confidence that these products will be found to be absolutely safe.
> In fact, the unremittingly upbeat tone of the press packet strongly
> implies that there can be no hazard, leading the reader to wonder
> why any further research would be needed at all. (Some readers
> might also wonder how impartial the research can be when its
> stated goal is "a determination to reassure consumers," and when
> the research sponsors predict in advance that 'we expect the new
> research to reach the same conclusion, that the cellular phones are
> safe."). . . .
>
> We are even more concerned that your press statements did not
> accurately characterize the relationship between CTIA and the
> FDA. . . . [S]ince it is not yet clear whether we will help to direct
> the research program, it is premature to state that we will credential
> the research.
>
> To sum up, Mr. Wheeler, our role as a public health agency is to
> protect health and safety, not to "reassure consumers." I think it is
> very important that the public understand where we stand in
> evaluating the possibility that cellular phones might pose a health
> risk. . . .

86.    In or about late 1993, or early 1994, the cell phone industry, including the

31

named Defendants, through CTIA, organized a committee to prepare a manual for public consumption discussing "responsible" WHHP use. After receiving a draft of the manual, Thomas Wheeler, president of CTIA, sent a memorandum to the drafting committee expressing his concerns over certain language in the draft which acknowledged and/or implied that the use of WHHPs could pose health risks. Mr. Wheeler's memorandum suggested significant substantive deletions from the draft which are set forth. The committee deleted the offending material set forth here in bold typeface:

> Do not operate your transportable cellular telephone when holding the antenna, or when any person is within 4 inches (10 centimeters) of the antenna. **Otherwise you may impair call quality, may cause your phone to operate at a higher power level than is necessary, and may expose that person to RF energy in excess of the levels established by the updated ANSI Standard.**
>
> **If you want to limit RF exposure even further, you may choose to control the duration of your calls or maintain a distances from the antenna of more than 4 inches (10 centimeters).**
>
> For best call quality, keep the antenna free from obstructions and point it straight up."

87.     At some point subsequent to, and as a direct consequence of the filing of other proceedings raising concerns about biological injury from RFR, the Defendants (or some of them) began to provide to purchasers (or lessees) of WHHPs a copy of the U.S. Food and Drug Administration's ("FDA") "Update on Mobile Phones" (dated 10/2000). This document was inserted by the Defendants into the marketing package for newly purchased WHHPs.

88.     The FDA's "Update on Mobile Phones" instructs the consuming public to the following effect:

**The U.S. Food and Drug Administration's Center**

32

**for Devices and Radiological Health Consumer Update on Mobile Phones.**

**...Why the concern?**

Mobile phones emit low levels of radio frequency energy (i.e., radio frequency radiation) in the microwave range while being used. They also emit very low levels of radio frequency energy (RF), considered non-significant, when in the stand-by mode. It is well known that high levels of RF can produce biological damage through heating effects (this is how your microwave oven is able to cook food). However, *it is not known whether, to what extent, or through what mechanism, lower levels of RF might cause adverse health effects as well. Although some research has been done to address these questions, no clear picture of the biological effects of this type of radiation has emerged to date. Thus, the available science does not allow us to conclude that mobile phones are absolutely safe, or that they are unsafe.* (Emphasis added)....

**How much evidence is there that hand-held mobile phones might be harmful?**

Briefly, there is not enough evidence to know for sure, either way: however, research efforts are on-going. The existing scientific evidence is conflicting and many of the studies that have been done to date have suffered from flaws in their research methods.

**...What is FDA's role concerning the safety of mobile phones?**

Under the law, FDA does not review the safety of radiation emitting consumer products such as mobile phones before marketing, as it does with new drugs or medical devices...

Although the existing scientific data do not justify FDA regulatory actions at this time, FDA has urged the mobile phone industry to take a number of steps to assure public safety. The agency has recommended that the industry:

      · support needed research into possible biological effects of RF of the type emitted by mobile phones;

· design mobile phones in a way that minimizes
  any RF exposure to the user that is not necessary
  for device function; and

· cooperate in providing mobile phone users with
  the best possible information on what is known
  about possible effects of mobile phone use on
  human health.

89.    More recently, a government agency familiar with the issues surrounding RFR

and the current FCC guidelines acknowledged publically that "Federal health and safety

guidelines have not yet developed policies concerning possible risk from long-term, nonthermal

exposures."

90.    The agency also stated that "[t]he FCC's exposure guideline is considered

protective of effects arising from a thermal mechanism but not from all possible mechanisms.

Therefore, the generalization by many that the guidelines protect human beings from harm by any

or all mechanisms is not justified."

91.    The agency also confirmed that "[m]ost people's greatest exposures result from

the use of personal communications devices that expose the head.  In summary, the current

exposure guidelines used by the FCC are based on the effects resulting from whole-body heating,

not exposure of and effect on critical organs including the brain and eyes."

92.    Plaintiffs and others similarly situated were and continue to be misinformed,

misled and deceived by the Defendants into believing that WHHPs are safe and pose no threat to

human health.

93.    Defendants at all relevant times have controlled the design, assembly, platform for

usage, manufacture, marketing sales and provision of service of WHHPs which have been widely

advertised by the Defendants as posing no threat to human health.

94.    The product warnings in effect during the period relevant to this Amended Complaint were both substantively and graphically wholly inadequate to alert Plaintiffs and those similarly situated as to the risks associated with WHHP use.

95.    Defendants have never adequately informed the public about the risk of biological injury which poses a health risk to WHHP users or of the fact that the risk of injury can differ with the amount of use and the sensitivity of the user.

BIOLOGICAL EFFECTS AND/OR INJURIES

96.    By adhering to FDA standards, the industry has done the absolute minimum to protect the public.  The industry has merely done all that is technically necessary to comply with the current guidelines even though WHHPs have not yet been determined safe.  All WHHPs do not emit the same SAR level.

97.    By making the SAR data difficult to locate and understand, manufacturers obscure vital information that consumers should be able to easily access.  Consumers do not realize that they are receiving unwanted radio frequency radiation every time they use their WHHP.

98.    Additionally, by insisting that WHHPs are safe, even though they neglect to explain to the consumer what "safe" means, Defendants are sending a mixed message.

99.    Until all of the evidence has been gathered the possibility of biological effects and/or injury and long term health effects such as cancer should be acknowledged and disclosed to consumers and not ignored by Defendants.

100.    Many published studies describe many WHHP user's common complaints such as headaches, heating behind the ear, and sleep problems, none of which were disclosed to members of the classes or the public by Defendants.

35

101.    The published studies describe such effects as, disturbances in normal sleeping EEG patterns, unpleasant sensations, including a burning feeling or a dull ache mostly occurring in the temporal, occipital or auricular areas, fatigue, headache, warmth behind or on ear, and a burning skin sensation.

102.    A study found that the risk of experiencing fatigue, headache, warmth behind or on ear, and a burning skin sensation was increased in as little as fifteen (15) minutes of WHHP use.

103.    Another study reported that exposure to WHHP radiation produced faster reaction time in human subjects, thus showing that WHHP radiation does induce biological changes in the brain.

104.    Other published studies describe biological changes in experiments using animals when exposed to microwave radiation. The effects reported include; changes in the blood-brain barrier, calcium efflux in brain cells, changes in the electrically evoked potentials and in long-term potentiation of hippocampal brain sections, and production of high levels of ''heat shock proteins.''

105.    Several studies have been conducted over the last several years that have lead to published papers in scientific journals which describe increased risks for various tumor types and/or cancer.

106.    One such study reported an increased risk for developing an acoustic neurinoma for those using an anolog WHHP for greater than five years.  This study also found an increased risk for developing  brain cancer for those who have used an analog WHHP.  In another study the authors discuss data showing an increased risk of brain tumors associated with the use of

36

WHHPs. The study also reported increased mortality for analog WHHP users.

107.    Other studies have reported an increased risk for melanoma in the eye associated with the use of WHHPs and an increased risk for Neuroepitheliomatous tumors.

108.    More recent epidemiologic studies have found increased risk for brain cancer associated with the use of analog WHHPs. One of these studies found that brain cancer was twice as likely in individuals who used an analog WHHP and the other study found the risk of brain cancer increased by two and a half times when using an analog WHHP.

109.    Many of the more recent studies were not considered by scientific regulating bodies in arriving at their current positions regarding whether or not WHHPs are safe.

### The Mechanisms for Cancer Causation or Promotion

110.    It is the consensus of the relevant scientific community that exposure to non-ionizing radiation, including that in the radiofrequency range, produces changes in a biological system at different levels, including molecular, cellular, and the whole organism.

111.    Cancer can be developed in either of two mechanisms: genetically or epigenetically. The genetic path requires genetic damage which, if not repaired, may result in the cell being transformed into a cancer cell. The epigenetic path does not require a genetically damaged cell, but requires a change in gene expression which may result in the development of cancer. The changes are in the expression of key regulatory genes and/or in the expression of other key regulatory molecules.

112.    The endpoints designed to demonstrate the potential for genetic damage include the following: chromosome aberrations; DNA damage; micronuclei; DNA single and double strand breaks; and sister chromatid exchange.

37

113.    The endpoints which provide a basis for the assessment of epigenetic and genetic development of cancer include the following: cell progression; cell proliferation; cell transformation; cell incorporations; alterations of ODC activity; alterations of gene expression; alteration of calcium distribution; alteration of proto-oncogene expression; and overexpression of heat shock proteins.

114.    Numerous papers have been published in peer-viewed journals discussing the epigenetic effects, genetic effects, and genetic and/or epigenetic effects of microwave radiation. These studies include both *in vivo* (animal) and *in vitro* (cell) studies.

## FACTS REGARDING INCREASED CAUTION FOR CHILDREN'S USE OF WHHPS COMMON TO THE MINOR CLASS AND ALL RELATED COUNTS

115.    Today the fastest growing group of WHHP users are children and young people. This growth is actively encouraged by advertising campaigns from the WHHP industry, extolling how indispensable the phones are to their active life styles.

116.    However, within the scientific community, there is a growing number of experts that are urging caution because if there are adverse health effects from WHHP use, it will be the children who will be on the front line.

117.    The still developing nervous system and associated brain-wave activity in a child are more vulnerable to aggression by the pulses of microwaves used in GSM WHHPs than a mature adult.

118.    Additionally, the increased mitotic activity in the cells of developing children makes them more susceptible to genetic damage from radio frequency radiation.

119.    A child's immune system's efficiency is reduced by WHHP radiation. Children's

immune systems are generally less strong than that of an adult. Children will be less able to fend off any adverse health effect provoked by (chronic) exposure to WHHP radiation.

120.    The WHO Expert Group recommends those children less than sixteen years of age be discouraged from using mobile phones. Their recommendation is based on the fact that children:

a.    Have developing nervous systems that are likely to be more vulnerable to potentially hazardous agents than mature nervous systems;

b.    Children have smaller heads, thinner skulls, and higher tissue conductivity which may mean that children can absorb more energy from a given phone than do adults; and

c.    If detrimental effects are found to be caused by mobile phones, those using phones for a longer period of their lives will tend to accumulate greater risk.

121.    The British Government through an independent expert group called the Stewart Inquiry, the German Academy of Pediatrics, the "Bundesamt füür Strahlenschutz", which is the federal authority for radiation protection in Germany, Sianette Kwee, Professor, Department of Medical Biochemistry, University of Aarhus, the Denmark Member of the Editorial Board of *Bioelectrochemistry* who is the Danish expert representative in the European Union's COST 281 project "Potential health effects from Emerging Wireless Communication systems", Thailand's interior minister, Dr. Gro Harlem Brundtland, the Director General of the World Health Organisation (WHO), and the French Government have all cautioned that children are at increased risk for experiencing adverse health effect from the use of WHHPs.

39

122.    A recent study determined that a WHHP call for just two minutes can continue to effect the electrical activity in a child's brain for up to an hour after use.  The same study showed that a child's use of a WHHP results in radiation penetrating deep into a child's brain.  Disturbed brain activity can lead to psychiatric or behavioral problems and may also cause learning difficulties in children.

123.    Another published study showed that WHHPs could cause memory loss and epilepsy in young users.  In the study it was found that nonthermal radiation from the WHHPs changed the structure of human cells and that children were particularly vulnerable because their skulls were smaller and thinner, making it easier for radiation to penetrate.

## VI.  CLAIMS FOR RELIEF

### COUNT I

### STRICT PRODUCT LIABILITY - FAILURE TO WARN

124.    The Plaintiffs on behalf of themselves, and others similarly situated, hereby incorporate by reference, as if fully set forth herein, all of the aforegoing paragraphs of the Amended Complaint, and further allege as follows.

125.    Defendants are manufacturers, suppliers and/or service providers of WHHPs and are engaged in the design, manufacture, sale and provision of service, of WHHPs.

126.    The WHHPs purchased by Plaintiffs were placed in the stream of commerce, sold and activated by the Defendants in a defective and unreasonably dangerous condition in that the WHHPs failed to include a proper warning regarding all possible adverse health effects associated with the use of WHHPs and the harmful effects of the radiation emitted from WHHPs to the Plaintiffs and those similarly situated.  The other Defendants, in like manner, failed to

40

include a proper warning to the other members of the Class and Minor Class regarding all possible adverse health effects associated with the use of WHHPs and the harmful effects of the radiation emitted from WHHPs.

127.   The WHHPs manufactured and/or supplied by the Defendants reached the Plaintiffs and others similarly situated without any substantial change in their condition and were in that same condition when used by Plaintiffs and others similarly situated.

128.   At all relevant times Defendants knew or should have known that Class Plaintiffs and the Minor child of Minor Class Plaintiff are exposed to RFR while using a WHHP and as a result are at increased risk for biological injury.

129.   At all relevant times Defendants knew or should have known that the increased risk of biological injury decreases the farther away the WHHP is located from the user during use of the WHHP.

130.   At all relevant times Defendants knew or should have known that headsets when used with a WHHP greatly reduce the risk of biological injury.  Knowing of the great reduction in risk Defendants have designed and marketed inexpensive headsets that dramatically reduce exposure to RFR thus reducing the risk of biological injury to the user.

131.   At all relevant times Defendants have promoted headsets as a mere convenience to the user without including in the instructions for use that headsets can greatly reduce the risk of biological injury to the user.

132.   Defendants Motorola, Verizon Wireless, AT&T, CEI and Baltimore Communications also failed to warn Plaintiffs and others similarly situated that other methods for using WHHPs were available, such as, but not limited to, a headset which would have

41

prevented the adverse health effects associated with the use of WHHPs. The other Defendants, in like manner, also failed to warn the other members of the Class and Minor Class that other methods for using WHHPs were available, such as, but not limited to, a headset which would have prevented the adverse health effects associated with the use of WHHPs.

133.    The Defendants knew or, by the application of reasonable, developed human skill and foresight, should have known of the unreasonably dangerous characteristics of the WHHPs because such knowledge was, at all times relevant to the claims herein, part of the "state of the art" body of knowledge in the relevant scientific and medical communities.

134.    At all times relevant to the claims herein, the Defendants failed to conduct adequate testing and research regarding the dangerous characteristics of WHHPs. Not only did the Defendants fail to engage in pre-market testing of WHHPs, but after introducing WHHPs into the marketplace, the Defendants continued to fail to fulfill their ongoing obligation to conduct adequate testing and research regarding the dangerous characteristics of WHHPs.

135.    The WHHPs purchased by the Plaintiffs were defective and unreasonably dangerous due to inadequate warnings or instructions because, after Defendants knew or should have known of the risk of injury from its use, Defendants failed to provide adequate warnings or instructions to Plaintiffs and others similarly situated as herein alleged. Defendants continued to aggressively promote the product and failed to provide a headset to Plaintiffs and others similarly situated. The other Defendants, in like manner, failed to provide adequate warnings or instructions to the other members of the Class and Minor Class.

136.    The failure to provide a warning or instruction as herein alleged or to provide a headset, made WHHPs unreasonably dangerous.

42

137.    The product warnings in effect during the period relevant to this Complaint were both substantively and graphically wholly inadequate to alert Plaintiffs and those similarly situated as to the risks associated with WHHP use.

138.    Defendants have never adequately informed the public about the risk of biological injury which poses a health risk to WHHP users or of the fact that the risk of injury can differ with the amount of use and the sensitivity of the user.

139.    As a direct and proximate result of the defective and unreasonably dangerous condition of the WHHP as alleged above, Plaintiffs, and others similarly situated, was and continues to be exposed to a health risk.

140.    At all times relevant hereto, the Defendants actually knew of the defective nature of WHHPs as herein set forth and continued to design, manufacture, market, sell and provide service for WHHPs so as to maximize sales and profits at the expense of public health and safety. At all relevant times the Defendants Motorola, Verizon Wireless, AT&T, CEI and Baltimore Communications as well as the other Defendants, could have eliminated or significantly mitigated the health risk alleged herein by acknowledging its existence and providing purchasers such as the Plaintiffs with a headset with appropriate warnings and instructions for use. The Defendants' abject refusal or failure to so act was motivated solely by their desire to maximize sales and profits at the expense of the users' health.

WHEREFORE, Plaintiffs pray for the following relief:

a.    For compensatory damages including but not limited to amounts necessary to purchase a WHHP headset for Plaintiff J. Douglas Pinney and for each Class Member and Minor Class Member;

b.  Reimbursing Plaintiff Richard Colonell and for each Class Member and Minor Class Member purchaser or lessee of a WHHP the cost incurred in purchasing or acquiring a headset;

c.  Providing each Class member and Minor Class member who has not been so provided, a WHHP that can be used with a headset;

d.  Providing each Class member and Minor Class member with instructions for the use of a headset, as well as reasons why a headset should be used;

e.  For punitive damages to Plaintiffs and other members of the Class and Minor Class;

f.  For costs, attorney fees, and legal pre-judgment interest; and

g.  An Order certifying the Class and Minor Class and appointing the Plaintiffs and their counsel to represent the Class and Minor Class.

## COUNT II

## VIOLATIONS OF MARYLAND CONSUMER PROTECTION ACT

141.    The Plaintiffs on behalf of themselves, and others similarly situated, hereby incorporate by reference, as if fully set forth herein, all of the aforegoing paragraphs of the Amended Complaint, and further allege as follows.

142.    Section 13-408 of the Maryland Consumer Protection Act, Md. Com. Law Code Ann. § 13-101 et seq., authorizes Plaintiffs, and others similarly situated, to bring an action to recover for loss sustained as a result of a practice prohibited by the Act.

143.    By engaging in the conduct described above, the Defendants have violated § 13-301(1), (2), (3) and (9) of the Consumer Protection Act by, among other things:

44

a.  engaging in unfair and deceptive trade practices as defined in §
    13-301(1) by making false and misleading oral and written
    statements that had, and have, the capacity, tendency or effect of
    deceiving or misleading Maryland consumers and Plaintiffs and
    others similarly situated;

b.  engaging in unfair or deceptive trade practices as defined in §
    13-301(2)(i) by making representations that WHHPs have an
    approval, characteristics, use or benefit which they do not have,
    including, but not limited to, the Defendants' statements
    concerning the lack of detrimental health consequences of the use
    of WHHPs when used without a headset;

c.  engaging in unfair or deceptive trade practices as defined in § 13-
    301(3)  by failing to state material facts the omission of which
    deceived or tended to deceive, including, but not limited to, facts
    relating to the lack of detrimental health consequences of the use of
    WHHPs when used without a headset; and

d.  engaging in unfair or deceptive trade practices as defined in  §
    13-301(9)(i) through their deception, fraud, misrepresentation and
    knowing concealment, suppression and omission of material facts
    with the intent that Maryland  consumers, including Plaintiffs and
    others similarly situated, rely upon the same in connection with the
    purchase and use of WHHPs.

45

144.    At all relevant times Defendants knew or should have known that Class Plaintiffs and the minor child of Minor Class Plaintiff are exposed to RFR while using a WHHP and as a result are at increased risk for biological injury.

145.    At all relevant times Defendants knew or should have known that the increased risk of biological injury decreases the farther away the WHHP is located from the user during use of the WHHP. At all relevant times Defendants knew or should have known that headsets when used with a WHHP greatly reduce the risk of biological injury. Knowing of the great reduction in risk Defendants have designed and marketed inexpensive headsets that dramatically reduce exposure to RFR thus reducing the risk of biological injury to the user.

146.    At all relevant times Defendants have promoted headsets as a mere convenience to the user without including in the instructions for use that headsets can greatly reduce the risk of biological injury to the user.

147.    To remedy these violations, it is requested that damages be awarded for the losses sustained by Plaintiffs, and others similarly situated, and reasonable attorneys' fees pursuant to § 13-408 of the Consumer Protection Act.

148.    As a direct and proximate result of the Defendants' violation of Maryland law, Plaintiffs and others similarly situated were exposed to biological injury resulting in a health risk.

WHEREFORE, Plaintiffs pray for the following relief:

a.    For compensatory damages including but not limited to amounts necessary to purchase a WHHP headset for Plaintiff J. Douglas Pinney and for each Class Member and Minor Class Member;

b.    Reimbursing Plaintiff Richard Colonell  and for each Class Member and Minor Class Member purchaser or lessee of a WHHP the cost incurred in purchasing or

46

acquiring a headset;

c.    Providing each Class member and Minor Class member who has not been so provided, a WHHP that can be used with a headset;

d.    Providing each Class member and Minor Class member with instructions for the use of a headset, as well as reasons why a headset should be used;

e.    For punitive damages to Plaintiffs and other members of the Class and Minor Class;

f.    For costs, attorney fees, and legal pre-judgment interest; and

g.    An Order certifying the Class and Minor Class and appointing the Plaintiffs and their counsel to represent the Class and Minor Class.

## COUNT III

## BREACH OF IMPLIED WARRANTIES

149.    The Plaintiffs on behalf of themselves, and others similarly situated, hereby incorporate by reference, as if fully set forth herein, all of the aforegoing paragraphs of the Amended Complaint, and further allege as follows.

150.    Under Maryland common and statutory law, a warranty of merchantability is implied in all sales transactions.  A warranty of merchantability is a warranty implied by law that a product is fit for the ordinary use for which it is used, is properly labeled and conforms to the representations made about it.  See Md. Code Ann., Com. Law. §§ 2-314 (2001).

151.    At the time Defendants marketed, sold and distributed WHHPs for use by Class Plaintiffs and others similarly situated and Minor Class Plaintiff's minor child and other similarly situated, Defendants knew of the use for which WHHPs were intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

152.     The other Defendants, in like manner, impliedly so warranted WHHPs to members of the classes who purchased or leased WHHPs from these other manufacturers and/or sellers.

153.     Class Plaintiffs, and minor child of Minor Class Plaintiffs and others similarly situated, used and/or operated the WHHPs as they were intended to be used and in the manner foreseeable by Defendants.

154.     Defendants Motorola, Verizon Wireless, AT&T, CEI and Baltimore Communications breached said warranty, as did the other Defendants to those similarly situated in that the WHHPs created a health risk and were unfit for ordinary and intended use as described above in failing to include a headset which shielded or protected users from RFR.

155.     As a direct and proximate result of the Defendants' breach, Class Plaintiffs and minor child of Minor Class Plaintiff, and others similarly situated, were subjected to a health risk.

WHEREFORE, Plaintiffs pray for the following relief:

a.     For compensatory damages including but not limited to amounts necessary to purchase a WHHP headset for Plaintiff J. Douglas Pinney and for each Class Member and Minor Class Member;

b.     Reimbursing Plaintiff Richard Colonell  and for each Class Member and Minor Class Member purchaser or lessee of a WHHP the cost incurred in purchasing or acquiring a headset;

c.     Providing each Class member and Minor Class member who has not been so provided, a WHHP that can be used with a headset;

d.     Providing each Class member and Minor Class member with instructions for the

use of a headset, as well as reasons why a headset should be used;

e.    For punitive damages to Plaintiffs and other members of the Class and Minor Class;

f.    For costs, attorney fees, and legal pre-judgment interest; and

g.    An Order certifying the Class and Minor Class and appointing the Plaintiffs and their counsel to represent the Class and Minor Class.

## COUNT IV

## FRAUD BY CONCEALMENT

156.    The Plaintiffs on behalf of themselves, and others similarly situated, hereby incorporate by reference, as if fully set forth herein, all of the aforegoing paragraphs of the Amended Complaint, and further allege as follows.

157.    Defendants Motorola, Verizon Wireless, AT&T, CEI and Baltimore Communications intentionally concealed their knowledge of material facts from the public and the Plaintiffs. The Defendant intentionally led the public and the Plaintiffs to believe under false pretenses that WHHPs were safe and did not create a health risk or cause biological injury.

158.    The remaining Defendants intentionally concealed their knowledge of material facts to other members of the classes and led them to believe under false pretenses that WHHPs were safe and did not create a health risk or cause biological injury.

159.    Defendants were acting at all times relevant within the scope of their business for their own economic and pecuniary benefit.

160.    Defendants intentionally concealed their knowledge of the health risks and biological injuries caused by RFR emitted by WHHPs in order to defraud the public, other members of the classes, and the Plaintiffs. Defendants committed fraud by, among other things:

49

(1) intentionally concealing evidence, as alleged in this Amended Complaint, that would have demonstrated to the Plaintiffs, and others similarly situated, that WHHPs are not safe for use; (2) as alleged throughout this Amended Complaint, intentionally failing to warn Plaintiffs, and others similarly situated, of research that indicated an association between RFR from WHHPs and health risks and biological injury; and (3) otherwise committing fraud which, upon information and belief, will be proven through documentary evidence, which is in the possession of the Defendants.

161.    As a direct and proximate result of Defendants' concealment, Plaintiffs and other similarly situated were exposed to a health risk and sustained biological injuries.

162.    At all times relevant hereto, the Defendants actually knew of the defective nature of WHHPs as set forth herein and continued to provide service for, design, manufacture, market and sell WHHPs so as to maximize sales and profits at the expense of public health and safety. Defendants' conduct is such as to establish that their actions were a result of fraud, evil motive, actual malice, and the conscious and deliberate disregard of foreseeable health risk and biological injury to Plaintiffs and others similarly situated. Therefore, Plaintiffs and others similarly situated are entitled to punitive damages.

WHEREFORE, Plaintiffs pray for the following relief:

a.    For compensatory damages including but not limited to amounts necessary to purchase a WHHP headset for Plaintiff J. Douglas Pinney and for each Class Member and Minor Class Member;

b.    Reimbursing Plaintiff Richard Colonell  and for each Class Member and Minor Class Member purchaser or lessee of a WHHP the cost incurred in purchasing or acquiring a headset;

c.    Providing each Class member and Minor Class member who has not been so

provided, a WHHP that can be used with a headset;

d.    Providing each Class member and Minor Class member with instructions for the

use of a headset, as well as reasons why a headset should be used;

e.    For punitive damages to Plaintiffs and other members of the Class and Minor

Class;

f.    For costs, attorney fees, and legal pre-judgment interest; and

g.    An Order certifying the Class and Minor Class and appointing the Plaintiffs and

their counsel to represent the Class and Minor Class.

## COUNT V

## CIVIL CONSPIRACY

163.    The Plaintiffs on behalf of themselves, and others similarly situated, hereby

incorporate by reference, as if fully set forth herein, all of the aforegoing paragraphs, and

specifically Counts I through IV of the Amended Complaint, and further allege as follows.

164.    At all times relevant and to the present time, Defendants formed

confederacies, trade associations or affiliations (CTIA, Telecommunications Industry Association

("TIA") and Wireless Telephone Research ("WTR")) and entered into agreements and/or tacit

understandings to jointly, and in conspiracy with each other, market, in disregard of the

obligations they owed the consuming public, through warranties and otherwise, unreasonably

dangerous and defective WHHPs. They conducted their marketing by improper and wrongful

means, including suppressing information related to the health risks and biological injury

associated with RFR emissions from WHHPs, and placing into the stream of commerce

51

dangerously defective WHHPs. In so doing, Defendants defrauded Plaintiffs, and others similarly situated, and failed to warn Plaintiffs and others similarly situated, of the biological injury and resulting health risks associated with WHHPs.

165.    Defendants acted collectively in:

    a.    marketing, producing and promoting the use of WHHPs without proper tests or warnings and without regard to the dangerous RFR emitted therefrom and its effects upon Plaintiffs and others similarly situated;

    b.    suppressing, discouraging and/or retarding appropriate research, testing, regulation and public dissemination of information concerning RFR emissions and the effects those emissions would have on the Plaintiffs and others similarly situated; and

    c.    ignoring, disparaging, or misleading the public about medical and scientific data available to them which clearly indicated that RFR emissions from WHHPs create biological injury and resulting health risks.

166.    Through the foregoing course of conduct, Defendants conspired to breach the warranties and commit the tortious acts described in this Amended Complaint, in furtherance of their agreement or understanding to promote and market WHHPs.

167.    The Defendants knew or, by the application of reasonable, developed human skill and foresight, should have known of the unreasonably dangerous characteristics of the WHHPs because such knowledge was, at all times relevant to the claims herein, part of the "state of the art" body of knowledge in the relevant scientific and medical communities.

168.    At all times relevant to the claims herein, the Defendants failed to conduct adequate testing and research regarding the dangerous characteristics of WHHPs.  Not only did the Defendants fail to engage in pre-market testing of WHHPs, but after introducing WHHPs into the marketplace, the Defendants continued to fail to fulfill their ongoing obligation to conduct adequate testing and research regarding the dangerous characteristics of WHHPs.

169.    Defendants were aware of the health risks and potential biological injury to those exposed to RFR emissions from WHHPs prior to the use of same by Plaintiffs and others similarly situated.

170.    At all relevant times, notwithstanding their knowledge of the health risks of RFR emission from WHHPs, Defendants collectively thwarted efforts to regulate and control RFR emissions of WHHPs.

171.    Notwithstanding their extensive knowledge of the health risks of RFR emissions from WHHPs, Defendants continued to promote WHHPs as appropriate for use and, in so doing, defrauded the Plaintiffs and others similarly situated into believing WHHPs are safe without the use of a headset.

172.    Defendants, acting collectively, to this very day, have failed and continue to fail to properly instruct and warn consumers about the health risks and biological injury associated with RFR emissions from WHHPs, notwithstanding Defendants' knowledge of same.

173.    At all relevant times, notwithstanding their knowledge of the health risks of RFR emissions from WHHPs, Defendants continued, and continue to this very day, to place into the stream of commerce dangerous and defective WHHPs without providing a headset.

174.    Defendants' collective, conspiratorial and tortious activities were knowingly and purposefully designed for their own economic and pecuniary benefit and were

performed in furtherance of Defendants' respective and joint business interests.

175.    As a direct and proximate result of Defendants' conduct, Plaintiffs and others similarly situated are being and will be exposed to a health risk due to the failure of Defendants to provide a headset.

176.    At all times relevant hereto, the Defendants actually knew of the defective nature of WHHPs, as herein set forth, and continued to design, manufacture, market, sell and/or provide service for WHHPs so as to maximize sales and profits at the expense of public health and safety. Defendants' conduct is such as to establish that their actions were a result of fraud, evil motive, actual malice, and the conscious and deliberate disregard of foreseeable health threats to Plaintiffs and others similarly situated.  Plaintiffs and others similarly situated are entitled to damages, punitive and compensatory.

WHEREFORE, Plaintiffs pray for the following relief:

a.      For compensatory damages including but not limited to amounts necessary to purchase a WHHP headset for Plaintiff J. Douglas Pinney and for each Class Member and Minor Class Member;

b.      Reimbursing Plaintiff Richard Colonell  and for each Class Member and Minor Class Member purchaser or lessee of a WHHP the cost incurred in purchasing or acquiring a headset;

c.      Providing each Class member and Minor Class member who has not been so provided, a WHHP that can be used with a headset;

d.      Providing each Class member and Minor Class member with instructions for the use of a headset, as well as reasons why a headset should be used;

e.      For punitive damages to Plaintiffs and other members of the Class and Minor

54

Class;

f.    For costs, attorney fees, and legal pre-judgment interest; and

g.    An Order certifying the Class and Minor Class and appointing the Plaintiffs and their counsel to represent the Class and Minor Class.

## COUNT VI

## CIVIL BATTERY

177.    The Plaintiffs on behalf of themselves, and others similarly situated, hereby incorporate by reference, as if fully set forth herein, all of the aforegoing paragraphs of the Amended Complaint, and further allege as follows.

178.    The aforementioned conduct and/or omissions by Defendants and/or their respective agents, servants, employees, and/or otherwise related or affiliated entities intentionally inflicted offensive, non-consensual touching to the Plaintiffs, and the general public by exposing them to RFR that they knew to cause biological injury to the human body and adverse health effects.

179.    Defendants, directly and/or through their respective agents, servants, employees, and/or otherwise related or affiliated entities, intended to cause and inflict offensive, non-consensual touching to the Plaintiffs and the general public.

180.    As a direct and proximate result of Defendants' aforesaid intentional conduct and/or omissions, Plaintiffs and other similarly situated have sustained repeated biological injuries and/or harm, and are likely to sustain additional such injuries in the future.

WHEREFORE, Plaintiffs pray for the following relief:

a.    For compensatory damages including but not limited to amounts necessary to purchase a WHHP headset for Plaintiff J. Douglas Pinney and for each Class

55

Member and Minor Class Member;

b.  Reimbursing Plaintiff Richard Colonell and for each Class Member and Minor Class Member purchaser or lessee of a WHHP the cost incurred in purchasing or acquiring a headset;

c.  Providing each Class member who has not been so provided, a WHHP that can be used with a headset;

d.  Providing each Class member and Minor Class member with instructions for the use of a headset, as well as reasons why a headset should be used;

e.  For punitive damages to Plaintiffs and other members of the Class and Minor Class;

f.  For costs, attorney fees, and legal pre-judgment interest; and

g.  An Order certifying the Class and Minor Class and appointing the Plaintiffs and their counsel to represent the Class and Minor Class.

## COUNT VII

## NEGLIGENT MISREPRESENTATION

181.  The Plaintiffs on behalf of themselves, and others similarly situated, hereby incorporate by reference, as if fully set forth herein, all of the aforegoing paragraphs of the Amended Complaint, and further allege as follows:

182.  Defendants had a duty of care to Plaintiffs and others similarly situated. This duty required the transmittal of accurate information in a timely manner to purchasers or lessees of WHHPs. Defendants' statements that WHHPs are safe were and are not true. These false representations were made numerous times by many Defendants.

183.  Defendants were negligent in the false assertion that WHHPs were safe.

-56-

Appropriate investigation by Defendants or review of the available scientific information would have enabled Defendants to properly advise and/or warn users of the potential for biological injury and/or harm following the use of WHHPs.

184.    Statements made by Defendants to Plaintiffs and those similarly situated were made with the intention of having Plaintiffs act and rely upon Defendants' negligent statements. Defendants' statements were made in order to encourage the sale of WHHPs to Plaintiffs and those similarly situated and therefore increase revenues.

185.    Defendants knew that Plaintiffs and those similarly situated would probably rely upon and did rely upon Defendants' negligent statements and that Plaintiffs, Plaintiffs minor children and those similarly situated did incur biological injury and/or harm as a result of using Defendants WHHPs.

WHEREFORE, Plaintiffs pray for the following relief:

a.    For compensatory damages including but not limited to amounts necessary to purchase a WHHP headset for Plaintiff J. Douglas Pinney and for each Class Member and Minor Class Member;

b.    Reimbursing Plaintiff Richard Colonell  and for each Class Member and Minor Class Member purchaser or lessee of a WHHP the cost incurred in purchasing or acquiring a headset;

c.    Providing each Class member who has not been so provided, a WHHP that can be used with a headset;

d.    Providing each Class member and Minor Class member with instructions for the use of a headset, as well as reasons why a headset should be used;

e.    For punitive damages to Plaintiffs and other members of the Class and Minor

Class;

f.   For costs, attorney fees, and legal pre-judgment interest; and

g.   An Order certifying the Class and Minor Class and appointing the Plaintiffs and

their counsel to represent the Class and Minor Class.

## VII.  JURY DEMAND

Plaintiffs hereby demand a trial by jury for such issues as may be tried by a jury.

Peter G. Angelos
H. Russell Smouse
John A. Pica, Jr.
John C. M. Angelos
Glenn E. Mintzer
Law Offices of Peter G. Angelos, P.C.
100 N. Charles Street
One Charles Center, 19th Floor
Baltimore, Maryland 21201
(410) 649-2000

Attorneys for Plaintiffs

## MDL Panel Service List

\* - By agreement of counsel, these individuals have agreed to accept service via E-mail and Hand Delivery on September 19, 2002, and will forward copies to all additional counsel on this Service List.

Michael R. Allweiss, Esquire
Lowe, Stein, Hoffman, Allweiss &
Hauver
One Shell Square
701 Poydras Street
Suite 3600
New Orleans, LA 70139

Charles L. Babcock, Esquire
David T. Moran, Esquire
James M. McCown, Esquire
Ryan C. Wirtz, Esquire
Jackson & Walker, L.L.P.
901 Main Street, Ste. 6000
Dallas, TX 75202

John H. Beisner, Esquire
O'Melveny & Myers, L.L.P.
555 13th Street, N.W.
Suite 500 West
Washington, DC 20004

Ray M. Aragon, Esquire
Raymond B. Biagini, Esquire
McKenna & Cueno, LLP
1900 K Street, N.W.
Washington, DC 20006

Frank A. Citera, Esquire
Greenberg Traurig Inc.
77 West Wacker Drive
Suite 2500
Chicago, IL 60601

Edward M. Crane, Esquire
David L. Hanselman, Esquire
Skadden, Arps, Slate, Meagher &
Flom
333 West Wacker Drive
Suite 2100
Chicago, IL 60606

Seamus Duffy, Esquire
Drinker, Biddle & Reath, L.L.P.
One Logan Square
1th & Cherry Streets
Philadelphia, PA 19103

Leon Gary, Jr., Esquire
Jones, Walker, Waechter, et al.
8555 United Plaza Boulevard
5th Floor
Baton Rouge, LA 70809

Bryan Hopkins, Esquire
General Counsel
Samsung Electronics America,
Inc.
105 Challenger Road
Ridgefield Park, NJ 07660

James B. Irwin, Esquire
Brian P. Quirk, Esquire
Irwin, Fritchie, Urquhart & Moore,
L.L.C.
400 Poydras Street, Suite 2700
New Orleans, LA 70130

Mark H. Kolman, Esquire
Leslie R. Cohen, Esquire
Dickstein, Shapiro, Morin &
Oshinsky, LLP
2101 L Street, NW
Washington, DC 20037

J. Stan Sexton, Esquire
Michael D. Moeller, Esquire
Shook, Hardy & Bacon, L.L.P.
One Kansas City Place
1200 Main Street
Kansas City, MO 64105

Maureen E. Murphy, Esquire
Murphy & Murphy
14 North Rolling Road
Catonsville, MD 21228

Nathan I. Nahm, Esquire
Hughes, Hubbard & Reed, LLP
One Battery Park Plaza
New York, NY 10004

H. Michael O'Brien, Esquire
Wilson, Elser, Moskowitz,
Edelman & Dicker, LLP
Three Gannett Drive
White Plains, NY 10604

Charles L. Perry, Esquire
Arter & Hadden, L.L.P.
1717 Main Street Suite 4100
Dallas, TX 75201

Mark F. Horning, Esquire
Thomas M. Barba, Esquire
Steptoe & Johnson, LLP
1330 Connecticut Avenue, NW
Washington, DC 20036-1795

Richard E. Regan, Esquire
3324 North Causeway Boulevard
Metairie, LA 70002

Donald Segal, Esquire
Segal, McCambridge, Singer &
Mahoney, Ltd.
One IBM Plaza, Suite 200
330 North Wabash Avenue
Chicago, IL 60611

John A. Stewart, Jr., Esquire
Hulse & Wanek
1010 Common Street
Suite 2800
New Orleans, LA 70112

Elwood E. Swam, Esquire
1325 Main Street
P.O. Box 176
Hampstead, MD 21074

Pete Swayze, Esquire
Segal, McCambridge, Singer &
Mahoney, Ltd.
1515 Market Street Suite 1720
Philadelphia, PA 19102

Garrett B. Johnson, Esquire
Terrence J. Dee, Esquire
Michael Slade, Esquire
Marchell Willian, Esquire
Kirkland & Ellis
200 East Randolph Drive
Chicago, IL 60601

Steven M. Zager, Esquire
Charles S. Baker, Esquire
Brobeck, Phleger & Harrison, LLP
4801 Plaza on the Lake
Austin, TX 78746

Kevin B. Getzendanner, Esquire
Arnall Golden Gregory LLP
1201 West Peachtree Street
2800 One Atlantic Center
Atlanta, GA 30309-3450

Kenneth A. Jacobsen, Esquire
22 West Front Street
Media, Pennsylvania 19063

Debra E. Pole, Esquire
Brobeck, Phleger & Harrison, LLP
550 South Hope Street
Los Angelos, CA 90071

Conrad S. P. Williams, III, Esquire
St. Martin & Williams
P.O. Box 2017
Houma, LA 70361

Madeline M. Sherry, Esquire
Hecker, Brown, Sherry and Johnson, LLP
1700 Two Logan Square
18th and Arch Street
Philadelphia, PA 19103

Paul Walter, Esquire
John B. Isbister, Esquire
Harold M. Walter, Esquire
Tydings & Rosenberg, LLP
100 East Pratt Street, 26th Floor
Baltimore, Maryland 21202

Terry Christovich Gay, Esquire
Kevin R. Tully, Esquire
Christovich & Kearney, LLP
Pan American Life Center, Suite 2300
601 Poydras Street
New Orleans, LA 70130

Christopher P. Johnson, Esquire
Brobeck, Phleger & Harrison, LLP
1633 Broadway, 47th Floor
New York, New York 10019

Walter L. McDonough, Esquire
Swartz Campbell & Detweiler
1601 Market Street, 34th Floor
Philadelphia, PA 19103

Lorna McKenzie, Esquire
William Schaaf, Esquire
LeBoeuf, Lamb, Green & MacRae, LLP
125 West 55th Street
New York, New York 10019

Warren L. Simpson, Jr., Esquire
Weber Goldstein Greenberg & Gallagher, LLP
The Belgravia Building
1811 Chestnut Street, Suite 600
Philadelphia, PA 19103

William J. O'Brien, Esquire
Howard M. Klein, Esquire
Gabriel Holdsman, Esquire
Conrad O'Brien Gellman & Rohn, PC
1515 Market Street, 16th Floor
Philadelphia, PA 19102

David E. Fox, Esquire
Jonathan D. Sasser, Esquire
Moore & Van Allen, PLLC
One Hannover Square, Suite 1700
P.O. Box 26507
Raleigh, NC 27611

James P. Ulwick, Esquire
Kramon & Graham, P.A.
One South Street, Suite 2600
Baltimore, Maryland 21201

Paul S. Schleifman, Esquire
Shook, Hardy & Bacon, LLP
600 14th Street, N.W., Suite 800
Washington, D.C. 20005

Lawrence J. Duplass, Esquire
Christian B. Bogart, Esquire
Duplass, Zwain, Bourgeois & Morton
3838 North Causeway Boulevard, Ste. 2900
Metairie, LA 70002

Timothy M. Donovan, Esquire
Vice President and Secretary
NEC America, Inc.
Legal Division
8 Corporate Center Drive
Melville, New York 11747

Joanne M. Gray, Esquire
Edward S. Weltman, Esquire
Goodwin, Proctor, LLP
1258 Avenue of the Americas
New York, New York 10019

*
Michael E. Yaggy, Esquire
Kenneth L. Thompson, Esquire
Piper, Rudnick, LLP
6225 Smith Avenue
Baltimore, Maryland 21209

Hal C. Welch, Esquire
Lemle & Kelleher, LLP
Pan American Life Center, 21st Floor
601 Poydras Street
New Orleans, LA 70130-6097

Evan M. Eisland, Esquire
Ralph Berman, Esquire
Davidoff & Malito, LLP
605 Third Avenue, 34th Floor
New York, New York 10158

Jack Pierce Brook, Esquire
Jan T. Van Loon, Esquire
David M. Latham, Esquire
Brook Van Loon & Latham, LLP
1010 Common Street, 31st Floor
New Orleans, LA 70112

Paul D. Krause, Esquire
Laura N. Steel, Esquire
Wilson, Elser, Moskowitz,
Edelman & Dicker, LLP
1341 G Street, N.W., 5th Floor
Washington, D.C. 20005

Marjorie Press Lindblom, Esquire
Peter A. Bellacosa, Esquire
Kirkland & Ellis
Citigroup Center
153 East 53rd Street
New York, New York 10022

Ronald P. Schiller, Esquire
Joseph Kernen, Esquire
Piper, Rudnick, LLP
3400 Two Logan Square
Philadelphia, PA 19103-2762

William T. Hangley, Esquire
Mark Aronchick, Esquire
Robert T. Ebby, Esquire
Hangley, Aronchick, Segal and
Pudlin
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933

Brandt K. Enos, Esquire
Janet MacDonell, Esquire
Deutsch, Kerrigan & Stiles, LLP
755 Magazine Street
New Orleans, LA 70130-3672

James R. Thomson, Esquire
Obermayer, Rebmann, Maxwel &
Hippell, LLP
20 Brace Road, Suite 300
Cherry Hill, New Jersey 08034

Mark Seyler, Esquire
Barkley & Thompson
1515 Poydras Street, suite 2350
New Orleans, LA 70130

Charles M. Steen, Esquire
Stephanie McShane &
Williamson, LLC
Energy Center, Suite 1250
1100 Poydras Street
New Orleans, LA 70163

Robert J. Hafner, Esquire
Edward A. Gray, Esquire
Lavin, Coleman, O'Neil, Ricci,
Finarelli & Gray
510 Walnut Street, 10th Floor
Philadelphia, PA 19106

Robert S. Levy, Esquire
Levy & Stopol
1 Pennsylvania Avenue
New York, New York 10119

Randy Paar, Esquire
Dickstein, Shapiro, Morin &
Oshinsky, LLP
1177 Avenue of the Americas
New York, New York 10036-2714

Loring I. Fenton, Esquire
Greenberg Traurig, LLP
885 Third Avenue
New York, New York 10022

Gregg L. Bernstein, Esquire
Denis J. Charlesworth, Esquire
217 East Redwood Street, Suite
2000
Baltimore, Maryland 21202

George C. Doub, Esquire
William H. Murphy, III, Esquire
William H. Murphy, Jr. & Assoc.
12 West Madison Street
Baltimore, Maryland 21201

Rochelle M. Fedullo, Esquire
Wilson, Elser, Moskowitz,
Edelman & Dicker, LLP
The Curtis Center, Suite 1130
East
Independence Square West
Philadelphia, PA 19106

Mary Joan McNamara, Esquire
Semmes, Bowen & Semmes
250 West Pratt Street
Baltimore, Maryland 21201

Christopher M. Mason, Esquire
Nixon Peabody, LLP
437 Madison Avenue
New York, New York 10022

Raymond Ward, Esquire
Sessions, Fishman & Nathan,
LLP
201 St. Charles Avenue, 35th
Floor
New Orleans, LA 70170-3500

Edward W. Gerecke, Esquire
Carlton, Fields, Ward, Emmanuel,
Smith & Cutler
One Harbour Place
Tampa, Florida 33602

Robert D. Kaplan, Esquire
Hallie, B. Levin, Esquire
Friedman, Kaplan, Sieler &
Adelman, LLP
875 Third Avenue
New York, New York 10022

M. Norman Goldberger, Esquire
Charles M. Hart, Esquire
Wolf, Block, Schorr & Solis-
Cohen, LLP
1650 Arch Street, 22nd Floor
Philadelphia, PA 19103-2097

Roy C. Cheatwood, Esquire
Nancy Scott Degan, Esquire
Kent A. Lambert, Esquire
Phelps, Dunbar, LLP
Suite 2000, Canal Place
365 Canal Street
New Orleans, LA 70130

Jane Fugate Thorpe, Esquire
Scott A. Elder, Esquire
Alston & Bird, LLP
1201 West Peachtree Street
Atlanta, GA 30309-3424

M. King Hill, III, Esquire
Venable, Baetjer & Howard, LLP
210 Allegheny Avenue
P.O. Box 5517
Towson, Maryland 21204

*
Paul F. Strain, Esquire
Venable, Baetjer & Howard, LLP
1800 Mercantile Bank & Trust
Building
2 Hopkins Plaza
Baltimore, Maryland 21201

Tom Watson, Esquire
Curtis S. Renner, Esquire
Watson & Renner
1919 M Street, N.W., Ste. 400
Washington, D.C. 20036

Robert C. Heim, Esquire
Robert A. Limbacher, Esquire
E. McCord Clayton, Esquire
Dechart, Price & Rhoads
4000 Bell Atlantic Tower
1717 Arch Street
Philadelphia, PA 19103

Philip A. Wittmann, Esquire
Steven W. Usdin, Esquire
Stone, Pigrnan, Walther,
Wittmann & Hutchinson, LP
546 Carondelet Street
New Orleans, LA 70130-3588

Robert M. Leonard, Esquire
Drinker, Biddle & Reath, LLP
11 Penn Plaza, 5th Floor
New York, New York 10001

David J. Molton, Esquire
Steven E. Bizar, Esquire
Buchanan Ingersoll, P.C.
140 Broadway, 35th Floor
New York, New York 10005

Howard D. Scher, Esquire
Steven E. Bizar, squire
Ellen E. Farina, Esquire
Buchanan Ingersoll, P.C.
Eleven Penn Center, 14th Floor
1835 Market Street
Philadelphia, PA 19103

Richard E. Regan, Esquire
Regan & Post, LLP
3324 North Causeway Boulevard
Metairie, LA 70002

Charles P. Goodell, Esquire
James A. Frederick, Esquire
Goodell, DeVries, Leech & Dann
One South Street, 20th Floor
Baltimore, Maryland 21202

Alan M. Unger, Esquire
Sidley, Austin, Brown & Wood
875 Third Avenue
New York, New York 10022

Mark A. Jeansonne, Esquire
Milling, Benson, Woodward
909 Poydras Street, Ste. 2300
New Orleans, LA 70112

Susan K. Hershel, Esquire
Hoyle, Moths & Kerr, LLP
1650 Market Street, 49th Foor
Philadelphia, PA 19103

Richard A. Dean, Esquire
Arter & Hadden, LLP
1801 K Street, N.W., Suite 400K
Washington, D.C. 20006

Matt J. Farley, Esquire
Krebs, Fancy & Pelleteri, LLC
400 Poydras Street, Suite 2500
New Orleans, LA 70130

C. Theodore Alpaugh, Esquire
Smith Martin
700 Camp Street
New Orleans, LA 70130

Edward H. Bergin, esquire
David G. Radlauer, Esquire
Nan Roberts Eitel, Esquire
Genevieve H. Salassi, Esquire
Matthew Brown, Esquire
Jones, Walker, Waechter,
Poitevent,
   Carrere & Denegre, LLP
201 St. Charles Avenue
49th Avenue
New Orleans, LA 70170

Daryll Love, Esquire
Allen Willingham, Esquire
Vicky M. McGinty, Esquire
Love Willingham Peters Gilleland
& Monyak, LLP
600 Peachtree Plaza
Suite 2200
Atlanta, GA 30308

Christopher J. Wright, Esquire
Harris, Wiltshire & Grannis, LLP
1200 Eighteenth Street, N.W.,
Suite 1200
Washington, D. C. 20036

Waller T. Dudley, Esquire
McGuire Woods, LLP
1750 Tysons Boulevard, Suite
1800
McLean, Virginia 22102

Steven A. Haber, Esquire
Obermayer, Rebmann, Maxwell
& Hippel, LLP
One Penn Center
1617 John F. Kennedy
Boulevard, 19th Floor
Philadelphia, PA 19103

James H. Price, III, Esquire
McGuire, Woods, LLP
One James Center
901 East Cary Street
Richmond, Virginia 23210-4030

Ronald M. Cherry, Esquire
Patrick R. Buckler, Esquire
Walter T. Dudley, Esquier
McGuire Woods, LLP
7 Saint Paul Street, Suite 1000
Baltimore, Maryland 21202

Michael Weinstock, Esquire
Richard Capriola, Esquire
Jan P. Cohen, Esquire
Daniel P. Sinaiko, Esquire
Weinstock & Scavo, P.C.
3405 Piedmont Road, NE, Suite
300
Atlanta, GA 30305

Timothy H. Kratz, Esquire
Angela M. Spivey, Esquire
McGuire, Woods, LLP
1170 Peachtree Street, N.W.,
Suite 2100
Atlanta, GA 30309

Todd G. Friedland, Esquire
Pillsbury, Winthrop, LLP
650 Town Center Drive
Seventh Floor
Costa Mesa, CA 92626

Jameson B. Carroll, Esquire
King & Spalding
191 Peachtree Street
Atlanta, GA 30303

Stephen C. Greenberg, Esquire
Scott E. Morris, Esquire
Holt Ney Zatcoff & Wasserman,
LLP
100 Galleria Parkway, Suite 600
Atlanta, GA 30339-5911

Michael B. Terry, Esquire
Joshua F. Thorpe, Esquire
Bondurant, Mixson & Elmore,
LLP
1201 West Peachtree Street,
N.W., Ste. 3900
Atlanta, GA 30309

Russell J. Rogers, Esquire
Lawrence A. Slovensky, Esquire
Long Aldrige & Norman, LLP
303 Peachtree Street, Suite 5300
Atlanta, Georgia 30308

R. Wayne Bond, Esquire
Joel G. Pieper, Esquire
Womble, Carlyle Sandridge &
Rice, PLLC
1201 West Peachtree Street,
Suite 3500
Atlanta, GA 30308

John A. Howard, Esquire
Burr & Forman
600 West Peachtree Street, N.W.
Suite 1200
Atlanta, Georgia 30308

A. Timothy Jones, Esquire
Frank C. Bedinger, III, Esquire
Hawkins & Parnell
303 Peachtree Street, N.E., Ste.
4000
Atlanta, GA 30308

Stephen L. Cotter, Esquire
Robert S. Huestis, Esquire
Swift, Currie, McGhee & Hiers,
LLP
1355 Peachtree Street, N.E.,
Suite 300
Atlanta, Georgia 30309

Ernest L. Greer, Esquire
Robert E. Spears, Jr., Esquire
Greenberg Traurig, LLP
3290 Northside Parkway, N.W.,
Ste. 400
Atlanta, Georgia 30327

Matthew H. Patton, Esquire
G. William Austin, Esquire
Michael W. Tyler, Esquire
Kilpatrick Stockton, LLP
1100 Peachtree Street, Suite 2800
Atlanta, Georgia 30309

J. Marbury Rainer, Esquire
Cinnamon V. Davis, Esquire
Parker, Hudson, Rainer & Dobbs,
LLP
1500 Marquis Two Tower
285 Peachtree Center Avenue
Atlanta, GA 30309

Daniel S. Reinhardt, Esquire
Steven J. Hewitson, Esquire
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, GA 30308

Richard B. North, Jr., Esquire
Donald L Swift, III, Esquire
Nelson Mullins Riley &
Scarborough, LLP
First Union Plaza
999 Peachtree Street, N.E., Ste.
1400
Atlanta, GA 30309

William D. Barwick, Esquire
Elizabeth W. Boswell, Esquire
James A. Orr, Esquire
Russell S. Bonds, Esquire
Sutherland, Asbill & Brennan, LLP
999 Peachtree Street, N.E.
Atlanta, GA 30309

John J. Nagle, Esquire
Winn C. Friddell, Esquire
Bodie, Nagle, Dolina, Smith &
Hobbs
21 West Susquehanna Avenue
Towson, Maryland 21204

Steve Pierce, Esquire
AT&T Wireless Services
5501 LBJ Freeway
Suite 1001, MS: 1001
Dallas, Texas 75240

Eugene A. Schoon, Esquire
Tamar B. Kelber, Esquire
James W. Mizgala, Esquier
Sidley Austin Brown & Wood
Bank One Plaza
10 South Dearborn
Chicago, IL 60603

James W. Bartlett, III, Esquire
Andrew M. Winick, Equire
Wilson Elser Moskowitz Edelman
& Dicker, LLP
400 East Pratt Street, 7th Floor
Baltimore, Maryland 21202

Daniel S. Reinhardt, Esquire
Steven J. Hewitson, Esquire
Troutman Sanders, LLP
5200 Bank of America Plaza
600 Peachtree Street, N.E.
Atlanta, Georgia 30308

Steven M. Laduzinsky, Esquire
Scott A. Hanfling, Esquire
Kane, Laduzinsky & Mendoza,
Ltd.
225 West Washington, Ste. 1100
Chicago, IL 60606

Ralph A. Taylor, Jr., Esquire
Bruce K. Traubin, Esquire
Dorsey & Witney, LLP
1001 Pennsylvania Avenue, N.W.
Suite 400 South
Washington, D.C.  20004

Allen W. Nelson, Esquire
Bell South Corp.
1155 Peachtree Street, N.E.
Atlanta, GA 30309

Paul Freehling, Esquire
John Leja, Esquire
D'Ancona & Pflaum, LLC
111 East Wacker Drive
Suite 2800
Chicago, IL 60601

Richard Parr, Esquire
SBC Management Services, Inc.
175 E. Houston Street
San Antonio, Texas 78205

Jeffrey A. Christianson, Esquire
Western Wireless Corp.
3650 131st Avenue, S.E.
Bellvue, Washington 98006

H. RUSSELL SMOUSE