.-1          TLC\RAH                    Firm I.D.   04721

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

DEBBRA K. WRIGHT,                    )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )
                                     )  NO.:
MOTOROLA, INC.,                      )
CELLULAR TELECOMMUNICATION           )
INDUSTRY ASSOCIATION, RONALD         )
NESSEN, DR. GEORGE CARLO,            )  JURY DEMAND
and HEALTH AND ENVIRONMENTAL         )
SCIENCES GROUP,                      )
                                     )
          Defendants.                )

**COMPLAINT**

NOW COMES Plaintiff, DEBBRA K. WRIGHT, by her attorneys, HOLSTEIN, MACK & KLEIN, BARNOW and HEFTY, P.C., and LARRY D. DRURY, LTD. and states for her complaint against Defendants, MOTOROLA, INC., CELLULAR TELECOMMUNICATION INDUSTRY ASSOCIATION, RONALD NESSEN, DR. GEORGE CARLO and HEALTH AND ENVIRONMENTAL SCIENCES GROUP, the following:

1.    This is civil action arising out of the manufacture and sale of cellular portable telephones.  The grounds for relief are: Implied Warranty of Merchantability under the Uniform Commercial Code ("UCC"), 810 ILCS 5/2-314 et seq. (Count I); Implied Warranty of Fitness for a Particular Purpose under the Uniform Commercial Code, 810 ILCS 5\2-315 et seq. (Count II); Express Warranty under the Uniform Commercial Code, 810 ILCS 5/2-313 et seq. (Count III); Products Liability-Negligence (Count V); Products Liability-Strict Liability (Count V); Consumer

1

Conspiracy (Count VII).

2.    The court has jurisdiction over the Defendants pursuant to 735 ILCS 5/2-209 (1992).

3.    Venue is proper in this court pursuant to 735 ILCS 5/2-102 (1992); Defendant MOTOROLA resides in this county for venue purposes.

**FACTS**

4.    On or about February 1988, Plaintiff WRIGHT, commenced using, a new cellular portable telephone manufactured and sold by Defendant MOTOROLA and continued said use until January 1990. She believed it was Model Number 8000 or 950.

5.    On or about January 1990, Plaintiff WRIGHT, commenced using, a new cellular portable telephone manufactured and sold by Defendant MOTOROLA, Model Number 9000 and continued said use until January 1992.

6.    On or about July 15, 1992, Plaintiff WRIGHT, commenced using, a new cellular portable telephone manufactured and sold by Defendant MOTOROLA, Model Number DYC-500 and continued said use until March 1994.

7.    Plaintiff was diagnosed with a brain tumor in December of 1993 and underwent surgery to remove the tumor on March 23, 1994. Another surgery is scheduled and will be performed on March 8, 1995.

8.    Plaintiff WRIGHT, a 42 year old mother of three children ranging in ages from 13 to 21 years, has been gainfully

2

employed in the cellular telephone industry beginning in January 1988 with US West Cellular. Within a four period, Plaintiff WRIGHT was promoted from a Sales Representative to Major Account Manager.

9.  Plaintiff WRIGHT is presently employed with Bell Atlantic Mobile (since July 1992) and was recently promoted from Assistant Real Estate Manager to Real Estate Manager.

10.  Although, Plaintiff WRIGHT's brain tumor has not destroyed her will to strive for success, her life will be continuously plagued with the tumorous growth in her brain and 24-hour pain due to pressure on her fifth facial nerve.

11.  Following her first surgery in March 1994, not only was part of Plaintiff WRIGHT's brain tumor removed, but the surgery made her susceptible to cold temperatures. Upon exposure to cold temperatures, Plaintiff WRIGHT experiences excruciating left facial pain to the point where she has broken molars.

12.  Unlike other injuries, Plaintiff WRIGHT's brain tumor which is infringing on and around the left main artery in her brain as well as on the optical nerves, the fourth and fifth facial nerve, and the portion of the brain that permits Plaintiff WRIGHT to speak, can never be completely removed without ending her life as she now knows it. Future surgical intervention may not only remove Plaintiff WRIGHT's brain tumor, but it may also result in blindness, muteness and/or Plaintiff being in a vegetative state.

## MOTOROLA

13.  At all times relevant, Defendant MOTOROLA manufactured and/or supplied and/or offered for sale and sold intrastate, interstate, and in foreign commerce cellular portable telephones in which the transmission antenna emitting the cellular portable telephone's radio waves and electromagnetic radiation ("EMR") is part of the unit into which the user speaks and is in close proximity to the user's head.

14.  Defendant MOTOROLA's cellular portable telephones transmit high frequency electromagnetic radio waves in the cellular band at a range of approximately 800 to 900 megahertz [MHz] (800-900 million cycles per second).

15.  MOTOROLA researchers and engineers have known since the late 1970s and early 1980s that radiofrequency energy is absorbed deeply into biological tissue such as the human head and brain. "The 800 to 900 MHz band is very close to the frequencies used for medical diathermy (918 MHz). Diathermy applicators at 918 MHz are well known for efficiently depositing energy deep into human tissue. This fact may create some concern about exposure of the head of a portable transmitter operator". **IEEE Transactions on Vehicular Technology**, Vol. VT-27, No. 4 Nov. 1978, pp. 174-181. This research was conducted at the request and direction of MOTOROLA.

16.  In 1990, an Environmental Protection Agency draft report concluded that electromagnetic fields were probable or possible carcinogens. Defendant MOTOROLA failed to inform the

4

public, including Plaintiff, through warnings, mailings,
advertisements or any other means.

17.  In a paper published in 1990, Dr. Stephen Cleary of
Virginia Commonwealth University in Richmond showed that
unmodulated 27 MHz and 2450 MHz radiation can accelerate the
proliferation of human brain tumor cells. **"Commentary on Cellular
portable telephone Health Risks"**, <u>**Microwave News**</u>, **Vol. XIII No.1,
January/February 1993, p. 11.**

18.  Thereafter, studies conducted by Dr. W. Ross Adey, a
scientist under contract with MOTOROLA, demonstrated that human
cells in a petri dish showed no abnormalities after being exposed
to radio waves in the cellular spectrum ranging from 800 million
to 900 million cycles per second.  MOTOROLA cited to these
unmodulated studies as evidence that the cellular telephones are
safe.   However, a misleading and inconsistent picture of the
scientific data is presented by MOTOROLA.  What MOTOROLA failed
to note was that these studies showed that the radiation, <u>when
modulated</u>, do induce biological changes. **Keller, John J.,
"Motorola Moves to Ease Fears or Safety of Cellular portable
telephones, <u>Wall Street Journal</u>, January 26, 1993.**(emphasis
added).

19.  In fact, Adey, himself, said it was premature to say
his studies indicated that the cellular radio waves do not
promote tumor formation.  He noted that "the second part of the
study, which focuses on rats, would take two years to complete".
**Keller, John J., "Motorola Moves to Ease Fears or Safety of**

Cellular portable telephones, <u>Wall Street Journal</u>, January 26, 1993.

20.  Other scientific research conducted by Adey has shown that high-frequency emissions do have biological effects on tissue.  Tests of radio waves at lower and higher frequencies than those emitted by cellular portable telephones have indicated a breakdown of the calcium that coats human cell walls and which transmits hormonal messages between cells and have also resulted in abnormal growth of human cells. **Keller, John J., "Motorola Moves to Ease Fears or Safety of Cellular portable telephones, <u>Wall Street Journal</u>, January 26, 1993.**

21.  MOTOROLA misrepresented the truth at a press conference on January 25, 1993 when Mr. Edward F. Staiano, president of General Systems Sector of MOTOROLA, said:

> First, let me assure you that all of our products are safe.  None of this scientific inquiry has demonstrated the existence of health risks from the use of cellular telephones." **"Research Promised as Cellular portable telephone Industry Faces Safety Questions"**, <u>Microwave News</u>, Vol. XIII No.1, January/February 1993, p.11.

22.  Quirino Balzano, an officer of MOTOROLA, corporate officer, and significant stockholder for MOTOROLA, stated that MOTOROLA can say with certainty that the cellular telephone units are safe because of the thoroughness of the process used to set safety standards for human exposure to radio frequency electromagnetic fields which were finalized in December 1992. **Hazard, Anne, "No Reason to Panic on Mobile Phones"**, <u>Chicago Tribune</u>, February 3, 1993.

23.  At a press conference in or around February 4, 1993, again MOTOROLA's Staiano reassured the public of the safety of the cellular telephones by stating that the cellular portable telephones' safety is "rooted in scientific fact" citing "thousands of studies" taken over forty years.  (See copies of newspaper reports and commentary based upon speeches and statements given by or made on behalf of MOTOROLA is herein attached as Exhibits A and B respectively).

24.  At all times relevant, on information and belief, Defendant MOTOROLA has possessed knowledge of certain safety alternatives designed to decrease or eliminate the user's exposure to harmful or potentially harmful radio waves and EMR as well as information regarding the fact that the cellular portable telephones have never been proven safe and opinions of industry experts that usage should not be conducted in the manner and extent represented by Defendant MOTOROLA.

25.  To date, Defendant MOTOROLA has not conducted studies to accurately ascertain the long-term cumulative effects of using cellular portable telephones.  Prior to 1992, Defendant MOTOROLA did not apprise the general public, including Plaintiff, of this blatant lack of empirical data and/or lack of conclusive empirical studies with respect to safety of radio waves and EMR operating at the cellular portable telephone frequency in close proximity to the human body.  Defendant MOTOROLA also failed to advise the public of the substantial body of evidence pointing to the dangers related to same.  In fact, MOTOROLA has falsely

7

represented to the public, including its own employees, that the cellular portable telephones are proven safe.

26. Defendant MOTOROLA has not apprised its own consumers of any potential health hazards that may be the direct result of the usage of the cellular portable telephone. The owner's manual of the MOTOROLA cellular portable telephone did not contain any warnings pertaining to radio frequency energy until 1993.

27. From 1993 to the present time, Defendant MOTOROLA's cellular portable telephone packages that are being sold by Sears-Roebuck & Company contain a "phantom" manual entitled "Cellular Portable Telephone- User Manual". (The manual, in relevant parts, is herein attached as Exhibit "C").

28. This phantom manual states the following warnings pertaining to "Electromagnetic Safety Guidelines":

If you are concerned about exposure RF energy there are things that you can do to minimize exposure. Obviously, limiting the duration of your calls will reduce your exposure to RF energy.

29. Defendant MOTOROLA has deceived the public into believing that this Manual is not from MOTOROLA. However, on the back cover of the manual states, in relevant part, the following:

Consumer Products Division
Pan American Cellular Subscriber Group
600 North Highway 45
Libertyville, IL 60048
1-800-331-6456
1-800-461-4575(in Canada)

30. The aforementioned address is identical to that printed on a manual which on its face states Portable Cellular Telephone User Manual...MOTOROLA, which has a printed date of

8

05/14/92. (See MOTOROLA manual dated 05/14/92, in relevant parts, attached herein as Exhibit "D").

31.  The phantom manual exemplifies MOTOROLA's deceptive and fraudulent conduct to the public, and specifically, its customers.  MOTOROLA chose not to put its name on the phantom manual because to do so would result in the inference that MOTOROLA has knowledge of the risk to humans.

32.  Plaintiff could not by the exercise of due diligence have discovered the harmful nature of the Defendant MOTOROLA's cellular portable telephones or any of the Defendant MOTOROLA's wrongdoing at any time prior to the preparation of this lawsuit because of the concealing nature of Defendant MOTOROLA's conduct and failure to adequately research, investigate, label and/or warn Plaintiff and the general public of existing or potential adverse short-term or long-term health-related consequences arising out of the use of cellular portable telephones.

33.  The truth is that after 8 years and millions of units later, Defendant MOTOROLA, by and through other manufacturers and the representative industry association, Defendant Cellular Telecommunications Industry Association ("CTIA"), are only now commissioning studies on how exposure to radio waves and EMR from cellular telephones.  Furthermore, these studies are being delayed and channeled in such a manner as to further frustrate the truth regarding the risk of harm associated with the use of the cellular portable telephones.

34.  As a matter of fact, MOTOROLA just this year (1995) has

acknowledged the truth that they and the industry have **no research establishing** that current cellular portable telephones are safe for users.   This is made evident in the Chicago Tribune article of January 1995.

35.  The studies conducted by Drs. Henry Lai and Narendre Singh found that rats experienced breakages in several strains of DNA tissues after being exposed to microwave radiation equivalent to levels transmitted from cell phones for two hours.   DNA damage is related to the initiation of cancer.   The study's initial results have prompted MOTOROLA to conduct its won research. **Lowe, Frederick H., "Motorola to Study Cell Phone Safety", <u>Chicago Tribune</u>, January 1995.**

## <u>CELLULAR TELECOMMUNICATION INDUSTRY ASSOCIATION ("CTIA")</u>

36.  Defendant CTIA's headquarters is located at 1250 Connecticut Avenue, N.W. Washington, D.C.; however, it does business nationally, including in the County of Cook, State of Illinois where MOTOROLA is headquartered.

37.  The CTIA is essentially a front organization that performs as a propaganda machine which produces and circulates public relations pronouncements that are meant to conceal or blunt the truth pertaining to known dangerous factors surrounding the current generation of cellular portable telephones and the absence of any research on the effect of usage to human beings.

38.  The CTIA also lobbies regulatory personnel and conducts seminars and workshops for industry personnel in order to "coach"

said personnel on how to curtain their answers to questions from the media and the general public.  The industry personnel are instructed on how to deceive and misrepresent the safety of the cellular portable telephones so as not to jeopardize the public's trust.  The head of this nefarious organization is Ronald Nessen, a skilled media specialist.

39.  An example of the CTIA's deceptive and false pronouncements is the statement made by one of it own spokesmen to the Wall Street Journal.  "There have been thousands of studies that have shown these phones are safe.  Do we need more studies?  And then just one more study after that?  And then just one more study after that?" **Keller, John J., "Cellular portable telephone Safety Concerns Hammer Stock", <u>Wall Street Journal</u>, January 25, 1993.**

40.  A statement made by MOTOROLA's vice-president of General Systems Sector, Edward Staiano, to the Wall Street Journal also exemplifies CTIA's public relations tactics.

> We're trying to clear the air...[of a] subjective and emotional response from the public to recent reports of cellular portable telephone safety.  [A]ll our products are safe...We conduct research to look for problems, not to prove they don't exist, said Edward Staiano, president of MOTOROLA's General Systems Sector. **Keller, John J., "Motorola Moves to Ease Fears or Safety Of Cellular portable telephones by Citing Research", <u>Wall Street Journal</u>, January 26, 1993.**

41.  Following CTIA's lead, Staiano cited "thousand of studies," which he said indicate small radio phones can be held against the head without causing health problems.  These MOTOROLA's executives cited only a single unfinished study as

proof that radio frequency waves operating in the cellular band do not promote tumor formation, when, in fact, they knew there was evidence that these waves may promote brain tumors. **Keller, John J., "Motorola Moves to Ease Fears or Safety Of Cellular portable telephones by Citing Research", Wall Street Journal, January 26, 1993.**

42.  The CTIA attempts to deny and use "spin control" as a means to slant and avoid the truth as to the safety of the cellular portable telephones.  This is demonstrated in its press release announcing that it was "pleased by the FDA's conclusion that "there is no proof at this point that cellular portable telephones are harmful".  Contrary to CTIA's statement, the FDA stated, "...[A] few studies suggest that these levels can accelerate the development of cancer in laboratory animals,....Nonetheless, we cannot dismiss these studies as irrelevant to cellular portable telephone users..."  The FDA suggested that to avoid risk of injury,  a conventional telephone should be used for the lengthy calls and a hand-held cellular portable telephone should be used for shorter calls or when a conventional telephone is not available.  **FDA Talk Paper Update on Cellular portable telephones, February 4, 1993. "What They Are Saying", Microwave News, Vol. XIII, No.1, January/February 1993, p.10.**

43.  Another deceptive propaganda tactic used by the CTIA's activities is the public relations press conference established and orchestrated by the CTIA to rebut the charges made by Robert

12

Kane, a MOTOROLA electromagnetic scientist, that were aired on the Connie Chung CBS report in April, 1993. The said press releases were made available to the public a few days prior to the airing of Kane's charges for the explicit purpose of blunting the truth concerning the known damages of Kane and unknown safety of the cellular portable telephones and equipment.

44. The CTIA's deceptive business practices were demonstrated in two propagandized letters sent by Cellular One and Ameritech Cellular to their respective customers throughout the United States in December 1993. Plaintiff believes that the content of such letters were suggested and/or authored by the CTIA with the approval of the cellular portable telephone manufacturing industry; and were sent in order to rebut the adverse publicity that stemmed from the allegations made by Kane shortly before.

45. During the winter of 1993, Om Gandhi, professor of electrical engineering at University of Utah, concluded that the amount of radiation from cellular portable telephones that is absorbed by the body is four to five times lower than levels generally accepted by scientists as safe. Ronald Nessen, of the CTIA, said the study is good news; and "the more research, the better". **Kim, James, "Study: Cellular portable telephones safe",** **USA Today, December 10, 1993.**

46. Those very test results that were repeatedly cited and relied upon by Defendants, were considered invalid by Gandhi, himself, in the summer of 1994. In fact, these scientific

13

results had been rejected months before and MOTOROLA and the CTIA knew or should have known of the falsity of the report.  He stated that his previously reported test results were reported in error and the corrected data demonstrated the error was in favor of defendants.  At no time has the CTIA ever publicly acknowledged the corrected  results and in fact it has refused to comment on Gandhi's correction.

47.  Gandhi's new figures are now much closer to the estimates other researchers from Australia, Switzerland and the U.K. all of whom presented papers in Copenhagen (June 1994).  "We have flattened the ear", said Gandhi.  That is, he is now placing the phone closer to the head-a much more realistic model than the one he used in his work for McCaw Cellular Communications Inc., which sounded a premature "all clear" last December.. **"Cellular portable telephone Workshops: The Obvious Sinks In",** _Microwave News,_ Vol. XIV, No. 4 July/August 1994, p.11.

48.  In fact, Gandhi was instructed to use, and did use, the cellular portable telephone that were of an older design with the antenna farther from the head and he further facilitated his false conclusions by holding those cellular portable telephones away from the head.

49.  During 1994, Drs. Henry Lai and Narendre Singh's conducted studies which showed that rats experienced a breakage in several strands of DNA tissues after being exposed to microwave radiation equivalent to levels transmitted from cellular portable telephones for two hours.  The Drs. stated that

statements that thousand of studies published over the past 40 years show that "radio transmission from cellular portable telephones pose no health risks". **"Cellular portable telephone Workshop: The Obvious Sinks In"**, <u>Microwave News</u>, July/August 1994.

53.    In the CTIA information package that was distributed to the participants (the cellular portable telephone industry, including MOTOROLA) at the December 14, 1994 CTIA seminar in San Diego, California, CTIA states, "[T]o address those public health concerns [of 1993], the industry is supporting a long-term, independent research program.  The research program includes a surveillance component so that if any danger or potential hazard is discovered during the research process, the program will move immediately into a risk-management mode."  The manual continues by saying that the Scientific Advisory Group (SAG) will conduct the program.  (The CTIA manual is herein attached as Exhibit "E", specifically Introduction on page B1).

54.    The truth is the cellular telephone industry, including MOTOROLA and working through the CTIA, set up an elaborate effort to avoid governmental interference with their cellular portable telephone business.  But in doing so, the CTIA and MOTOROLA acknowledge the safety problem of the cellular portable telephones.

55.    During the CTIA December 14, 1994 seminar in San Diego, CTIA announced that umbrella organization were being formed for the avowed purpose of lobbying against the regulation of the

cellular portable telephone by the United States government and against the local regulation of cellular towers.  Plaintiff believes that two organizations that recently emerged are the creations of the Defendants and other members of the industry, set up expressly for the purpose of dodging Federal and local regulations of safety standards for the hand held portable telephones and for cellular towers (which are necessary for the transmission of radio waves).

56.  The CTIA avoidance tactics is made evident by its own words; "[W]ork is proceeding along two tracks; one focusing on determining whether there is any potential health risk involved and the other on developing strategies the industry could implement to manage such a risk, should one be found." (See CTIA manual, page B2, "Who's Involved And the Process").

57.  Defendants took "the wait until the public began to voice concerns" approach, and now they are attempting to defuse the public's concerns by alleging that they will conduct independent research projects.  In fact, they have frustrated research and disclosure of the truth at every opportunity.

58.  Furthermore, Defendants and the industry acknowledge that "to be credible, the research had to be completely independent"; however, Defendants, themselves, have established the Scientific Advisory Group (SAG) which is to be conducting the cellular telephone research.

59.  SAG, which got underway in April 1993, is chaired by a Dr. George Carlo, president of Health and Environmental Sciences

17

Group.  Dr. Carlo is the same individual who was highlighted at
the CTIA propaganda seminar on December 14, 1994 in San Diego.
This seminar's agenda was devoted to strategies on how to deal
with the media, how to shape public opinion, how to avoid
negatives, such as what to tell people who are concerned
interference of the pacemaker when a cellular portable telephone
is being used within the vicinity.  The same seminar was
conducted in New Orleans in February and is scheduled at two
other locations this year.

60.  The fact of the matter is that the research and its
scope is funded and determined, respectively, by the cellular
portable telephone industry, including Defendants.

61.  Defendants and other industry players also created the
Peer Review Board to review the SAG's funding.  Here again, the
membership of the Peer Review Board were chosen by defendants,
controlled by them, and set up to frustrate and cover-up the
truth.

62.  Defendants play this game of avoidance and deception of
the truth, not only with the public, but with their own industry
employees who have devoted the best years of their lives, and
literally their brains to the industry.

63.  Robert Kane ("Kane"), a MOTOROLA electromagnetic
scientist with over 50 patents to his credit while employed with
MOTOROLA, was active in the development of the early prototypes
of the current cellular portable telephone.

64.  In 1993, Kane filed a suit against MOTOROLA whereby

18

Kane claimed that since his exposure to RF (Radio-frequency energy) at the MOTOROLA facility in Schaumburg, Illinois he developed and was diagnosed with terminal brain cancer with the life expectancy of five years beginning at the time of his diagnosis (1993). His suit was the subject of the Connie Chung Show in the Spring of 1994.

65. Shortly after the airing of the show, Kane was physically ordered out of his office in Tempe and was informed that he was banned from any and all MOTOROLA facilities.

66. In December of 1994, Kane heard that the CTIA was conducting a seminar in San Diego. He called CTIA's headquarters in Washington and was sent registration materials. He represented himself as an employee of MOTOROLA, which was true since he has continued to receive his salary and company benefits.

67. Kane completed the CTIA's registration form, paid the registration fee and was, subsequently, sent the conference materials, i.e., the CTIA manual. (See The CTIA manual herein attached as Exhibit "E").

68. Prior to the seminar, CTIA contacted MOTOROLA to verify Kane's status as being a MOTOROLA employee. Although employee information is privileged to the public as well as government agencies, i.e. CIA, MOTOROLA informed CTIA that Kane was on leave of absence. (See letter received by Kane from Michael Altshcul, vice-president, general counsel of CTIA is herein attached as Exhibit "F").

19

69.  Upon his arrival to the seminar, Kane was given a preprinted name tag and an assigned seat.  Subsequent to his entrance into the conference, a man who identified himself as Michael Altschul, a lawyer for CTIA, sat down next to him and demanded that he leave the room.  Kane was told that he was not welcome at the conference because he was "on leave from MOTOROLA".  Thereafter, Kane who felt physically threatened and forced to leave the room.

70.  The true reason for the barring of Kane from attending the seminar was that Defendants and the cellular portable telephone industry were afraid that the public would become aware of the truth that the cellular hand held phones are unreasonably dangerous to humans.

71.  Unfortunately, Defendants negligent and fraudulent conduct and omissions are not only the proximate cause of Robert Kane's terminal brain tumor, but also the brain tumor in Plaintiff DEBBRA K. WRIGHT.  Defendants are playing God with Plaintiff WRIGHT's life and she is on the losing end of the game.

## COUNT I

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER UCC

72.  Plaintiff adopts and realleges paragraphs 1 through 70 as though fully set forth herein.

73.  Plaintiff is a buyer of goods for purposes of Article 2 of the Uniform Commercial Code, 810 ILCS 5/2-103 et seq. (1992) and similar statutory provisions in all other states including

20

Florida with the exception Louisiana.

74.   By virtue of Section 2-314 of the UCC, Defendant
MOTOROLA impliedly warranted to the Plaintiff, among other
things, that said cellular portable telephones were "fit for the
ordinary purposes for which such goods are used" (810 ILCS 5/2-
314 (1992), including, that the ordinary use of the cellular
portable telephones would not in any way pose health risks to its
users, such as increased risk of cancer, or injury from existing
cancer, or aggravation or acceleration of diagnosed or
undiagnosed tumors.

75.   Defendant MOTOROLA has breached the implied warranty of
merchantability by manufacturing, distributing and selling the
cellular portable telephones when said cellular portable
telephones (1) had not been proven to be fit for ordinary use;
(2) were not suitable or proven to be reasonably safe for the
phones' expected, intended and/or ordinary use; (3) aggravate or
accelerate diagnosed or undiagnosed tumors; and (4) increase a
user risk of cancer or injury from existing cancer.

76.   Further, Defendant MOTOROLA failed to adequately warn
Plaintiff and the general public that (1) Defendant MOTOROLA had
not conducted adequate tests establishing whether the use of the
cellular portable telephones posed any health risks to the users;
(2) use of cellular portable telephones may be hazardous to the
user's health; (3) use of Defendant MOTOROLA's cellular portable
telephones aggravates or accelerates diagnosed or undiagnosed
tumors; and (4) use of Defendant MOTOROLA's cellular portable

21

telephones increases the risk of cancer or injury from existing cancer.

77.  Defendant MOTOROLA also failed to adequately package and/or label the cellular portable telephones to apprise the Plaintiff and the general public that (1) Defendant MOTOROLA had not conducted adequate tests establishing whether the use of the cellular portable telephones posed any health risks to the users; (2) use of cellular portable telephones may be hazardous to the user's health; (3) use of Defendant MOTOROLA's cellular portable telephones aggravates or accelerates diagnosed or undiagnosed tumors; and (4) use of Defendant MOTOROLA's cellular portable telephones increase Plaintiff's risk of cancer or injury from existing cancer.

78.  Defendant MOTOROLA's failure to adequately research the health related consequences and/or potential consequences prior to Defendant MOTOROLA' widespread dissemination of said cellular portable telephones into the marketplace evidences lack of care in the manufacturing and distribution of cellular portable telephones.

79.  At all times relevant herein, Defendant MOTOROLA was or should have been aware of the purpose for which the cellular portable telephones were intended-- that is, for use by the ultimate consumer, including Plaintiff, with the antenna to be placed in close proximity to the user's head.

80.  At all times relevant herein, Defendant MOTOROLA was or should have been aware of the user's (including the Plaintiff's)

22

reliance on Defendant MOTOROLA's warranties that the product would be fit for the aforesaid ordinary purpose.

81. At the time the cellular portable telephones left the Defendant MOTOROLA's possession, Defendant MOTOROLA knew or should have known that danger could exist and harm could result from the intended use of the cellular portable telephones.

82. Defendant MOTOROLA had reasonable notice of the ongoing breach of implied warranty of merchantability by virtue of the filing of this and other lawsuits, knowledge and recommendations of its own employees, and by virtue of the results of scientific studies which indicate potential and hazardous health risks.

83. Defendant MOTOROLA's breach of implied warranty of merchantability has caused Plaintiff to suffer significant damages, including but not limited to, aggravation, or acceleration of an existing tumorous condition.

84. As a direct and proximate result of Defendant MOTOROLA's aforesaid conduct, Plaintiff has been damaged by personal injuries and emotional distress.


WHEREFORE, Plaintiff, DEBBRA K. WRIGHT, prays that this court enter judgment against the Defendant MOTOROLA and in favor of Plaintiff, DEBBRA K. WRIGHT, and accordingly:

      a.    Enter a finding of liability against Defendant MOTOROLA and in favor of Plaintiff;

      b.    Award damages to Plaintiff to fairly compensate him for damages as stated; and

c.   Award such other and further relief as this court deems just and proper, including attorneys' fees and costs.

## COUNT II

## BREACH OF IMPLIED WARRANTY
## OF FITNESS FOR PARTICULAR PURPOSE UNDER UCC

85.   Plaintiff adopts and realleges paragraphs 1 through 84 as though fully set forth herein.

86.   Plaintiff is a buyer of goods for purposes of Article 2 of the Uniform Commercial Code, 810 ILCS 5/2-103 et seq. (1992) and similar statutory provisions in all other states, including Florida with the exception of Louisiana.

87.   At the time the cellular portable telephones left the Defendant MOTOROLA's possession, Defendant MOTOROLA knew or should have known the particular purpose for which the telephone was to be used, that is, for use by the Plaintiff and other consumers in close proximity to the user's head.  Plaintiff relied on the Defendant MOTOROLA's skill and judgment to manufacture and provide cellular portable telephones that would be reasonably safe for use by the Plaintiff.

88.   Defendant MOTOROLA have breached the implied warranty of fitness for particular purpose by manufacturing, distributing and/or selling the cellular portable telephones when said cellular portable telephones (1) had not been proven to be fit for such particular purpose; (2) were not suitable or proven to

24

be reasonably safe for the telephones' intended use and particular purpose; (3) aggravate or accelerate diagnosed or undiagnosed tumors; and (4) increase risk of cancer or injury from existing cancer.

89.    Further, Defendant MOTOROLA failed to adequately warn Plaintiff and the general public that (1) Defendant MOTOROLA had not conducted appropriate or adequate tests establishing whether use of the cellular portable telephones posed any health risks to the user; (2) use of cellular portable telephones may be hazardous to the user's health; (3) use of Defendant MOTOROLA's cellular portable telephones aggravate or accelerate diagnosed or undiagnosed tumors; and (4) use of Defendant MOTOROLA's cellular portable telephone increases risk of cancer or injury from existing cancer.

90.    At all times relevant herein, Defendant MOTOROLA was or should have been aware of Plaintiff's reliance on Defendant MOTOROLA's warranty that the product would be fit for the aforesaid particular purpose.

91.    At the time the cellular portable telephones left the Defendant MOTOROLA's possession, the Defendant MOTOROLA knew or should have known that danger could result from the intended use and particular purpose of the cellular portable telephones.

92.    Defendant MOTOROLA has reasonable notice of the ongoing breach of implied warranty of fitness for particular purpose by virtue of the filing of this and other lawsuits, knowledge and recommendations of its own employees, and by virtue of the

results of scientific studies which indicated potential and hazardous health risks.

93. Defendant MOTOROLA's breach of implied warranty of fitness for particular purpose has directly and proximately caused Plaintiff to suffer damages, including but not limited to, aggravation, or acceleration of an existing tumorous condition.

94. As a direct and proximate result of Defendant MOTOROLA's aforesaid conduct, Plaintiff has been damaged and has suffered and continues to suffer personal injuries and emotional distress.

WHEREFORE, Plaintiff, DEBBRA K. WRIGHT, prays that this court enter judgment against Defendant MOTOROLA,  and in favor of Plaintiff, DEBBRA WRIGHT and, accordingly:

   a.    Enter a finding of liability against Defendant MOTOROLA and in favor of Plaintiff;

   b.    Award damages to Plaintiff to fairly compensate him for damages as stated; and

   c.    Award such other and further relief as this court deems just and proper, including attorneys' fees and costs.

## COUNT III

### BREACH OF EXPRESS WARRANTY UNDER UCC

95. Plaintiff adopts and realleges paragraphs 1 through 94 as though fully set forth herein.

96. Defendant MOTOROLA have issued express written

warranties with each cellular portable telephone sold by which it promised to repair defects in materials and workmanship for certain periods of time.  (A copy of MOTOROLA's express written warranty is herein attached as Exhibit "G").

97.   Defendant MOTOROLA's warranty states that its telephones are free from defects in material or workmanship. However, Defendant MOTOROLA manufactured cellular portable telephones that contained inadequate and inappropriate warnings that were by definition, defective.

98.   These express written warranties constitute affirmations of fact, promises, and descriptions regarding the quality and safety of the Defendant MOTOROLA's cellular portable telephones.  Plaintiff was aware of and relied upon these warranties in making her decision to purchase, retain and/or continue using the Defendant MOTOROLA's cellular portable telephones.

99.   Defendant MOTOROLA has breached its express warranties in that it failed to eliminate or minimize health hazards or possible health hazards from the radio waves and EMR by redesigning the cellular portable telephones or by other means, and Defendant MOTOROLA has failed to place adequate warnings as alleged herein and/or labels as alleged herein on said cellular portable telephones.

100. As a direct and proximate result of Defendant MOTOROLA's aforesaid conduct, Plaintiff has been damaged and has suffered and continues to suffer personal injuries and emotional

27

distress.

WHEREFORE, Plaintiff, DEBBRA K. WRIGHT, prays that this court enter judgment against Defendant MOTOROLA and in favor of Plaintiff, DEBBRA K. WRIGHT, and, accordingly:

a.  Enter a finding of liability against Defendant MOTOROLA and in favor of Plaintiff;

b.  Award damages to Plaintiff to fairly compensate her for damages as stated; and

c.  Award such other and further relief as this court deems just and proper, including attorneys' fees and costs.

## COUNT IV

### PRODUCTS LIABILITY - NEGLIGENCE

101. Plaintiff adopts and realleges paragraphs 1 through 100 as though fully set forth herein.

102. Defendant MOTOROLA owed Plaintiff the duty of ordinary professional care in the testing, manufacture, and sale of its cellular portable telephones.

103. Defendant MOTOROLA breached the above and foregoing duties in one or more of the following respects:

a.  by not adequately or properly testing for possible health hazards associated with exposure to radio waves and EMR at the frequencies emitted by cellular portable telephones;

b.  by producing, manufacturing, or selling cellular

28

portable telephones that emit harmful or potentially
harmful radio frequency waves and EMR without adequate
protection from harm to the user;

c.    by failing to provide a warning to the purchasers or
users, including Plaintiff, of the dangerous or
potentially hazardous radio frequency waves and EMR
being emitted by the cellular portable telephones;

d.    by negligently supplying a defective product, directly
or indirectly, to purchasers or users, including
Plaintiff;

e.    by failing to warn consumers, including Plaintiff, that
use of Defendant MOTOROLA's cellular portable
telephones aggravates or accelerates diagnosed or
undiagnosed tumors; and

f.    by failing to warn consumers, including Plaintiff, that
use of Defendant MOTOROLA's cellular portable
telephones increases Plaintiff's risk of cancer or
injury from existing cancer.

104. The cellular portable telephones were defectively
designed due to inadequate warnings, and at the time the cellular
portable telephones left Defendant MOTOROLA's possession,
Defendant MOTOROLA knew or should have known enough facts to put
a reasonable manufacturer or supplier on notice about the dangers
and/or potential dangers of selling, supplying or marketing the
cellular portable telephones as designed.

105. Defendant MOTOROLA inaccurately and fraudulently states in its owner's manual that "there is no proof that using your phone will cause any adverse health effects."  (A copy of MOTOROLA's owners manual, in relevant parts, is attached hereto as Exhibits "C" and "D".

106. As a direct and proximate result of the Defendant MOTOROLA's negligence, Plaintiff has been damaged and has suffered and continues to suffer personal injuries and emotional distress.

WHEREFORE, Plaintiff, DEBBRA K. WRIGHT, prays that this court enter judgment against Defendant MOTOROLA and in favor of Plaintiff, DEBBRA K. WRIGHT, and accordingly:

   a.   Enter a finding of liability against Defendant MOTOROLA and in favor of Plaintiff;

   b.   Award damages to Plaintiff to fairly compensate her for damages as stated; and

   c.   Award such other and further relief as this court deems just and proper, including attorneys' fees and costs.

## COUNT V

### PRODUCTS LIABILITY – STRICT LIABILITY

107. Plaintiff adopts and realleges paragraphs 1 through 106 as though fully set forth herein.

108. At the time the cellular portable telephones left the

possession of the Defendant MOTOROLA and were sold, Defendant MOTOROLA:

    a.    had not adequately or properly tested for possible or actual short-term and/or long-term health hazards associated with exposure to radio waves and EMR at the frequencies emitted by cellular portable telephones;

    b.    produced, manufactured, or sold cellular portable telephones that were defective in that they emitted harmful or potentially harmful radio frequency waves and EMR without adequate protection from harm to the user;

    c.    produced, manufactured, or sold cellular portable telephones that were defective in that Defendant MOTOROLA failed to provide adequate warnings to the purchasers or users of the dangerous or potentially hazardous radio frequency waves and EMR being emitted by the cellular portable telephones-- warnings which could have and would have prevented the damages as stated herein;

    d.    produced, manufactured, or sold cellular portable telephones that were defective in that Defendant MOTOROLA failed to provide adequate warnings to purchasers or users including Plaintiff, that use of Defendant MOTOROLA's cellular portable telephones aggravates or accelerates diagnosed or undiagnosed tumors;

31

e.   produced, manufactured, or sold cellular portable telephones that were defective in that Defendant MOTOROLA failed to provide a warning to purchasers or users, including Plaintiff, that use of Defendant MOTOROLA's cellular portable telephones increases the risk of cancer or injury from existing cancer; and

f.   did not provide a safety device or shield.

109. At all times relevant herein, Defendant MOTOROLA had a non-delegable duty to manufacture and supply a reasonably safe product.

110. At the time the cellular portable telephones left the Defendant MOTOROLA's possession, the cellular portable telephones were unreasonably dangerous to Plaintiff in that either (a) the products were dangerous beyond the expectations of ordinary consumers, including Plaintiff, or (b) a less dangerous alternative or modification was economically feasible.

111. As a direct and proximate result of the Defendant MOTOROLA's aforesaid acts and omissions, Plaintiff has been damaged and has suffered and continues to suffer personal injuries and emotional distress.

WHEREFORE, Plaintiff, DEBBRA K. WRIGHT, prays that this court enter judgment against Defendant MOTOROLA, and in favor of Plaintiff DEBBRA K. WRIGHT, and accordingly:

a.   Enter a finding of liability against Defendant MOTOROLA

and in favor of Plaintiff;

b.    Award damages to Plaintiff to fairly compensate her for damages as stated; and

c.    Award such other and further relief as this court deems just and proper, including attorneys' fees and costs.

## COUNT VI

### CONSUMER FRAUD

112. Plaintiff adopts and realleges paragraphs 1 through 111 as though fully set forth herein.

113. At all times relevant herein, there was in full force and effect a certain statute in Illinois entitled Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. (1992) which in pertinent part provided:

"Unlawful practices--Construction with Federal Trade Commission Act"

§2.    Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of any material fact, with intent that others rely upon the fact, or the use or employment of any practice described in §2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby....

114. Defendant MOTOROLA falsely represented to Plaintiff, to induce her to purchase and/or retain and/or continue using her cellular portable telephones, that the cellular portable

33

telephones were proven safe.

115. These representations were made and disseminated by Defendant MOTOROLA and/or by Defendant MOTOROLA's agents, and/or those otherwise acting in concert with Defendant MOTOROLA.

116. The conduct of the Defendant MOTOROLA described and incorporated herein was unfair or deceptive, or misleading, or constituted an improper concealment, suppression or omission of a material fact, in violation of Consumer Fraud Act in that Defendant MOTOROLA:

    a.    Fraudulently and deceptively withheld from the public, including Plaintiff, the information and material fact that Defendant MOTOROLA had not adequately researched the short-term and/or long-term health-related conse-quences of the use of cellular portable telephones prior to Defendant MOTOROLA's widespread dissemination of said cellular portable telephones into the market-place;

    b.    Fraudulently and deceptively failed to adequately warn the public, including Plaintiff, of the material fact that the cellular portable telephones were defective in that it was not reasonably and/or conclusively proven safe for its intended and ordinary use;

    c.    Fraudulently and deceptively failed to adequately warn the public, including Plaintiff, of the fact that the cellular portable telephones were defective in that they were not reasonably safe for the particular

34

purpose;

d. Fraudulently and deceptively failed to adequately label the cellular portable telephones based on the aforesaid;

e. Fraudulently and deceptively mislead the public, including Plaintiff, into believing that there was no defect in the cellular portable telephones;

f. Fraudulently and deceptively failed and/or refused to bring the defect to the attention of Plaintiff;

g. Fraudulently and deceptively stated or indicated, directly or indirectly, that the cellular portable telephones were conclusively safe;

h. Fraudulently and deceptively stated or indicated that the safety of cellular portable telephones had been verified;

i. Fraudulently and deceptively indicated that the scientific database with respect to short-term and/or long-term consequences of using cellular portable telephones is broad and conclusive as to their safety when in fact it is not;

j. Fraudulently and deceptively failed to warn the public, purchasers or users, including Plaintiff that the use of Defendant MOTOROLA's cellular portable telephones aggravate or accelerate diagnosed or undiagnosed tumors;

k. Fraudulently and deceptively failed to warn the public,

35

purchasers or users, including Plaintiff, that the use of Defendant MOTOROLA's cellular portable telephones increases the risk of cancer or injury from existing cancer; and

l.    Fraudulently and deceptively misrepresented that there are no adverse health effects associated with the use of Defendant MOTOROLA's cellular portable telephones.

117. These material misrepresentations and omissions were made with the intent and in such manner that the Plaintiff relied upon them with respect to the purchase, retention and/or use of her cellular portable telephones, and as such, these misrepresentations and omissions violate the Consumer Fraud Act.

118. At a minimum, the aforesaid misrepresentations and omissions confuse and confused the general public, including Plaintiff, into believing that the scientific database with respect to the potential and adverse short-term and long-term consequences of using cellular portable telephones is broad and conclusive as to safety when in fact it is not.

119. As a direct and proximate result of Defendant MOTOROLA's aforesaid acts and omissions, Plaintiff has been damaged and has suffered and will continue to suffer personal injuries and emotional distress.

WHEREFORE, Plaintiff, DEBBRA K. WRIGHT, prays that the court enter judgment against Defendant, MOTOROLA, and in favor of Plaintiff DEBBRA K. WRIGHT, and accordingly:

Plaintiff DEBBRA K. WRIGHT, and accordingly:

a.   Enter a finding of liability against Defendant MOTOROLA
     and in favor of Plaintiff;

b.   Award damages to Plaintiff to fairly compensate her for
     damages as stated;

c.   Award treble damages pursuant to 815 ILCS 505/10a
     (1992) against Defendant MOTOROLA as an example so that
     Defendant MOTOROLA and other entities similarly
     situated to MOTOROLA will not engage in similar
     deceptive, fraudulent and unfair practices; and

d.   Award such other and further relief as the court deems
     just and proper, including attorneys' fees and costs.


## COUNT VII

### CIVIL TORT CONSPIRACY

120. Plaintiff adopts and realleges paragraphs 1 through 119
as though fully set forth herein.

121. At all and relevant times, Defendants falsely
represented to Plaintiff, to induce her to retain and/or continue
using her cellular portable telephones, that the phones were
proven safe.

122. These representations were made and disseminated by
Defendants and/or by Defendants' agents, and/or those otherwise
acting in concert with Defendants.

123. The conduct of the Defendants MOTOROLA, CTIA, RONALD
NESSEN, DR. GEORGE CARLO and HEALTH AND ENVIRONMENTAL SCIENCES

GROUP, and  described and incorporated herein was unfair or deceptive, or misleading, or constituted an improper concealment, suppression or omission of a material fact and, thus, tortious in character, in that Defendants:

a.  Fraudulently and deceptively withheld from the public, including Plaintiff, the information and material fact that Defendants had not adequately researched the short-term and/or long-term health-related consequences of the use of cellular portable telephones prior to Defendant MOTOROLA's widespread dissemination of said cellular portable telephones into the marketplace;

b.  Fraudulently and deceptively failed to adequately warn the public, including Plaintiff, of the material fact that the cellular portable telephones were defective in that it was not reasonably and/or conclusively proven safe for its intended and ordinary use;

c.  Fraudulently and deceptively failed to adequately warn the public, including Plaintiff, of the fact that the cellular portable telephones were defective in that they were not reasonably safe for the particular purpose;

d.  Fraudulently and deceptively failed to adequately label the cellular portable telephones based on the aforesaid;

e.  Fraudulently and deceptively mislead the public, including Plaintiff, into believing that there was no

defect in the cellular portable telephones;

f.   Fraudulently and deceptively failed and/or refused to bring the defect to the attention of Plaintiff;

g.   Fraudulently and deceptively stated or indicated, directly or indirectly, that the cellular portable telephones were conclusively safe;

h.   Fraudulently and deceptively stated or indicated that the safety of cellular portable telephones had been verified;

i.   Fraudulently and deceptively indicated that the scientific database with respect to short-term and/or long-term consequences of using cellular portable telephones is broad and conclusive as to their safety when in fact it is not;

j.   Fraudulently and deceptively failed to warn the public, purchasers or users, including Plaintiff that the use of Defendant MOTOROLA's cellular portable telephones aggravate or accelerate diagnosed or undiagnosed tumors;

k.   Fraudulently and deceptively failed to warn the public, purchasers or users, including Plaintiff, that the use of Defendant MOTOROLA's cellular portable telephones increases the risk of cancer or injury from existing cancer; and

l.   Fraudulently and deceptively misrepresented that there are no adverse health effects associated with the use

39

of Defendant MOTOROLA's cellular portable telephones.

124. These material misrepresentations and omissions were made with the intent and in such manner that the Plaintiff relied upon them with respect to the purchase, retention and/or use of her cellular portable telephones, and as such, these misrepresentations and omissions were committed as a conspiracy between Defendants MOTOROLA and CTIA against the public, including Plaintiff.

125. The aforesaid misrepresentations and omissions were overt acts made by both MOTOROLA and CTIA in furtherance of the conspiracy against the public, including Plaintiff, into believing that the scientific database with respect to the potential and adverse short-term and long-term consequences of using cellular portable telephones is broad and conclusive as to safety when in fact it is not.

126. As a direct and proximate result of Defendants CTIA and MOTOROLA's aforesaid acts and omissions, Plaintiff has been damaged and has suffered and will continue to suffer personal injuries and emotional distress.

WHEREFORE, Plaintiff, DEBBRA K. WRIGHT, prays that the court enter judgment jointly and severally against Defendants, MOTOROLA and CTIA, and in favor of Plaintiff DEBBRA K. WRIGHT, and accordingly:

a.   Enter a finding of liability against Defendants

40

MOTOROLA and CTIA, and in favor of Plaintiff;

b. Award damages to Plaintiff to fairly compensate her for damages as stated;

c. Award such other and further relief as the court deems just and proper, including attorneys' fees and costs.

HOLSTEIN, MACK & KLEIN

By: _____

One of the Attorneys
for Plaintiff

Terrie L. Culver, Esq.
Robert A. Holstein, Esq.
Aron D. Robinson, Esq.
Bruce J. Goodhart, Esq.
HOLSTEIN, MACK & KLEIN
300 S. Wacker Drive, Suite 3200
Chicago, Illinois  60606
(312) 362-9700
Firm I.D.  04721

Larry D. Drury
LARRY D. DRURY, LTD.
180 North LaSalle, Suite 2416
Chicago, Illinois  60601
(312) 346-7950
Firm I.D. 22873

Ben Barnow
BARNOW AND HEFTY, P.C.
105 West Madison, Suite 2200
Chicago, Illinois  60602

41