## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FIREMAN'S FUND INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>CELLULAR TELECOMMUNICATIONS AND INTERNET ASSOCIATION, THE HARTFORD CASUALTY INSURANCE COMPANY and TWIN CITY FIRE INSURANCE COMPANY,<br><br>    Defendants. | Case No.: 1:06-CV-00854 |

## ANSWER, COUNTERCLAIM AND CROSS-CLAIM OF DEFENDANT CTIA-THE WIRELESS ASSOCIATION

Defendant CTIA-The Wireless Association, formerly the Cellular Telecommunications & Internet Association ("Defendant" or "CTIA"), pursuant to FED. R. CIV. P. 12, 13, and the Court's Order of May 31, 2006, hereby files this Answer, Counterclaim and Cross-Claim to the Complaint For Declaratory and Other Relief filed by Fireman's Fund Insurance Company ("Plaintiff" or "Fireman's Fund") as follows:

### NATURE OF THE ACTION

1.     CTIA admits Fireman's Fund issued insurance policies to CTIA. CTIA also admits it was sued in a number of distinct and different underlying lawsuits which are referenced in Fireman's Fund's Complaint. CTIA denies that coverage for these lawsuits is excluded under the Fireman's Fund policies. The remaining allegations in

Paragraph 1 are conclusions of law to which no response is required. To the extent a response is required, CTIA denies the remaining allegations in Paragraph 1.

2.      CTIA admits that Fireman's Fund has paid some amount in attorney's fees and costs to counsel it selected to defend CTIA with respect to various underlying lawsuits described in Fireman's Fund's Complaint. CTIA further admits that Hartford issued comprehensive general liability and umbrella liability policies that also provide coverage to CTIA for the various lawsuits identified in the Fireman's Fund Complaint, and that Hartford has failed to provide CTIA with a full defense, under the policies that it issued, with respect to the various lawsuits filed against CTIA that are identified in the Fireman's Fund Complaint. The remaining allegations in Paragraph 2 are conclusions of law to which no response is required. To the extent a response is required, CTIA denies the remaining allegations in Paragraph 2.

## JURISDICTION AND VENUE

3.      CTIA admits the allegations contained in Paragraph 3.

4.      CTIA admits the allegations contained in Paragraph 4.

## PARTIES

5.      CTIA is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 5 of the Complaint, but has no reason to believe the allegations contained in Paragraph 5 are false. To the extent a response is required, CTIA denies the allegations in Paragraph 5.

6.      CTIA admits that it is a trade association existing under the laws of the District of Columbia, and that its principal place of business is in the District of Columbia.

7.      CTIA is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 7 of the Complaint, but has no reason to believe the allegations contained in Paragraph 7 are false.  To the extent a response is required, CTIA denies the allegations in Paragraph 7.

8.      CTIA is without sufficient knowledge or information to form a belief as to the truth of the allegations contained in Paragraph 8 of the Complaint, but has no reason to believe the allegations contained in Paragraph 8 are false.  To the extent a response is required, CTIA denies the allegations in Paragraph 8.

9.      CTIA admits the allegations contained in Paragraph 9.

## FACTUAL ALLEGATIONS

### The Fireman's Fund Policies

10.      CTIA admits that First Specialty Insurance Corporation issued NonProfit Organization Liability Insurance Policy No. NPA-000122-3 to CTIA for the policy period June 1, 2000 to June 1, 2001 and NonProfit Organization Liability Insurance Policy No. NPA-000122-4 to CTIA for the policy period June 1, 2001 to June 1, 2002. CTIA denies that these two policies are the only policies containing language applicable to the lawsuits referenced in the Fireman's Fund Complaint.  CTIA is without sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 10, and therefore denies those allegations.

11.      The terms, conditions, exclusions and relevant policy language cited in Paragraph 11 stand for themselves.  CTIA is without sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 11, and therefore denies those allegations.

12.     CTIA admits the allegations contained in Paragraph 12.

13.     CTIA admits the allegations contained in Paragraph 13.

14.     CTIA admits the allegations contained in Paragraph 14.

15.     CTIA admits the allegations contained in Paragraph 15, but adds that the definition of "Insured" also includes all future directors, officers, and employees of CTIA.

16.     CTIA is without sufficient knowledge or information to form a belief as to the allegations in Paragraph 16, and therefore denies those allegations.

17.     CTIA denies the allegations contained in Paragraph 17.

18.     CTIA admits the allegations contained in Paragraph 18.

### The Hartford Policies

19.     CTIA admits the allegations contained in Paragraph 19.

20.     CTIA admits the allegations contained in Paragraph 20.

21.     CTIA admits that the Hartford Policies contain limits as alleged in Paragraph 21, but denies that any limits are applicable to defense costs paid under the Hartford Policies.

22.     CTIA admits the allegations contained in Paragraph 22.

23.     CTIA admits the Hartford GL Policy for the period June 1, 1996 to June 1, 1997 contains the language quoted and alleged in Paragraph 23.  The remaining allegations in Paragraph 23 are conclusions of law to which no response is required.  To the extent a response is required, CTIA denies the remaining allegations in Paragraph 23.

24.     CTIA admits the allegations contained in Paragraph 24.

## The Underlying Litigation

25.    CTIA admits that it is a trade association whose members include, among others, service providers and manufacturers of wireless cellular telephones. CTIA denies the remaining allegations contained in Paragraph 25.

26.    CTIA admits it is or was a defendant in a number of different and distinct lawsuits and that the allegations against CTIA are set forth in complaints filed in those lawsuits. CTIA denies the remaining allegations contained in Paragraph 26.

27.    CTIA denies the allegations contained in Paragraph 27.

28.    CTIA admits it has requested coverage under the Fireman's Fund Policies for the following lawsuits: (a) Newman, et al. v. Motorola, Inc., et al., No. CCB-00-2609 (Md. Cir. Ct., Baltimore County filed Aug. 1, 2000); (b) Barrett, et al. v. Nokia, Inc., et al., No. 2001-CV-33385 (Ga. Sup. Ct., Fulton County filed Jan. 29, 2001); (c) Brower, et al. v. Motorola, Inc., et al., No. GIC765987 (Cal. Sup. Ct. filed Apr. 19, 2001); (d) Murray, et al. v. Motorola, Inc., et al., (D.C. Sup. Ct. filed Nov. 15, 2001); (e) Keller, et al. v. Nokia, Inc., et al., No. 1372-02 (D.C. Sup. Ct. filed Feb. 26, 2002); (f) Agro, et al. v. Motorola, Inc., et al., No. 1368-02 (D.C. Sup. Ct. filed Feb. 26, 2002); (g) Schwamb, et al. v. Qualcomm, Inc., et al., No. 1370-02 (D.C. Sup. Ct. filed Feb. 26, 2002); (h) Schofield, et al. v. Matsushita, Inc., et al., No. 1371-02 (D.C. Sup. Ct. filed Feb. 26, 2002); (i) Cochran, et al. v Audiovox Corp., et al., No. 1369-02 (D.C. Sup. Ct. filed Feb. 26, 2002); (j) Pinney v. Nokia, Civ. No. 24-C-01-001897 (Md. Cir. Ct. (Baltimore County) filed Apr. 19, 2001); (k) Gimpelson v. Nokia, No. 2001CV38932 (Ga. Super. Ct. (Fulton County) filed June 8, 2001); (l) Gilliam v. Nokia, No. 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 (N.Y. Super. Ct. (Bronx County) filed Apr. 23, 2001); (m) Farina v. Nokia, No. 01-002527 (Pa. Ct.

Com. Pl. (Phila. County) filed Apr. 19, 2001), and (n) <u>Dahlgren v. Audiovox</u>, No. 02-00007884 (D.C. Super. Ct. filed Sep. 6, 2002). CTIA denies the remaining allegations contained in Paragraph 28.

29.     Paragraph 29 does not contain any allegations concerning CTIA and, thus, a response is not required. To the extent a response is required, CTIA denies the allegations.

30.     The allegations of the complaints filed against CTIA stand for themselves, and are set forth in the various underlying complaints for those lawsuits. CTIA denies the remaining allegations in Paragraph 30.

31.     CTIA admits that Exhibits 4-6 to the Complaint are either partial or complete copies of complaints filed in the <u>Newman</u>, <u>Agro</u> and <u>Brower</u> lawsuits. CTIA further admits that Exhibits 7-8 to the Complaint are either partial or complete copies of complaints filed in the <u>Pinney</u> and <u>Dahlgren</u> lawsuits. The allegations of the complaints stand for themselves. CTIA denies the remaining allegations in Paragraph 31.

32.     CTIA admits that some or all of the lawsuits referenced in Paragraph 28 of this Answer were removed to federal court and consolidated into a single proceeding styled <u>In re Underlying Radio Frequency Emissions Product Liability Litigation</u> (01-MDL-1421), before the United States District Court for the District of Maryland, and that these lawsuits were recently remanded to their respective state courts. CTIA adds, however, that following remand, <u>Farina</u> was sent back to the United States District Court for the District of Maryland. CTIA further admits that the complaints in <u>Gilliam</u> and <u>Gimpelson</u> have been voluntarily dismissed, and <u>Newman</u> was dismissed on summary judgment. All other allegations in Paragraph 32 are denied.

**The Earlier Wright and Busse Matters**

33.    CTIA denies the allegations contained in Paragraph 33.

34.    CTIA admits that a lawsuit captioned <u>Wright v. Motorola, Inc.</u> was filed against CTIA and others.  CTIA denies the remaining allegations in Paragraph 34.

35.    The text of the <u>Wright</u> complaint stands for itself.  CTIA admits that some of the allegations in <u>Wright</u> are set forth in Exhibit 9 to Fireman's Fund's Complaint. CTIA denies the remaining allegations in Paragraph 35.

36.    CTIA admits that a lawsuit captioned <u>Busse v. Motorola, Inc.</u> was filed against CTIA and others.  CTIA denies the remaining allegations in Paragraph 36.

37.    The text of the <u>Busse</u> complaint stands for itself.  CTIA admits that some of the allegations in <u>Busse</u> are set forth in Exhibit 10 to Fireman's Fund's Complaint. CTIA denies the remaining allegations in Paragraph 37.

38.    CTIA denies the allegations contained in Paragraph 38.

39.    CTIA admits the causes of action asserted against CTIA in <u>Wright</u> and <u>Busse</u> were dismissed.  The allegations of the complaints filed in <u>Wright</u> and <u>Busse</u> stand for themselves.  CTIA denies the remaining allegations in Paragraph 39.

40.    CTIA is without sufficient knowledge or information to form a belief as to the allegations in Paragraph 40, and therefore denies those allegations.  In addition, the allegations of Paragraph 40 are conclusions of law to which no response is required.  To the extent a response is required, CTIA denies the allegations contained in Paragraph 40.

**Fireman's Fund's Advancement of Defense Fees and Costs**

41.    CTIA admits that Fireman's Fund has, for approximately the past five years, paid for approximately 50 percent of the defense costs incurred by lawyers it hired to defend CTIA in the underlying lawsuits identified in Paragraph 28 of this Answer. CTIA denies the remaining allegations in Paragraph 41.

42.    CTIA denies the allegations contained in Paragraph 42.

43.    CTIA admits that it advised Fireman's Fund that Hartford recently refused to continue to advance attorney's fees and costs related to certain lawsuits identified in Paragraph 28 of this Answer.  CTIA admits Fireman's Fund has agreed to defend any lawsuits for which Hartford has denied coverage, and to pay for any litigation costs in any of the underlying lawsuits identified in Paragraph 28 of this Answer that are not paid by Hartford.  CTIA denies the remaining allegations in Paragraph 43.

44.    Paragraph 44 does not contain any allegations concerning CTIA and, thus, a response is not required.  To the extent a response is required, CTIA denies the allegations in Paragraph 44.

## CONTROVERSY AND RIPENESS

45.    CTIA admits there is an actual, ripe and live controversy between the parties regarding their respective rights and obligations under the Fireman's Fund Policies.  CTIA further admits it has requested coverage under the Fireman's Fund Policies for those lawsuits identified in Paragraph 28 of this Answer.  CTIA denies the remaining allegations in Paragraph 45.

## COUNT I
### (Declaratory Relief:  Prior/Pending Litigation Exclusion)

46.    CTIA incorporates by reference its answers to Paragraphs 1-45, as if fully set forth herein.

47.    CTIA denies the allegations contained in Paragraph 47.

48.    CTIA denies the allegations contained in Paragraph 48.

49.    CTIA is without sufficient knowledge or information to form a belief as to the allegations in Paragraph 49, and therefore denies those allegations.

50.    CTIA denies the allegations contained in Paragraph 50.

## COUNT II
### (Declaratory Relief: "Other Insurance" Clause)

51.    CTIA incorporates by reference its answers to Paragraphs 1-50, as if fully set forth herein.

52.    As set forth above, CTIA admits that the Fireman's Fund Policies each contain an "other insurance" provision.  The text of that provision stands for itself.  CTIA is without sufficient knowledge or information to form a belief as to the remaining allegations in Paragraph 52, and therefore denies those allegations.

53.    CTIA admits that Fireman's Fund is obligated to pay any amounts in the underlying lawsuits identified in Paragraph 28 of this Answer that are not paid by Hartford, but denies all other allegations contained Paragraph 53.

54.    CTIA admits Hartford does not dispute that its defense obligations are triggered with respect to Newman, Murray, Agro, Schofield, Schwamb, Cochran and Brower.  CTIA denies the remaining allegations contained in Paragraph 54.

55.    CTIA denies the allegations contained in Paragraph 55.

## COUNT III
**(Recoupment)**

56.     CTIA incorporates by reference its answers to Paragraphs 1-55, as if fully set forth herein.

57.     The allegations of Paragraph 57 are conclusions of law to which no response is required.  CTIA is also without sufficient knowledge or information to form a belief as to the allegations in Paragraph 57, and therefore denies those allegations.

The remaining allegations are prayers for relief which do not require an admission or denial by CTIA.  To the extent a response is required, the allegations are denied. Unless specifically admitted herein, all allegations are denied.

## AFFIRMATIVE DEFENSES

**First Affirmative Defense**

Plaintiff has failed to state a claim upon which relief may be granted.

**Second Affirmative Defense**

Plaintiff's claims are barred by its failure to comply with an agreement it entered into with Defendants to fund CTIA's defense costs.

**Third Affirmative Defense**

Plaintiff's claims are barred due to its failure to comply with the terms and conditions of the Fireman's Fund Policies.

**Fourth Affirmative Defense**

Plaintiff's claims are barred by the doctrine of waiver.

**Fifth Affirmative Defense**

Plaintiff's claims are barred by the doctrine of estoppel.

**Sixth Affirmative Defense**

The Prior/Pending Litigation Exclusions relied upon by Fireman's Fund are not contained in the policies at issue here.

**Seventh Affirmative Defense**

To the extent that Prior/Pending Litigation Exclusions are contained in the Fireman's Fund Policies, Plaintiff's claims are barred because the <u>Wright</u> and <u>Busse</u> claims are not "litigation."

**Eighth Affirmative Defense**

To the extent that Prior/Pending Litigation Exclusions are contained in the Fireman's Fund Policies, Plaintiff's claims are barred because the Prior/Pending Exclusions are ambiguous.

**Ninth Affirmative Defense**

To the extent that Prior/Pending Litigation Exclusions are contained in the Fireman's Fund Policies, Plaintiff's claims are barred because the Pending/Prior Litigation Exclusion is unconscionable.

**Tenth Affirmative Defense**

To the extent that Prior/Pending Litigation Exclusions are contained in the Fireman's Fund Policies, Plaintiff's claims are barred because Plaintiff's interpretation of the Pending/Prior Litigation Exclusion results in illusory coverage.

**Eleventh Affirmative Defense**

Plaintiff's claims are barred by the doctrine of unclean hands.

**Twelfth Affirmative Defense**

Plaintiff's claims are barred due to the doctrine of collusion.

**Thirteenth Affirmative Defense**

Plaintiff's claims are barred due to its breach of its obligations of good faith and fair dealing.

**Fourteenth Affirmative Defense**

Plaintiff's claims are barred by the doctrine of contributory negligence.

**Fifteenth Affirmative Defense**

Plaintiff has failed to mitigate its damages, if any.

**Sixteenth Affirmative Defense**

Plaintiff's claims are barred by the statute of limitations.

**Seventeenth Affirmative Defense**

Plaintiff's claims are barred by the doctrine of laches.

Defendant reserves the right to add other Affirmative Defenses up to and including the day of trial.

## COUNTERCLAIM

Counter-Plaintiff, CTIA - THE WIRELESS ASSOCIATION, formerly the Cellular Telecommunications & Internet Association ("CTIA"), by and through its undersigned counsel, brings this Counterclaim against Counter-Defendant Fireman's Fund Insurance Company ("Fireman's Fund") and alleges the following:

## BACKGROUND

1.      The dispute raised by Fireman's Fund in its Complaint is primarily an inter-insurance company dispute between two of CTIA's insurance carriers (Fireman's Fund and Hartford) over amounts that each insurance company should pay for defense costs incurred in defending approximately 14 different and distinct lawsuits filed against CTIA (the "Underlying Lawsuits").

2.      The Underlying Lawsuits were filed against various wireless service providers and wireless phone manufacturers, alleging that use of cellular phones causes some form of bodily injury to humans using them.  Although there is no basis for any of the claims and assertions being made in the Underlying Lawsuits, CTIA, nonetheless, must defend itself.

3.      To obtain a defense, CTIA tendered the Underlying Lawsuits to Hartford and Fireman's Fund.  Because the Hartford and Fireman's Fund policies at issue here provide overlapping coverage for the same claims, it has ultimately proven difficult for the two insurance carriers to reach finality on what amounts each insurance carrier should pay.  Pursuant to agreement, for the past five years, Hartford and Fireman's Fund have divided defense costs equally among themselves.  Recently, Hartford reversed its position to pay defense costs on certain lawsuits.  Fireman's Fund responded by filing a Complaint against Hartford and CTIA.

4.      In its Complaint, Fireman's Fund asserts that it made a mistake over the past five years by paying defense costs, and seeks to remedy its alleged error through this lawsuit.  Among other things, Fireman's Fund seeks to have CTIA or Hartford pay them back for defense costs Fireman's Fund voluntarily paid to defense counsel selected and

controlled by them.  CTIA disputes that this is proper, and seeks appropriate relief in its

Counterclaim.

5.      This is a Counterclaim for breach of contract, bad faith breach of contract,

breach of implied covenant of good faith and fair dealing, breach of duty, reformation,

negligent supervision, and declaratory relief arising out of Fireman's Fund's defense

activities with respect to the Underlying Lawsuits pursuant to a series of Nonprofit

Organization Liability insurance policies sold to CTIA by Fireman's Fund.

## PARTIES

6.      Counter-Plaintiff, CTIA – The Wireless Association, formerly the Cellular

Telecommunications & Internet Association, is a trade association existing under the

laws of the District of Columbia, and has its principal place of business at 1400 16th

Street, N.W., Suite 600, Washington, DC 20036.

7.      Upon information and belief, Counter-Defendant Fireman's Fund is a

corporation organized and existing under the laws of the State of California with its

principal place of business in the State of California.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over these Counterclaims pursuant to 28

U.S.C. § 1332(a)(1), as this is a civil action where the matter in controversy exceeds the

value of $75,000.00, exclusive of interests and costs, and is between the citizens of

different States.

9.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(a) as

Plaintiff/Counter-Defendant Fireman's Fund has submitted to the jurisdiction of this

Court by filing its Complaint.

## THE UNDERLYING LAWSUITS

10.    Beginning in August 2000, CTIA was named as a defendant in a series of distinct and different lawsuits filed against the cellular telephone industry.

11.    These Underlying Lawsuits include: (a) Newman, et al. v. Motorola, Inc., et al., No. CCB-00-2609 (Md. Cir. Ct., Baltimore County filed Aug. 1, 2000) (attached as **Exhibit A**); (b) Barrett, et al. v. Nokia, Inc., et al., No. 2001-CV-33385 (Ga. Sup. Ct., Fulton County filed Jan. 29, 2001) (attached as **Exhibit B**); (c) Brower, et al. v. Motorola, Inc., et al., No. GIC765987 (Cal. Sup. Ct. filed Apr. 19, 2001) (attached as **Exhibit C**); (d) Murray, et al. v. Motorola, Inc., et al., (D.C. Sup. Ct. filed Nov. 15, 2001) (attached as **Exhibit D**); (e) Keller, et al. v. Nokia, Inc., et al., No. 1372-02 (D.C. Sup. Ct. filed Feb. 26, 2002) (attached as **Exhibit E**); (f) Agro, et al. v. Motorola, Inc., et al., No. 1368-02 (D.C. Sup. Ct. filed Feb. 26, 2002) (attached as **Exhibit F**); (g) Schwamb, et al. v. Qualcomm, Inc., et al., No. 1370-02 (D.C. Sup. Ct. filed Feb. 26, 2002) (attached as **Exhibit G**); (h) Schofield, et al. v. Matsushita, Inc., et al., No. 1371-02 (D.C. Sup. Ct. filed Feb. 26, 2002) (attached as **Exhibit H**); (i) Cochran, et al. v Audiovox Corp., et al., No. 1369-02 (D.C. Sup. Ct. filed Feb. 26, 2002) (attached as **Exhibit I**); (j) Pinney v. Nokia, Civ. No. 24-C-01-001897 (Md. Cir. Ct. (Baltimore County) filed Apr. 19, 2001) (attached as **Exhibit J**); (k) Gimpelson v. Nokia, No. 2001CV38932 (Ga. Super. Ct. (Fulton County) filed June 8, 2001) (attached as **Exhibit K**); (l) Gilliam v. Nokia, No. 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 (N.Y. Super. Ct. (Bronx County) filed Apr. 23, 2001) (attached as **Exhibit L**); (m) Farina v. Nokia, No. 01-002527 (Pa. Ct. Com. Pl. (Phila. County) filed Apr. 19, 2001) (attached as **Exhibit M**); and (n) Dahlgren v. Audiovox, No. 02-00007884 (D.C.

Super. Ct. filed Sep. 6, 2002) (attached as **Exhibit N**). These lawsuits are collectively referred to herein as the Underlying Lawsuits.

12.     Although each of these Underlying Lawsuits arise out of, or are in consequence of, different facts and circumstances, they tend to involve plaintiffs who have allegedly been diagnosed with brain cancer or other bodily injuries that they claim are somehow related to their use of cellular telephones. These lawsuits also allege errors and omissions by CTIA.

## THE APPLICABLE INSURANCE POLICIES

13.     First Specialty Insurance Company issued NonProfit Organization Liability Insurance Policy No. NPA-000122-3 to CTIA for the policy period June 1, 2000 to June 1, 2001 (the "2000-2001 Policy") and NonProfit Organization Liability Insurance Policy No. NPA-000122-4 to CTIA for the policy period June 1, 2001 to June 1, 2002 (the "2001-2002 Policy"). Although actual language contained in these policies is disputed, the language that Fireman's Fund alleges is applicable with respect to coverage is set forth in the policy documents attached to Fireman's Fund's Complaint.

14.     Upon information and belief, Fireman's Fund acquired on November 16, 2000, all rights and obligations from First Specialty Insurance Company for the 2000-2001 Policy and 2001-2002 Policy and is the real party in interest with respect to those policies. Collectively, the 2000-2001 and 2001-2002 Policies are referred to herein as the "Fireman's Fund Policies."

15.     The Fireman's Fund Policies are "claims-made" policies, which provide coverage, among other things, for claims made against CTIA during the policy period.

16.     Specifically, the Fireman's Fund Policies provide coverage for all "loss" CTIA becomes legally obligated to pay as a result of a "claim" or "claim(s)" made against CTIA due to a "wrongful act." See 2000-2001 Policy, Section I; 2001-2002 Policy, Section I.

17.     The Fireman's Fund Policies define "loss," in pertinent part, as "any amount which the 'insured(s)' are legally obligated to pay, or which the 'entity' shall be required or permitted by law to pay, as indemnity to the 'insured(s)' for any 'claim' or 'claim(s)' made against them for 'wrongful act(s).'" See 2000-2001 Policy, Section IV.F; 2001-2002 Policy, Section IV.F.

18.     The Fireman's Fund Policies define "wrongful act" as "any actual or alleged error or omission, misstatement, misleading statement, discrimination, harassment, civil rights violations, breach of duty, or negligent act committed by an 'insured,' 'employment practice claim,' or 'personal injury' based upon or arising out of the (non)performance of 'professional services' on behalf of the 'entity.'" See 2000-2001 Policy, Section IV.K; 2001-2002 Policy, Section IV.K.

19.     The 2000-2001 Policy has a limit of $7 million for each loss and in the aggregate, excess of a $25,000 self-insured retention, for all claims made during the policy period.  The 2001-2002 Policy has a limit of $10 million for each loss and in the aggregate, excess of a $25,000 self-insured retention, for all claims made during the policy period.

20.     Newman, Barrett, Brower, Gilliam, Farina, and Pinney were filed against CTIA and reported to Fireman's Fund during the policy period applicable to the 2000-2001 Policy.

21.    <u>Murray</u>, <u>Keller</u>, <u>Agro</u>, <u>Schwamb</u>, <u>Schofield</u>, <u>Cochran</u>, <u>Pinney</u>, <u>Dahlgren</u>, and <u>Gimpelson</u> were filed against CTIA and reported to Fireman's Fund during the policy period applicable to the 2001-2002 Policy.

22.    The Fireman's Fund Policies each contain a "Defense, Investigation, and Settlement of Claims" provision that provides, in relevant part, that Fireman's Fund shall "defend any 'claim' against the 'insured(s)' for 'loss,' even if such 'claim' is groundless, false, or fraudulent." <u>See</u> 2000-2001 Policy at Section II.A; 2001-2002 Policy at Section II.A.

23.    CTIA also purchased a series of comprehensive general and umbrella liability policies sold to them by co-Defendants Hartford Casualty Insurance Company and Twin City Fire Insurance Company (collectively "Hartford").

24.    The Fireman's Fund Policies contain an "other insurance" provision requiring that, if CTIA "has other insurance insuring against a 'loss' covered by this policy, the insurance provided by this policy shall apply in excess of such other insurance." 2000-2001 Policy, Section XV; 2001-2001 Policy, Section XV.

25.    The Fireman's Fund Policies' "other insurance" clause does not relieve Fireman's Fund of its obligation to provide a defense under the Policies. Rather, it requires them to defend and pay for any defense costs which are not paid for by Hartford.

**FIREMAN'S FUND'S REFUSAL TO PAY FOR CTIA'S FULL DEFENSE OF THE UNDERLYING LITIGATION AND MISMANAGEMENT OF ITS DUTY TO DEFEND**

26.    On August 24, 2001, Fireman's Fund agreed to defend <u>Newman</u> and <u>Barrett</u> under the 2000-2001 Policy. Fireman's Fund selected a law firm to provide the defense. That law firm is not identified here by name, but is referred to herein as the XYZ Firm.

27.    On December 19, 2001, March 4, 2002, May 22, 2002, September 27,

2002, and February 13, 2003, Fireman's Fund agreed to defend the remaining lawsuits in

the Underlying Litigation (Brower, Barrett, Murray, Agro, Cochran, Keller, Schofield,

Schwamb, Farina, Gilliam, Pinney, Gimpelson and Dahlgren).  Fireman's Fund again

appointed the XYZ Firm as defense counsel for these claims.

### The Alleged Prior/Pending Litigation Exclusion

28.    Fireman's Fund asserted that coverage may be excluded by the

"Prior/Pending Litigation Exclusion" allegedly contained in the Fireman's Fund Policies.

29.    Upon information and belief, the "Prior/Pending Litigation Exclusion" is

not properly contained in the Fireman's Fund Policies, and is otherwise inapplicable here.

This is the reason that Fireman's Fund has been defending the Underlying Litigation, in

some respect, for almost 5 years.

30.    Fireman's Fund alleges that the "Prior/Pending Litigation Exclusion" bars

coverage for CTIA because the claims alleged in the Underlying Litigation are based

upon two previously-filed lawsuits against CTIA:  Wright v. Motorola, Inc. and Busse v.

Motorola, Inc.

31.    The claims asserted against CTIA in the Underlying Litigation differ

substantially from the claims asserted against CTIA in Wright and Busse.

32.    In addition, the allegations in Wright and Busse were dismissed as against

CTIA, and are not "litigation" contemplated by the exclusion.

33.    Fireman's Fund's interpretation of the Prior/Pending Litigation Exclusion

is also overbroad, ambiguous, and renders coverage under the policies illusory.

**Fireman's Fund's Failure to Manage the Litigation Properly**

34.      Fireman's Fund selected the XYZ Firm to act as defense counsel for CTIA in the Underlying Litigation throughout the United States.

35.      The XYZ Firm and Fireman's Fund grossly mismanaged the Underlying Litigation and wasted in excess of $1 million in defense costs, thereby unjustifiably eroding CTIA's limits under the Fireman's Fund Policies.

## COUNT ONE
### (Breach of Contract and Vexatious Refusal to Pay)

36.      CTIA incorporates the allegations contained in Counterclaim paragraphs 1 through 35 above as if fully set forth herein.

37.      Fireman's Fund owes a contractual duty under the Fireman's Fund Policies to defend CTIA in the Underlying Litigation when the Hartford policies do not.

38.      To date, and for the past five years, Fireman's Fund has paid (at most) only 50 percent of CTIA's defense costs for the Underlying Litigation.  Yet, Fireman's Fund contends that it has no defense obligations under its policies.

39.      As a direct and proximate cause of Fireman's Fund's conduct, CTIA has sustained damages.

40.      CTIA is entitled to payment from Fireman's Fund of 100 percent of the defense costs previously incurred and that will be incurred in the future for all covered claims in the Underlying Litigation that are not defended in full by Hartford.

## COUNT TWO
### (Bad Faith Breach of Contract)

41.      CTIA incorporates the allegations contained in Counterclaim paragraphs 1 through 40 above as if fully set forth herein.

42.     Under the terms of the Fireman's Fund Policies, Fireman's Fund is obligated to defend the Underlying Litigation when Hartford does not.

43.     Fireman's Fund is required to execute this defense obligation reasonably.

44.     Fireman's Fund knowingly allowed the XYZ firm to mismanage the Underlying Litigation and to waste in excess of $1 million in defense costs and related fees.  Fireman's Fund is now asking CTIA to reimburse it for defense costs incurred by the XYZ firm.

45.     Fireman's Fund has unreasonably breached its contractual duty to CTIA by mismanagement of the XYZ law firm, and then later attempting to have CTIA pay for that mismanagement.

46.     Fireman's Fund injured CTIA by unjustifiably eroding CTIA's limits under the Fireman's Fund Policies.

47.     In addition, Fireman's Fund owes a contractual obligation to CTIA to investigate claims brought against CTIA, to make prompt determinations as to coverage for those claims, and not to reverse its coverage determination five years after the Underlying Lawsuits were filed.

48.     For the past five years, Fireman's Fund has defended CTIA in the Underlying Litigation.

49.     No new facts have been discovered that would permit Fireman's Fund to reconsider its payment of defense costs under the Policies.

50.     By virtue of its Complaint in this case, Fireman's Fund has now effectively denied coverage for each and every one of the Underlying Litigation lawsuits, despite five years of action to the contrary.

51.    Moreover, Fireman's Fund now seeks recoupment of more than $1 million paid to CTIA under the Fireman's Fund Policies, five years after making these payments to the XYZ Firm and others.  Fireman's Fund seeks this recoupment knowing that such recoupment is improper.

52.    Fireman's Fund has, in bad faith, unreasonably breached its contractual duty to defend CTIA by invoking exclusionary language five years into coverage and attempting to discontinue its defense of the Underlying Litigation after a dubious investigation of the claims taking place five years after Fireman's Fund undertook its defense.

53.    Fireman's Fund has, in bad faith, unreasonably breached its contractual duty to defend CTIA by seeking reimbursement for expenses recklessly incurred by Fireman's Fund, by otherwise mismanaging the XYZ Firm, and by reversing its coverage determination long after defense was begun.

54.    As a direct and proximate cause of Fireman's Fund's bad faith breach of contract, CTIA has been injured and is entitled to recover damages.

### COUNT THREE
**(Breach of Implied Covenant of Good Faith and Fair Dealing)**

55.    CTIA incorporates the allegations contained in Counterclaim paragraphs 1 through 54 above as if fully set forth herein.

56.    Fireman's Fund, by acquiring all rights and obligations from First Specialty, entered into two mutually binding insurance policies with CTIA.

57.    Fireman's Fund agreed to defend the Underlying Litigation yet unreasonably classified each of these lawsuits as triggering the 2000-2001 Policy, even

though Murray, Keller, Agro, Schwamb, Schofield, Cochran, Pinney, Dahlgren, and Gimpelson were all filed after June 1, 2001.

58.    Moreover, Fireman's Fund seeks to bar coverage for the Underlying Litigation in its entirety on the ground that every claim in the Underlying Litigation relates back to Wright and/or Busse.

59.    To date, Fireman's Fund has paid only 50 percent of CTIA's defense costs for the Underlying Litigation and unreasonably seeks to terminate coverage for those claims five years after agreeing to defend.

60.    Fireman's Fund now seeks recoupment for approximately $1 million in attorneys' fees, even though these fees were unreasonably expended by the XYZ Firm, a firm selected by Fireman's Fund to defend CTIA.

61.    As a direct and proximate cause of Fireman's Fund's conduct, CTIA has sustained damages.

62.    Fireman's Fund has breached its implied duty of good faith and fair dealing to CTIA by asserting that it has no obligation to defend CTIA, by mismanaging and unreasonably wasting CTIA assets, and by investigating the claim and reversing its defense practices five years after undertaking a defense.

### COUNT FOUR
### (Breach of Duty)

63.    CTIA incorporates the allegations contained in Counterclaim paragraphs 1 through 62 above as if fully set forth herein.

64.    Under the terms of the Fireman's Fund Policies, Fireman's Fund is obligated to defend the Underlying Litigation where and when the Hartford policies do not.

65.    Fireman's Fund is required to execute this defense obligation reasonably.

66.    Fireman's Fund exercised exclusive control in selecting and hiring the XYZ firm.

67.    Fireman's Fund has unreasonably breached its fiduciary duty to CTIA by paying excessive attorney fees to the XYZ Firm, by paying defense costs for five years and then reversing its position and asking for CTIA to reimburse it for costs Fireman's Fund freely paid, and by wasting in excess of $1 million in defense costs through their own improper selection of counsel and management of counsel hired by it to defend CTIA.  Fireman's Fund has also injured CTIA by unjustifiably eroding CTIA's limits under the Fireman's Fund Policies, and by now asking CTIA to reimburse it for such erosion of limits.

68.    As a direct and proximate cause of Fireman's Fund's conduct, CTIA has sustained damages.

## COUNT FIVE
### (Reformation)

69.    CTIA incorporates the allegations contained in Counterclaim paragraphs 1 through 68 above as if fully set forth herein.

70.    The Fireman's Fund Policies, and the "Prior/Pending Litigation Exclusion" contained therein, differ materially from coverage negotiated by and between CTIA and First Specialty/Fireman's Fund.

71.    It was not the intention of CTIA or its insurer that the "Prior/Pending Litigation Exclusion" clause would bar coverage for the types of future lawsuits which are at issue here.

72.    First Specialty/Fireman's Fund negligently, or through mistake, included the "Prior/Pending Litigation Exclusion" as an endorsement to the Fireman's Fund Policies.

73.    First Specialty/Fireman's Fund negligently, or through mistake, drafted the "Prior/Pending Litigation Exclusion" contained in the Fireman's Fund Policies to be overbroad and ambiguous.

74.    First Specialty/Fireman's Fund negligently, or through mistake, have interpreted the "Prior/Pending Litigation Exclusion" to eviscerate coverage for CTIA under the Fireman's Fund Policies for CTIA's alleged errors and omissions alleged in the Underlying Litigation.

75.    This negligence and/or mistake by First Specialty/Fireman's Fund has unjustifiably exposed CTIA to liability arising from the Underlying Litigation.

76.    As a direct and proximate cause of Fireman's Fund's conduct, CTIA has sustained injury.

77.    The Fireman's Fund Policies must therefore be reformed such that the "Prior/Pending Litigation Exclusion" is not included or does not otherwise limit coverage for the Underlying Litigation.

## COUNT SIX
### (Negligent Supervision)

78.    CTIA incorporates the allegations contained in Counterclaim paragraphs 1 through 77 above as if fully set forth herein.

79.    Fireman's Fund selected defense counsel as part of its duty to defend the Underlying Litigation under the Fireman's Fund Policies.

80.    However, Fireman's Fund failed to supervise the counsel it chose, the XYZ Firm, and negligently permitted the XYZ Firm to grossly mismanage the Underlying Litigation.

81.    Fireman's Fund's negligent supervision resulted in the unjustified erosion of more than $1 million of the Fireman's Fund Policies' limits.

82.    Fireman's Fund has further injured CTIA by exposing it to liability from the Underlying Litigation, and by demanding that CTIA return defense costs paid by it to the XYZ Firm.

83.    Fireman's Fund exercised control in hiring and overseeing the XYZ Firm, and Fireman's Fund's negligent supervision is the actual and proximate cause of injury to CTIA.

84.    As a direct and proximate cause of Fireman's Fund's conduct, CTIA has sustained damages.

## COUNT SEVEN
### (Declaratory Relief)

85.    CTIA incorporates the allegations contained in Counterclaim paragraphs 1 through 84 above as if fully set forth herein.

86.    Fireman's Fund previously agreed to defend the Underlying Litigation, but now seeks to deny coverage for the Underlying Litigation lawsuits.

87.    CTIA is entitled to a declaration, pursuant to 28 U.S.C. § 2201, that Fireman's Fund has a duty to defend it against the Underlying Litigation, under one or more of the Fireman's Fund Policies, for all claims covered under the Fireman's Fund Policies that are not covered by the Hartford policies.

## PRAYER FOR RELIEF

WHEREFORE, CTIA requests that the Court enter judgment in its favor as follows:

A.    With respect to Count I, an order: (1) requiring Fireman's Fund to defend CTIA against the Underlying Litigation and to pay 100 percent of all defense costs incurred or to be incurred with respect to the Underlying Litigation to the extent those costs are not paid under the Hartford policies, (2) requiring that Fireman's Fund pay CTIA's attorneys fees in prosecution of this action, and (3) indicating that the various Underlying Litigation lawsuits trigger obligations of Fireman's Fund under more than one insurance policy;

B.    With respect to Count II, an order requiring Fireman's Fund to pay punitive damages and attorneys' fees in an amount the Court deems appropriate under the circumstances;

C.    With respect to Count III, an order requiring Fireman's Fund to defend CTIA against the Underlying Litigation and to pay 100 percent of all defense costs incurred or to be incurred with respect to the Underlying Litigation, to the extent those costs are not paid under the Hartford policies, and an order requiring Fireman's Fund to pay attorneys' fees and other damages in an amount the Court deems appropriate under the circumstances;

D.    With respect to Count IV, an order requiring Fireman's Fund to defend CTIA against the Underlying Litigation and to pay 100 percent of all defense costs incurred or to be incurred with respect to the Underlying Litigation, to the extent those costs are not paid under the Hartford policies;

E.     With respect to Count V, an order revising the Fireman's Fund Policies to reflect the mutual intentions of the parties and to exclude the "Prior/Pending Litigation Exclusion" clause from the applicable policies to the extent that Fireman's Fund alleges that it may be applicable here;

F.     With respect to Count VI, an order requiring Fireman's Fund to pay punitive damages and attorneys' fees and any other amount the Court deems appropriate under the circumstances;

G.     With respect to Count VII, an order declaring that Fireman's Fund must defend CTIA against the Underlying Litigation and pay 100 percent of all defense costs incurred or to be incurred with respect to the Underlying Litigation to the extent that such defense is not provided by Hartford, and properly classify the lawsuits as covered under two policies rather than just one; and

H.     Any other relief the Court deems appropriate under the circumstances, including an award of attorneys fees and costs incurred by CTIA in bringing this action.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues.

## CROSS-CLAIM

While denying liability for any and all damages alleged in this matter, CTIA brings this cross-claim against Defendants Hartford Casualty Insurance Company and Twin City Fire Insurance Company (collectively, "Hartford").  In support thereof, CTIA states as follows:

## NATURE OF THE CLAIM AND RELIEF SOUGHT

1.      This is an action for breach of contract, bad faith breach of contract,

breach of the implied covenant of good faith and fair dealing, and breach of fiduciary

duty arising out of Hartford's refusal to fully defend CTIA under a series of commercial

general liability and/or umbrella liability insurance policies sold to CTIA by Hartford

with respect to certain underlying lawsuits alleging that individuals suffered bodily injury

as a result of using their cellular telephones.  CTIA also seeks a declaration pursuant to

28 U.S.C. § 2201 that Hartford must defend and indemnify CTIA for all fees, costs and

related damages incurred in these underlying lawsuits.

## JURISDICTION, PARTIES AND VENUE

2.      This Court has diversity jurisdiction over this action pursuant to 28 U.S.C.

§ 1332(a)(1), as this is a civil action where the matter in controversy exceeds the value of

$75,000.00, exclusive of interests and costs, and is between the citizens of different

States.

3.      Cross-Claim Plaintiff, CTIA – The Wireless Association, formerly the

Cellular Telecommunications & Internet Association, is a trade association existing under

the laws of the District of Columbia, and has its principal place of business at 1400 16th

Street, N.W., Suite 600, Washington, DC 20036.

4.      Upon information and belief, Cross-Claim Defendant Hartford Casualty

Insurance Company is a corporation organized and existing under the laws of the State of

Indiana, with its principal place of business in Hartford, Connecticut.

5.      Upon information and belief, Cross-Claim Defendant Twin City Fire Insurance Company is a corporation organized and existing under the laws of the State of Indiana, with its principal place of business in Hartford, Connecticut.

6.      This court has personal jurisdiction over Cross-Claim Defendants because Defendants were at all relevant times transacting business in the District of Columbia. Cross-Claim Defendants have agents in the District of Columbia engaging in the business of insurance on their behalf, and were at all relevant times engaged in the business of insurance in the District of Columbia.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to the claims at issue in this action occurred in the District of Columbia.

### THE UNDERLYING LITIGATION

8.      CTIA has been named as a defendant in a series of lawsuits filed against the cellular telephone industry.

9.      Each of these lawsuits arise out of, or in consequence of, different facts and circumstances, but they generally involve plaintiffs who allege their bodily injuries are somehow related to their use of cellular telephones.

10.     The lawsuits for which CTIA seeks to have Hartford pay a full defense in this action include: (a) Newman, et al. v. Motorola, Inc., et al., No. CCB-00-2609 (Md. Cir. Ct., Baltimore County filed Aug. 1, 2000); (b) Barrett, et al. v. Nokia, Inc., et al., No. 2001-CV-33385 (Ga. Sup. Ct., Fulton County filed Jan. 29, 2001); (c) Brower, et al. v. Motorola, Inc., et al., No. GIC765987 (Cal. Sup. Ct. filed Apr. 19, 2001); (d) Murray, et al. v. Motorola, Inc., et al., (D.C. Sup. Ct. filed Nov. 15, 2001); (e) Keller, et al. v. Nokia,

Inc., et al., No. 1372-02 (D.C. Sup. Ct. filed Feb. 26, 2002); (f) Agro, et al. v. Motorola,

Inc., et al., No. 1368-02 (D.C. Sup. Ct. filed Feb. 26, 2002); (g) Schwamb, et al. v.

Qualcomm, Inc., et al., No. 1370-02 (D.C. Sup. Ct. filed Feb. 26, 2002); (h) Schofield, et

al. v. Matsushita, Inc., et al., No. 1371-02 (D.C. Sup. Ct. filed Feb. 26, 2002); (i)

Cochran, et al. v Audiovox Corp., et al., No. 1369-02 (D.C. Sup. Ct. filed Feb. 26, 2002);

(j) Pinney v. Nokia, Civ. No. 24-C-01-001897 (Md. Cir. Ct. (Baltimore County) filed

Apr. 19, 2001); (k) Gimpelson v. Nokia, No. 2001CV38932 (Ga. Super. Ct. (Fulton

County) filed June 8, 2001); (l) Gilliam v. Nokia, No. 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 (N.Y. Super. Ct.

(Bronx County) filed Apr. 23, 2001); (m) Farina v. Nokia, No. 01-002527 (Pa. Ct. Com.

Pl. (Phila. County) filed Apr. 19, 2001), and (n) Dahlgren v. Audiovox, No. 02-00007884

(D.C. Super. Ct. filed Sep. 6, 2002).  These lawsuits are collectively referred to herein as

the "Underlying Litigation."

　　　　11.　　Newman, Barrett, Brower, Murray, Keller, Agro, Schwamb, Schofield and

Cochran are referred to herein as the "Brain Cancer Cases" because the separate and

distinct plaintiffs in each of these cases allege that they have developed cancer from their

alleged use of cellular telephones and because they seek damages for this bodily injury.

Although the Brian Cancer Cases each allege some form of cancer, they each arise out of

different facts, circumstances and situations.  Pinney, Gimpelson, Gilliam, Farina and

Dahlgren are referred to herein as the "Headset Bodily Injury Cases" because the

plaintiffs in each allege they have suffered an "adverse cellular reaction," "biological

injury," or similar "cellular dysfunction" from using cellular telephones and as a result of

CTIA. Although the Headset Bodily Injury Cases each allege some form adverse cellular

reaction, they each arise out of different facts, circumstances and situations.

## THE INSURANCE POLICIES

12.    Hartford sold the following primary and umbrella Commercial General

Liability (CGL) insurance policies to CTIA:

| Policy Number | Coverage Period(s) |
|---|---|
| 42 UUC AU6453 (primary) | 6/1/91 to 6/1/92 |
| 42 RHU YX2453 (umbrella) | 7/29/91 to 7/29/92 |
| 42 UUC AU6453 (primary) | 6/1/92 to 6/1/93 |
| 42 RHU YX2453 (umbrella) | 7/29/92 to 7/29/93 |
| 42 UUC AU6453 (primary) | 6/1/93 to 6/1/94 |
| 42 RHU WP7340 (umbrella) | 6/1/93 to 6/1/94 |
| 42 UUC AU6453 (primary) | 6/1/94 to 6/1/95 |
| 42 RHU WP7340 (umbrella) | 6/1/94 to 6/1/95 |
| 42 UUC AU6453 (primary) | 6/1/95 to 6/1/96 |
| 42 RHU WP7340 (umbrella) | 6/1/95 to 6/1/96 |
| 42 UUC AU6453 (primary) | 6/1/96 to 6/1/97 |
| 42 RHU WP7340 (umbrella) | 6/1/96 to 6/1/97 |
| 42 UUC AU6453 (primary) | 6/1/97 to 6/1/98 |
| 42 RHU WP7340 (umbrella) | 6/1/97 to 6/1/98 |
| 42 UUC AU6453 (primary) | 6/1/98 to 6/1/99 |
| 42 RHU WP7340 (umbrella) | 6/1/98 to 6/1/99 |
| 42 UUC AU6453 (primary) | 6/1/99 to 6/1/00 |
| 42 RHU WP7340 (umbrella) | 6/1/99 to 6/1/00 |
| 42 UUC AU6453 (primary) | 6/1/00 to 6/1/01 |

| 42 RHU XF6051 (umbrella) | 6/1/00 to 6/1/01 |
| 42 UUC AU6453 (primary) | 6/1/01 to 6/1/02 |

13.     A representative Hartford primary insurance policy covering the policy period from 6/1/1996 to 6/1/1997 is attached as **Exhibit O**.

14.     The Hartford policies are known as "occurrence" policies, covering third-party allegations of bodily injury or property damage during the policy period.

15.     The Hartford policies provide both defense and indemnity coverage, with the primary policies responding first, and the umbrella policies responding if primary coverage is either exhausted or is otherwise excluded under the primary policies.

16.     The insuring agreements in the Hartford policies state:

> We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

See **Exhibit O** at Commercial General Liability Coverage Form, p. 1 of 13.

17.     "Bodily injury" is defined in the Hartford policies as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." Id., p. 12 of 13.

18.     On information and belief, each Hartford primary policy has a limit of $1 million per occurrence.  A separate per-occurrence limit applies for each given policy year.

19.     Defense coverage provisions under the Hartford primary policies require Hartford to defend the Underlying Litigation.  Defense coverage provisions in the

Hartford primary policies do not permit anything other than a full defense, requiring Hartford to pay 100 percent of defense costs incurred in each of the respective Underling Litigation lawsuits.

20.    Defense costs paid under the primary Hartford policies do not reduce or exhaust the limits of insurance afforded under the Hartford primary policies.

## HARTFORD'S REFUSAL TO PAY FOR CTIA'S FULL DEFENSE OF THE UNDERLYING LITIGATION

### The Brain Cancer Cases

21.    On April 12, 2001, and again on September 21, 2001, Hartford agreed to defend Newman and Barrett under its policies.  However, Hartford has paid (at most) only 50 percent of the defense costs of Newman and Barrett, despite its obligation under its policies to provide 100 percent of the defense for the Underlying Litigation.

22.    On April 5, 2002, Hartford agreed to defend Brower, Murray, Agro, Keller, Schofield and Schwamb.   However, Hartford has paid (at most) only 50 percent of the defense costs of Brower, Murray, Agro,  Keller, Schofield and Schwamb, despite its obligation under its policies to provide 100 percent of the defense for the Underlying Litigation.

23.    Hartford stated that it would deny coverage for Cochran, but has not yet done so.  Hartford has paid (at most) only 50 percent of the defense costs of Cochran, despite its obligation under its policies to provide 100 percent of the defense for the Underlying Litigation.

## The Headset Bodily Injury Cases

24.      In 2002, Hartford initially stated in a series of letters that it intended to deny coverage for the Headset Bodily Injury Cases, which included <u>Pinney</u>, <u>Gilliam</u>, <u>Gimpelson</u>, <u>Farina</u> and <u>Dahlgren</u>.

25.      In practice, however, Hartford paid defense counsel's invoices for the Headset Bodily Injury Cases for the past three-and-one-half years since the filing of each Headset Bodily Injury Case.

26.      Recently, due to remand of the Headset Bodily Injury Cases from federal court to various state courts in Pennsylvania, New York, Maryland, Georgia, and the District of Columbia, it became apparent that defense of the Headset Bodily Injury Cases would become more costly going forward.

27.      Upon information and belief, faced with this potential future increase in defense costs, Hartford apparently reached a decision that it would no longer defend CTIA with respect to the Headset Bodily Injury Cases.

28.      Hartford's refusal to defend CTIA with respect to the Headset Bodily Injury Cases appears to be based on an assertion that those cases do not allege covered "bodily injury."

29.      Courts throughout the United States have routinely held that the allegations in the Headset Bodily Injury Cases constitute "bodily injury" under comprehensive general liability policies.

30.      Hartford has an obligation to defend CTIA in the Headset Bodily Injury Cases.

## COUNT I
### (Breach of Contract and Vexatious Refusal to Pay)

31.     CTIA incorporates and realleges the allegations in paragraphs 1-30 of this Cross-Claim.

32.     Hartford owes a contractual duty to CTIA under the policies it sold to CTIA to defend CTIA in the Underlying Litigation and to pay 100 percent of CTIA's defense costs in the Underlying Litigation.

33.     To date, Hartford has paid (at most) only 50 percent of CTIA's defense costs for the Brain Cancer Cases, and has recently denied coverage for the Headset Bodily Injury Cases.

34.     Hartford has breached its duty to defend CTIA against the Underlying Litigation under one or more of the Hartford policies.

88.     As a direct and proximate cause of Hartford's conduct, CTIA has sustained damages.

35.     CTIA is entitled to the payment from Hartford of 100 percent of the defense costs previously incurred and that will be incurred in the future with respect to the Underlying Litigation.

## COUNT II
### (Breach of the Implied Covenant of Good Faith and Fair Dealing)

36.     CTIA incorporates and realleges the allegations in paragraphs 1-35 of this Cross-Claim.

37.     Hartford stated its intention to deny coverage for the Headset Bodily Injury Cases, but continued to pay defense costs attributable those cases.  Hartford knowingly continued this practice for three-and-a-half years.

38.    Hartford now refuses to pay CTIA's defense costs for the Headset Bodily Injury Cases.

39.    Hartford's refusal to cover the Headset Bodily Injury Cases is made in the face of significant authority and precedent refuting Hartford's position that the Headset Bodily Injury Cases do not allege "bodily injury."

40.    Moreover, the facts of the Headset Bodily Injury Cases themselves, now amended, allege "bodily injury" covered by one or more of the Hartford's policies.

41.    Hartford's conduct has injured CTIA by exposing it to liability from the Headset Bodily Injury Cases.

42.    As a direct and proximate cause of Hartford's conduct, CTIA has sustained damages.

43.    Hartford has breached its implied duty of good faith and fair dealing to CTIA by refusing to defend the Headset Bodily Injury Cases under one or more of the Hartford policies, and by refusing to pay 100 percent of CTIA's defense in the Brain Cancer Cases.

## COUNT III
### (Bad Faith Breach of Contract)

44.    CTIA incorporates and realleges the allegations in paragraphs 1-43 of this Cross-Claim.

45.    Hartford has a contractual obligation to pay 100 percent of CTIA's defense costs for the entire Underlying Litigation.

46.    Since the Underlying Litigation was tendered to CTIA's insurers, Hartford has steadfastly refused to pay anything more than 50 percent of CTIA's defense costs, even while acknowledging the Hartford policies were responsive.

47.    Moreover, Hartford continues to deny coverage for the Headset Bodily Injury Cases in the face of overwhelming precedent in support of coverage.

48.    Given Hartford's clear obligation in its policies to fund 100 percent of the defense costs in the Underlying Litigation, Hartford has recklessly abused its position as CTIA's insurer to pay only what it wants to pay, regardless of its contractual or legal obligations.

49.    In unjustifiably refusing to pay all of CTIA's defense costs for the Underlying Litigation, Hartford forced CTIA to seek coverage under Fireman's Fund's policies, eroding those limits and causing Fireman's Fund to initiate the instant lawsuit.

50.    CTIA has suffered injury in that its limits under the Fireman's Fund policies continue to erode for claims covered by Hartford policies, and in that Fireman's Fund now seeks to disclaim coverage completely and recoup the $1 million in defense costs previously paid to CTIA.

51.    Hartford's bad faith conduct was the proximate cause of CTIA's injury, in that Hartford could have foreseen that its refusal to pay more than 50 percent would result in the erosion of the Fireman's Fund policies and retaliatory actions by Fireman's Fund.

52.    As a direct and proximate cause of Hartford's conduct, CTIA has sustained damages.

**COUNT IV**
**(Declaratory Judgment)**

53.    CTIA incorporates and realleges the allegations in paragraphs 1-52 of this Cross-Claim.

54.     Hartford has agreed to defend the Brain Cancer Cases, but has refused to pay 100 percent of CTIA's defense costs incurred in defending itself against the Brain Cancer Cases.

55.     Hartford has now denied coverage completely for the Headset Bodily Injury Cases.

56.     CTIA is entitled to a declaration that Hartford has a duty to fully defend it against the Underlying Litigation (both the Brain Cancer Cases and Headset Bodily Injury Cases) under one or more of the Hartford insurance policies.

57.     CTIA is entitled to a declaration that Hartford must pay 100 percent of CTIA's previously-incurred and future costs of defense in the Underlying Litigation (both the Brain Cancer and Headset Bodily Injury Cases) under one or more of the Hartford insurance policies.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff CTIA requests that the Court enter judgment in its favor as follows:

A.     With respect to Count I, an order requiring Hartford to: (1) defend CTIA against the Underlying Litigation and to pay 100 percent of all defense costs incurred or to be incurred with respect to the Underlying Litigation, and (2) pay CTIA's its attorneys' fees incurred in prosecution of this action;

B.     With respect to Count II, an order requiring Hartford to pay all prior defense costs incurred by CTIA with respect to the Headset Bodily Injury Cases and any other applicable relief;

C.    With respect to Count III, an order requiring Hartford to pay punitive damages and attorneys' fees in an amount the Court deems appropriate under the circumstances;

D.    With respect to Count IV, an order declaring that Hartford must defend CTIA against the Underlying Litigation and pay 100 percent of all defense costs incurred or to be incurred with respect to the Underlying Litigation; and

E.    Any other relief the Court deems appropriate under the circumstances, including an award of attorneys fees and costs incurred by CTIA in bringing this action.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues.

WHEREFORE, having fully answered, Defendant CTIA prays that the relief sought in Plaintiff Fireman's Fund's Complaint be denied, enter judgment on Defendant CTIA's Counterclaim and Cross-Claim, and award Defendant CTIA its costs and fees incurred.

Dated: June 22, 2006                    Respectfully Submitted,


                                        _____/s/_____
                                        Sanford M. Saunders (D.C. Bar No. 376098)
                                        Ross E. Eisenberg (D.C. Bar No. 489045)
                                        GREENBERG TRAURIG LLP
                                        800 Connecticut Ave., N.W.
                                        Suite 500
                                        Washington, DC  20006
                                        (202) 331-3100 (phone)
                                        (202) 331-3101 (fax)


                                        Of Counsel:

                                        Mark E. Miller (D.C. Bar No. 445743)
                                        GREENBERG TRAURIG LLP
                                        800 Connecticut Ave., N.W.
                                        Suite 500
                                        Washington, DC  20006
                                        (202) 331-3100 (phone)
                                        (202) 331-3101 (fax)


                                        *Attorneys for Defendant, Counter-Plaintiff and Cross-Claim Plaintiff CTIA - The Wireless Association*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **Answer, Counterclaim and Cross-Claim** was served this 22nd day of June, 2006 via first-class mail, postage prepaid upon:

> Lewis K. Loss, Esquire
> Jeremy S. Simon, Esquire
> THOMPSON, LOSS & JUDGE LLP
> 1919 Pennsylvania Ave., N.W.
> Suite M-200
> Washington, DC 20006


> Lee H. Ogburn
> Kramon & Graham, P.A.
> 1 South Street
> Baltimore, MD  21202


_____/s/_____
Ross E. Eisenberg