IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FIREMAN'S FUND INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> CELLULAR TELECOMMUNICATIONS AND INTERNET ASSOCIATION, THE HARTFORD CASUALTY INSURANCE COMPANY and TWIN CITY FIRE INSURANCE COMPANY, <br><br> Defendants. | Case No.: 1:06-CV-00854 |

## CROSS-PLAINTIFF CTIA'S MEMORANDUM OF LAW IN OPPOSITION TO CROSS-DEFENDANT HARTFORD'S MOTION TO DISMISS

Cross-Defendant CTIA-The Wireless Association, formerly the Cellular Telecommunications & Internet Association ("Defendant" or "CTIA"), pursuant to FED. R. CIV. P. 7(a) and L.Civ.R. 7, hereby files this Memorandum of Law in Opposition to the Motion to Dismiss filed by Cross-Defendants Hartford Casualty Insurance Company and Twin City Fire Insurance Company (collectively, "Hartford").

### INTRODUCTION

Cross-Defendant Hartford has moved to dismiss Count III of Cross-Plaintiff CTIA's Cross-Claim, which alleges "bad faith breach of contract" against Hartford stemming from Hartford's manipulation of its defense responsibilities under a series of commercial general liability insurance policies it sold to CTIA. Hartford moves to

dismiss this count on the grounds that CTIA's Cross-Claim alleges the tort of "bad faith," a cause of action Hartford contends should not be recognized in the District of Columbia.

Hartford's argument is misplaced. CTIA alleges "bad faith breach of contract" in its Cross-Claim, a cause of action firmly established under District of Columbia law. Although there is arguably a split in authority in the District of Columbia concerning the validity of a cause of action for the tort of "bad faith refusal to pay," that split in authority is immaterial to the instant case, as CTIA has not pled a cause of action for "bad faith refusal to pay." The gravamen of CTIA's bad faith breach of contract claim is that Hartford accepted the defense of multiple claims, and then proceeded to manipulate the amounts it would pay and the claims to which it would attribute defense costs once the cost of defending those claims appeared to rise. CTIA's Cross-Claim sufficiently alleges a cause of action for bad faith breach of contract because Hartford's conduct merged with, and assumed the character of, a willful tort, thereby entitling CTIA to punitive damages. Hartford has not, and can not, challenge the validity of this claim under District of Columbia law. Further, the cases Hartford cites in support of its argument all concern a tort claim for "bad faith refusal to pay" against insurers who deny coverage immediately, as opposed to the present case, where Hartford undertook a defense and manipulated amounts it wished to pay. The validity of a claim for "bad faith refusal to pay" or "bad faith denial of claim" is irrelevant, because CTIA's Cross-Claim does not allege this cause of action.

Taken in a light most favorable to CTIA, the facts alleged in CTIA's Cross-Claim state a valid claim for bad faith breach of contract. For these and other reasons set forth herein, Hartford's Motion to Dismiss must be denied.

## BACKGROUND

CTIA is a non-profit association whose members include, among others, organizations involved in the wireless communications industry. Cross-Claim at ¶ 2. This dispute centers on insurance coverage for a series of underlying lawsuits filed against various wireless telephone manufacturers, service providers and CTIA (the "Wireless Lawsuits"). Id. at ¶¶ 1, 9-12. Each of these Wireless Lawsuits allege, in some form or another, that use of cellular telephones causes injury to humans. Id. at ¶ 9. These lawsuits lack merit, and CTIA has, nonetheless, been forced to aggressively defend itself. Id. at ¶ 8.

CTIA tendered the Wireless Lawsuits to two of its insurers: (1) Plaintiff Fireman's Fund Insurance Company ("Fireman's Fund"), and (2) Defendant/Cross-Claimant Hartford. Because Hartford and Fireman's Fund provide overlapping coverage for the Wireless Lawsuits, CTIA quickly found its interests lost in a dispute between its two insurers centering around how much each of them must pay. See CTIA's Counterclaim at ¶ 3. CTIA routinely found itself holding unpaid bills, as its insurers fought amongst themselves at the expense of their mutual insured.[1]

In the end, CTIA's insurers found it too difficult to work out their differences. Fireman's Fund sued Hartford and CTIA on May 8, 2006. CTIA counterclaimed against Fireman's Fund and cross-claimed against Hartford on June 22, 2006, alleging breach of

---

[1] This remains the case today, despite the fact that CTIA's insurers have represented to this Court that they would fund the underlying defense of the Wireless Lawsuits until this coverage dispute has concluded. See, e.g., Cross-Claim at ¶¶ 21-23 (Hartford agreed to pay half of CTIA's defense costs); Fireman's Fund Complaint at ¶ 43 (Fireman's Fund agreed to pay remaining defense costs not paid by Hartford). Wireless Litigation counsel invoices totaling $47,184.98 for the months of February, March, April, May, June and July of 2006 have not been paid by CTIA's insurers. This current situation is indicative of what has transpired over the last five years: CTIA's interests have been lost in disputes between its insurers.

contract, bad faith breach of contract, breach of the implied covenant of good faith and fair dealing, and breach of fiduciary duty. Cross-Claim at ¶ 1.

CTIA based its cause of action for bad faith breach of contract on, among other things: (1) Hartford's refusal to pay anything more than 50 percent of CTIA's defense costs despite a coverage obligation to pay 100 percent; and (2) Hartford's recent refusal to pay for defense of the so-called "Headset Bodily Injury Cases" despite the fact that a defense for these cases was provided, in part, by Hartford for at least three-and-a-half years, and despite the fact that denial of these claims is against the clear weight of judicial precedent warranting coverage for those claims.[2] Id. at ¶¶ 44-52.

## STANDARD OF REVIEW

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept as true all of the cross-claimant's well-pled factual allegations and draw all reasonable inferences in favor of the cross-claimant. Alexis v. District of Columbia, 44 F. Supp. 2d 331, 336-37 (D. D.C. 1999). Dismissal is appropriate only where it "appears beyond doubt that a [cross-claimant] can prove no set of facts in support of his claim that would entitle him to relief."[3] Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957). The cross-claim is to be construed liberally in the cross-claimant's

---

[2] In 2001 and 2002, Hartford stated, through a series of reservation of rights letters, its intent to cover several of the Wireless Telephone Litigation claims. Id. at ¶¶ 21-22. It also stated its intent *not* to cover six Wireless Telephone Litigation claims. Id. at ¶¶ 23-24. In practice, however, Hartford paid a portion of defense counsel's invoices for those cases for almost four years. Id. at ¶¶ 23, 25. Only recently, when several of those cases were remanded from federal court to their original state courts and it became apparent the defense of those claims would become more costly, did Hartford abruptly change course and refuse to pay defense costs for those six claims. Id. at ¶¶ 26-27. Hartford's conduct has forced CTIA to turn to Fireman's Fund, the other insurer who had agreed to cover the loss, to pay 100 percent of the defense costs for those claims. Id. at ¶49. Hartford alleges that it will continue to pay only 50 percent of the remaining Wireless Telephone Litigation, even in the face of its 100 percent defense obligation. Id. at ¶¶ 46-48.

[3] The same standard of review applies to a motion to dismiss a cross-claim. See Ellipso, Inc. v. Mann, 2006 WL 1126814, at *1 (D. D.C. 2006) (same standards govern a motion to dismiss a counterclaim).

favor, with the cross-claimant benefiting from all inferences that can be derived from the facts alleged. Kowal v. MCI Communications Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## ARGUMENT

The tort of bad faith arises out of an insurance carrier's breach of the covenant of good faith and fair dealing implicit in all insurance contracts. See 22-136 Appleman, Insurance Law and Practice § 136.8 (1980) (tort of bad faith exists when the insurer engages in bad faith or vexatious conduct with the intent to injure the insured). The insurer's ordinary breach of the duty to defend becomes a tort when the insurer has done so in bad faith. 14 Couch on Insurance § 205:63. When a third-party insurer's breach of the insurance contract is accompanied by bad faith, either in the investigation, negotiations, or otherwise, the insurer can be liable for punitive damages. Id.; see also Appleman, Insurance Law and Practice § 136.8 (when the refusal to defend is accompanied by oppression, fraud, malice or gross negligence in disregard of the insured's rights, the insurer has breached in bad faith and punitive damages are available). In all, the District of Columbia and at least forty-one (41) states have found an independent tort cause of action for breach of the duty of good faith and fair dealing under third-party insurance policies.[4]

---

[4] See State Farm Mut. Auto. Ins. Co. v. Hollis, 554 So.2d 387, 390-91 (Ala. 1989); reh'g denied, 1989 Ala. LEXIS 813 (Sept. 22, 1989); Lloyd's & Institute of London Underwriting Companies v. Fulton, 2 P.3d 1199, 1203 (Alaska 2000); Rawlings v. Apodaca, 726 P.2d 565, 570 (Ariz. 1986) (En Banc); Farms Bureau, Ins. Co. of Ark., Inc. v. Running M Farms, Inc., --- S.W.2d ---, 2006 WL 1516455 (Ark. June 1, 2006); Crisci v. Security Ins. Co., 58 Cal. Rptr. 13 (Cal. 1967); Farmers Group, Inc. v. Trimble, 691 P.2d 1138, 1141 (Colo. 1984); Verrastro v. Middlesex Ins. Co., 540 A.2d 693, 699 (Conn. 1988) (En Banc); Stillwell v. Parsons, 145 A.2d 397, 402-3 (Del. 1958); Boston Old Colony Ins. Co. v. Gutierrez, 386 So.2d 783, 785 (Fla. 1980); Southern Gen. Ins. Co. v. Holt, 416 S.E.2d 274 (Ga. 1992); The Best Place, Inc. v. Penn. Am. Ins. Co., 920 P.2d 334 (Haw. 1996); White v. Unigard Mut. Ins. Co., 730 P.2d 1014 (Idaho 1986); County Mut. Ins. Co. v. Anderson, 628 N.E.2d 499 (Ill. App. Ct. 1993), appeal denied, 633 N.E.2d 4 (Ill. 1994); Erie Ins. Co. v. Hickman, 622 N.E.2d 515 (Ind. 1993); Kooyman v. Farm Bureau Mut. Ins. Co.,

CTIA's Cross-Claim cause of action for "bad faith breach of contract" is this exact type of cause of action. Hartford had a duty of good faith to CTIA, and it breached that duty even though it paid a portion of litigation costs in each of the Wireless Lawsuits. This breach caused injury to CTIA by exposing CTIA to liability for claims Hartford first covered, but then abruptly decided not to cover, unjustifiably eroding the limits of the Fireman's Fund policies, and ultimately causing Fireman's Fund to initiate the present lawsuit and seek recoupment of monies paid under its policies. This result was certainly foreseeable, and Hartford's conduct was the proximate cause of CTIA's injury.

1.  **The District of Columbia Recognizes an Insurer's Obligation to Act in Good Faith, and the Ramifications of Bad Faith Breach of that Duty.**

CTIA's cause of action for bad faith breach of contract is grounded in District of Columbia law. The Court of Appeals for the District of Columbia adopted the bad faith standard for insurance contracts in Continental Insurance Company v. Lynham, 293 A.2d 481 (D.C. App. 1972) ("Lynham"). In that case, the policyholder sued its insurance

---

315 N.W.2d 30 (Iowa 1982); Curry v. Fireman's Fund Ins. Co., 784 S.W.2d 176 (Ky. 1989); Cousins v. State Farm Mut. Auto. Ins. Co., 294 So.2d 272 (La. Ct. App.), cert. denied, 29 So.2d 837 (La. 1974); Fireman's Fund v. Continental Ins. Co., 519 A.2d 202 (Md. 1987); Peckham v. Continental Cas. Ins. Co., 895 F.2d 830 (1st Cir. 1990); Short v. Dairyland Ins. Co., 334 N.W.2d 384 (Minn. 1983); Aetna Casualty & Surety Co. v. Day, 487 So.2d 830, 832 (Miss. 1986); Heartland Stores, Inc. v. Royal Ins. Co., 815 S.W.2d 39 (Mo. Ct. App. 1991); Gibson v. Western Fire Ins. Co., 682 P.2d 725 (Mont. 1984); Braesch v. Union Ins. Co., 464 N.W.2d 769 (Neb. 1991), overruled on other grounds by Wortman ex rel. Wortman v. Unger, 578 N.W.2d 413, 417 (Neb. 1998); Gelinas v. Metropolitan Property & Liab. Ins. Co., 551 A.2d 962 (N.H. 1988); Rova Farms Resort, Inc. v. Investors Ins. Co., 323 A.2d 495 (N.J. 1974); Wilson v. State Farm Mut. Auto. Ins. Co., 394 S.E.2d 807, reh'g granted in part, 399 S.E.2d 133 (N.C. 1990), opinion withdrawn in part, reaff'd in part, on reh'g, 404 S.E.2d 852 (N.C. 1991); Smith v. American Family Mut. Ins. Co., 294 N.W.2d 751 (N.D. 1980); Hoskins v. Aetna Life Ins. Co., 452 N.E.2d 1315 (Ohio 1983); Townsend v. State Farm Mut. Auto. Ins. Co., 860 P.2d 236 (Okla. 1993); Eastham v. Oregon Auto. Ins. Co., 540 P.2d 364, reh'g denied, 542 P.2d 895 (Or. 1975); 42 Pa. Cons. Stat. Ann. § 8371 (1990); Bibeault v. Hanover Ins. Co., 417 A.2d 313 (R.I. 1980); Nichols v. State Farm Mut. Auto. Ins. Co., 306 S.E.2d 616 (S.C. 1983) (but not applicable to employee benefit plans); Kansas Bankers Sur. Co. v. Lynass, 920 F.2d 546 (8th Cir. 1990); Ammerman v. Farmers Ins. Exch., 430 P.2d 576 (Utah 1967); Johnson v. Hardware Mut. Cas. Co., 187 A. 788 (Vt. 1936); Tank v. State Farm Fire & Cas. Co., 715 P.2d 1133 (Wash. 1986); Shamblin v. Nationwide Mut. Ins. Co., 396 S.E.2d 766 (W. Va. 1990); Professional Office Blgds., Inc. v. Royal Indem. Co., 427 N.W.2d 427 (Ct. App. 1988); McCullough v. Golden Rule Ins. Co., 789 P.2d 855 (Wyo. 1990).

carrier for failure to pay for repairs to the policyholder's motor boat engine under a marine all-risk insurance policy. To address whether the insurer's conduct was undertaken in bad faith, the court set forth the standard for judging bad faith conduct in the District of Columbia:

> It is true that the insurer has a duty to process and pay claims expeditiously and in good faith, and that evidence as to the reasonableness of good faith of the insurer in refusing to pay is admissible . . . .However, the expression 'in good faith' has been held to refer to a lack of a good or moral intent as the basis for refusing to pay a loss. Conversely, 'bad faith' means any frivolous or unfounded refusal to pay; it is not necessary that such refusal be fraudulent. And, if probable cause is shown why payment should have been made, an inference of bad faith might thereby be raised.

Id. at 483 (citations to Appleman, Insurance Law & Practice omitted). Although the court in Lynham ultimately held that the conduct of insurance carrier "was not in bad faith" breach of its contractual duties, the Court, nonetheless, recognized as a matter of law the heightened duty insurance carriers owe their policyholders in the District of Columbia, and the standard upon which to judge whether this duty of good faith has been breached. Id.

Hartford argues that Lynham was incorrectly decided and that later decisions by the United States District Court for the District of Columbia support the proposition that CTIA's claim for bad faith breach of contract should be dismissed. A thorough analysis of cases decided after Lynham contravenes this interpretation.

Several District of Columbia cases decided after Lynham accurately elaborated on the parameters of an insurer's duty of good faith and resulting liability from breach of that duty. See Central Armature Works, Inc. v. American Motorists Ins. Co., 520 F. Supp. 283 (D. D.C. 1981) ("CAWI"); Washington v. Group Hospitalization, Inc., 585 F. Supp. 517 (D. D.C. 1984) ("Washington").

In CAWI, the dispute centered on an insurance carrier's duty to defend and indemnify its policyholder pursuant to a multi-peril liability insurance policy. There, the insurance carrier both refused to defend and refused to approve settlement of an underlying claim. 520 F. Supp. at 289. The Court in CAWI held that the facts alleged in that case justified the imposition of bad faith punitive damages because the insured refused to reveal its true position on coverage, acted in willful disregard of plaintiff's own rights under the policy in an effort to advance its own interests, and acted oppressively in attempting to coerce the plaintiff into surrendering some of its rights under the policy as a condition of participation in settlement. Id. at 295. In reaching this holding, the court reasoned that District of Columbia law holds an insurer to more stringent standards of conduct than those normally imposed in contractual disputes, stating:

> [u]nder the law of the District of Columbia, an insurer has additional obligations to its insured which subject it to more stringent standards of conduct than those normally imposed on parties to a contract. For this reason, the court believes that [the insurer] may be found liable for punitive damages.

Id. at 292.

In reaching this conclusion, the court in CAWI noted both the unique nature of insurance contracts and the rationale for a cause of action for bad faith breach of an insurance contract. The court reasoned, "where breach of contract merges with, and assumes the character of a wilful tort, calculated rather than inadvertent, flagrant, and in disregard of the obligations of trust," that such conduct justifies the imposition of punitive damages. Id. at 291. The court concluded, with significant support,[5] that such a

---

[5] See further discussion at pp. 9-10 and at n. 4, supra.

conclusion "is neither remarkable nor unprecedented in the insurance law field." Id. at 292.

In Washington, the policyholder brought an action against the providers of medical health benefits for their failure to pay medical insurance claims. 585 F. Supp. at 518. The insurers argued on a motion for summary judgment that a bad faith cause of action in the District of Columbia did not exist. The court in Washington disagreed, denying the insurers' summary judgment motion, and holding that the District of Columbia, like most other jurisdictions, recognizes an action in tort for the bad faith refusal of an insurer to pay. Id. at 520.

In reaching this holding, the court in Washington correctly noted that the District of Columbia Court of Appeals had already defined the tort of bad faith as:

> [a]ny frivolous or unfounded refusal to pay; it is not necessary that such refusal be fraudulent. And if probable cause is shown why payment should have been made, an inference of bad faith might thereby be raised.

Id. (citing Lynham). Despite the fact that the insurers argued they would not cover the plaintiff's outstanding medical bills, the court denied the insurers' motion for summary judgment, noting that genuine issues of material fact existed with respect to whether the insurers "knew or recklessly disregarded [their] lack of a reasonable basis [for coverage] when [they] denied the claim." Id. The court also refused to dismiss plaintiff's claim for punitive damages, noting that in the District of Columbia, as elsewhere, breach of contract claims justify the imposition of punitive damages "if the breach merges with and assumes the character of a willful tort." Id. at 521.

It has long since been settled in the District of Columbia that, "where a breach of contract merges with, and assumes the character of, a willful tort, calculated rather than inadvertent, flagrant, and in disregard of obligations of trust," punitive damages may be

awarded against the party in breach. See Sere v. Group Hospitalization, Inc., 443 A.2d 33, 37 (D.C. App. 1982) (wrongful refusal to pay insurance claim), cert. denied, 459 U.S. 912, 103 S. Ct. 221, 74 L. Ed. 2d 176 (1982).[6]

CTIA's Cross-Claim cause of action for "bad faith breach of contract" is this exact type of cause of action that is universally recognized in the District of Columbia. Contrary to Hartford's assertions, CTIA did not plead a cause of action for "bad faith failure to pay." As pled by CTIA, Hartford had a duty of good faith to CTIA, and it breached that duty even though it paid a portion of litigation costs in each of the Wireless Lawsuits. Cross-Claim at ¶¶ 21-23, 25, 33, 37, and 46. This breach caused injury to CTIA by exposing CTIA to liability for claims Hartford first covered, but then abruptly decided not to cover, unjustifiably eroding the limits of the Fireman's Fund policies, and ultimately causing Fireman's Fund to initiate the present lawsuit and seek recoupment of monies paid under its policies. Id. at ¶¶ 49-50. This result was certainly foreseeable, and Hartford's conduct was the proximate cause of CTIA's injury. Id. at ¶ 51.

Here, because the breach of contract alleged in CTIA's Cross-Claim merged with and assumed the character of a tort, CTIA's claim for punitive damages and its claim for bad faith breach of contract should not be dismissed.

---

[6] This rule of law has been universally followed in the District of Columbia, both in the insurance context, and outside of that context. See, e.g., State Farm Mut. Auto. Ins. Co. v. Hoang, 682 A.2d 202, 208-9 (D.C App. 1996) (uninsured motorist insurance claim); Jonathan Woodner Co. v. Breeden, 665 A.2d 929, 938 (D.C. App. 1995) (action against landlord); McIntosh v. Aetna Life Ins. Co., 268 A.2d 518, 521 (D.C. App. 1970) (claim on life insurance policy); Den v. Den, 222 A.2d 647, 648 (D.C. App. 1966) (separation agreement); Brown v. Coates, 253 F.2d 36, 39 (D.C. Cir. 1958) (action against real estate agent); Federal Fire Protection Corp. v. J.A. Jones/Tompkins Builders, Inc., 267 F. Supp. 2d 87, 91 (D. D.C. 2003) (subcontractor action against contractor); American Nat'l Red Cross v. Travelers Indem. Co. of R.I., 924 F. Supp. 304, 308 (D. D.C. 1996) (claim against general liability insurance carrier); Washington v. Government Employees. Ins. Co., 769 F. Supp. 383, 388 (D. D.C. 1991) (insurance claim) (Hartford's Motion to Dismiss, at p. 3); Washington., 585 F. Supp. at 522 (D. D.C. 1984); CAWI, 520 F. Supp. at 292 (D. D.C. 1980).

### 2. Cases Cited by Hartford are either Distinguishable or Fully Support CTIA's Claim for Bad Faith Breach of Contract.

Hartford apparently has decided that, because this is a case concerning insurance coverage, CTIA's bad faith allegations must necessarily infer a cause of action for bad faith denial of insurance. A close reading of the cases cited by Hartford indicates that this is not the case. Washington v. Government Employees Ins. Co., 769 F. Supp. 383 (D. D.C. 1991) ("GEICO"); Brand v. Government Employees Ins. Co., 2005 WL 3201322 (D. D.C. 2005) ("Brand"); American Nat'l Red Cross v. Travelers Indem. Co. of R.I., 896 F. Supp. 8 (D. D.C. 1995) ("ARC"); American Registry of Pathology v. Ohio Cas. Ins. Co., 401 F. Supp. 2d 75 (D. D.C. 2005) ("ARP").

In GEICO, the plaintiff alleged that she was injured by a hit and run driver while a passenger in an automobile owned by one person, but driven by another. 769 F. Supp. at 384. As a result of her injuries, plaintiff made a claim under the owner's insurance policy for personal injury protection ("PIP") available to passengers injured by uninsured motorists ("UIM"). Neither the Plaintiff, nor the alleged driver, had any contractual relationship with the insurer, GEICO, and when GEICO investigated the claim, it determined that the plaintiff was not even in the car when at the time of the accident, and, for that reason, was not entitled to UIM coverage. The plaintiff then sued GEICO for bad faith refusal to pay her claim. Id.

The court in GEICO refused to recognize a bad faith tort cause of action for "bad faith refusal to pay" UIM benefits to a non-insured under an automobile insurance policy, and later decisions have affirmed that no such right is conferred in this context. See Messina v. Nationwide Mut. Ins. Co., 998 F.2d 2, 4-5 (D.C. Cir. 1993) (bad faith tort claims are unavailable to persons who are "strangers" to the contract).

11

GEICO, and cases that followed it in the context of UIM automobile insurance, have no bearing on CTIA's claim for "bad faith breach of contract." Because the plaintiff in GEICO was a "stranger" to the insurance policy, the duties set forth by the District of Columbia Court of Appeals in Lynham could not extend to her. Here, CTIA is not a stranger to its insurance contracts with Hartford; it is the policyholder, and the duties set forth in Lynham, if given meaning, must extend to them. In addition, the court in GEICO recognized that it should not infer a private cause of action for bad faith when the District of Columbia Council had expressly provided other remedies. Id. at 386-7. As noted in GEICO, the District of Columbia Council has provided a remedy in the context of UIM coverage (see D.C. Code Ann. § 35-2110(c) (interest on overdue benefits) and D.C. Code Ann. § 35-2110(e)(1) (attorney's fees)), so there was no reason to extend a claim for tort based breach of the duty of good faith beyond applicable statutory remedies. Id. at 386. The holding of GEICO is inapplicable here, and should not be extended beyond the context in which it was decided.

Hartford recognizes the statutory bad faith issue raised in GEICO, but misapplies it in this case. Motion to Dismiss at p. 4. GEICO based its holdings on the fact that a statutory remedy was available in the District of Columbia with respect to uninsured motorist coverage. GEICO, 769 F. Supp. at 386. Because a statutory remedy was available, there was no need to extend the concept of bad faith damages into the context of uninsured motorist coverage. The lack of such a statutory cause of action in the present case, however, does not mean that a claim for "bad faith breach of contract" does

not exist. To the contrary, it demonstrates that an established judicial remedy must be honored, in the absence of an alternative statutory remedy.[7]

For these same reasons, Brand is also distinguishable. The plaintiff in Brand also sought to have GEICO pay under the theory of "bad faith insurance tort" for their alleged failure to pay uninsured motorist coverage. The court in Brand sided with GEICO, reasoning that, in both cases, an adequate remedy had already been adopted in the District of Columbia Code for uninsured motorist claims. Brand, 2005 WL 3201322, at *4. No such statutory remedy has been adopted outside of this narrow context, and none exist for CTIA here. In any event, Brand noted that a bad faith breach of contract claim "formed by the merger of a breach of contract with an intentional tort," such as the one asserted by CTIA, does exist in the District of Columbia. Id.

Hartford's reliance on ARC for the proposition that "District of Columbia law would not recognize a claim for bad faith breach of contract" is flawed for other reasons. Motion to Dismiss at p. 3. In ARC, the Court denied the policyholder's motion for partial summary judgment for punitive damages related to its bad faith case because it was premature, and because genuine issues of material fact precluded a final determination as to whether the insurer breached its contractual duty to defend, and whether the insurer breached this duty in a manner that would give rise to the level of a willful tort. 896 F. Supp. at 11-12. The court did not dismiss the policyholder's claim for bad faith breach of contract, or for any other bad faith claim alleged in that case, as

---

[7] Similarly, Hartford's claim that bad faith causes of action exist only if created by statute, Motion to Dismiss at p. 4, is not supported by the citations provided, or through any other insurance law concept. Hartford is correct that states such as Florida and Georgia have legislated statutory bad faith causes of action. However, both Florida and Georgia recognize an independent common law tort for breach of the duty of good faith and fair dealing under third-party insurance policies distinct from any statutory private right. See Boston Old Colony Ins. Co. v. Gutierrez, 386 So.2d 783, 785 (Fla. 1980); Southern Gen. Ins. Co. v. Holt, 416 S.E.2d 274 (Ga. 1992).

the court later bifurcated the bad-faith claim from other claims prior to trial.  American Nat'l Red Cross v. Travelers Indem. Co. of R.I., 924 F. Supp. 304 (D. D.C. 1996) ("ARC II").  Ultimately, ARC and ARC II recognized the policyholder's bad faith claims, and, therefore, neither decision supports the proposition that bad faith claims do not exist in the District of Columbia.

Finally, Hartford's reliance on ARP, 401 F. Supp. 2d 75, for the proposition that District of Columbia law does not support a "tort claim for bad faith refusal to pay" is equally flawed.  In ARP, the court held that District of Columbia law did not support a "tort claim for bad faith refusal to pay," but allowed the policyholder to proceed on its contract-based bad faith claims similar to those alleged by CTIA here.  In particular, after dismissing the insured's claim for bad faith refusal to pay, the court in ARP allowed the insured leave to amend the complaint to include a cause of action for breach of the duty of good faith and fair dealing and to seek punitive damages on the theory that the insurer's conduct merged with and assumed the character of a tort.  Id. at 79-80.

In conclusion, each case cited by Hartford discussing "bad faith denial of insurance coverage" or "bad faith refusal to pay" deals with defendant insurers who immediately denied coverage and never provided a defense for the insureds.  Hartford has failed to cite *any law* that forecloses tort liability once the insurer undertakes the defense, in any capacity, on behalf of the insured.  Moreover, the validity of a claim for "bad faith refusal to pay" or "bad faith denial of claim" is irrelevant, because CTIA's Cross-Claim does not allege such causes of action.

### 3. Maryland Law, Relied Upon by Hartford, Compels the Same Result.

In support of its claim that the tort of "bad faith breach of insurance contract" is not recognized in the District of Columbia, Hartford relies upon Maryland law.  Hartford

14

correctly states that Maryland law is "the source of the [District of Columbia's] common law and an especially persuasive authority when the District's common law is silent." Motion to Dismiss at 3-4 (quoting Napoleon v. Heard, 455 A.2d 901, 903 (D.C. App. 1983)). However, Maryland law not only upholds CTIA's claim for bad faith breach of contract, but also supports a tort-based "bad faith denial of insurance" claim.

Under Maryland law, tort liability can attach to an insurance contract when an insurer covers a claim but then violates the appropriate standard of care. In Mesmer v. Maryland Auto. Ins. Fund, 725 A.2d 1053, 1059 (Md. 1999), the Court of Appeals of Maryland held that a tort action can be maintained when the insurer "has proceeded on the basis that a contractual obligation exists, has undertaken that obligation, and has undertaken it in violation of the appropriate standard of care." Similarly, in Kremen v. Maryland Auto. Ins. Fund, 770 A.2d 170, 176 n.10 (Md. 2001), Maryland's high court held that an insured's bad faith claim sounded in tort, because the insurer assumed the responsibility of providing a defense. Maryland, therefore, draws a distinction between insurers who deny coverage and do nothing versus those who agree to cover and then proceed to act wrongly or negligently; the latter case is an actionable, independent tort. Matyas v. Suburban Trust Co., 263 A.2d 16, 18-19 (Md. 1970); Otis Elevator Co. v. Embert, 84 A.2d 876, 881-82 (Md. 1951); East Coast Freight Lines v. Consolidated Gas Co., 50 A.2d 246, 254 (Md. 1946); Consolidated Gas Co. v. Connor, 78 A. 725, 729 (Md. 1910).

Hartford's allegation that that the tort of bad faith has been rejected under Maryland law, is, at best, misleading. The sole Maryland case Hartford cites in support of this argument, McCauley v. Suls, 716 A.2d 1129, 1134 (Md. Ct. Spec. App. 1998),

holds only that Maryland law does not recognize the tort of bad faith denial of insurance in the *first-party* context.  Hartford's policies are *third-party* policies responding to *third-party* lawsuits.  McCauley explicitly acknowledges that "Maryland law recognizes a cause of action for bad faith in a third-party context . . . ." Id. at 1133 (citing Fireman's Fund Ins. Co. v. Continental Ins. Co., 519 A.2d 202 (Md. 1987).

In the present case, Hartford undertook a contractual obligation under its policies to defend CTIA for the past four years.  When doing so became too costly, Hartford then retroactively terminated coverage.  CTIA's Cross-Claim clearly alleges that Hartford hired, paid for, and directed CTIA's legal defense for up to four years before it retroactively terminated coverage.  Cross-Claim at ¶¶ 37, 46.  Although Hartford acknowledged that its policies "were responsive," see id. at ¶ 46, Hartford "has recklessly abused its position as CTIA's insurer to pay only what it wants to pay, regardless of its contractual or legal obligations." Id. at ¶ 48.

Accordingly, an application of Maryland law, which Hartford admits is persuasive, compels the conclusion that CTIA's claim for bad faith breach of contract is valid and should not be dismissed.

## CONCLUSION

CTIA's Cross-Claim sufficiently states a claim for bad faith breach of contract under District of Columbia law because Hartford's conduct in breaching its duty to defend CTIA merged with and assumed the character of a willful tort, which gives rise to the cause of action alleged.  This cause of action has been universally recognized in the District of Columbia, and CTIA is not aware of any current District of Columbia

authority that could be read to support dismissal of its bad faith breach of contract claim. CTIA has not alleged the so-called tort of "bad faith refusal to pay" in its Cross-Claim.

For the foregoing reasons, Cross-Plaintiff CTIA requests that the Court deny Cross-Defendant Hartford's Motion to Dismiss Count III of CTIA's Cross-Claim in the entirety. In the alternative, CTIA requests leave to amend its Cross-Claim consistent with District of Columbia law and any ruling of this Court.

Dated: August 1, 2006

Respectfully Submitted,

_____/s/ Ross E. Eisenberg_____
Sanford M. Saunders (D.C. Bar No. 376098)
Ross E. Eisenberg (D.C. Bar No. 489045)
GREENBERG TRAURIG LLP
800 Connecticut Ave., N.W.
Suite 500
Washington, DC 20006
(202) 331-3100 (phone)
(202) 331-3101 (fax)

Of Counsel:

Mark E. Miller (D.C. Bar No. 445743)
GREENBERG TRAURIG LLP
800 Connecticut Ave., N.W.
Suite 500
Washington, DC 20006
(202) 331-3100 (phone)
(202) 331-3101 (fax)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| FIREMAN'S FUND INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>    v.<br><br>CELLULAR TELECOMMUNICATIONS AND INTERNET ASSOCIATION, THE HARTFORD CASUALTY INSURANCE COMPANY and TWIN CITY FIRE INSURANCE COMPANY,<br><br>        Defendants. | Case No.: 1:06-CV-00854 |

**PROPOSED ORDER**

This matter having come before this Court on a Motion to Dismiss by Cross-Defendants Hartford Casualty Insurance Company and Twin City Fire Insurance Company (collectively "Hartford"),

**IT IS ORDERED** that Cross-Defendant Hartford's Motion to dismiss is hereby **DENIED**.

_____
United States District Judge

DATED: _____