UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FIREMAN'S FUND INSURANCE CO.,

Plaintiff,

v.

CTIA -- THE WIRELESS ASS'N, et al.,

Defendants.

Civil Action No. 06-854 (JDB)

**MEMORANDUM OPINION & ORDER**

Pending before the Court in this insurance-coverage dispute is a motion to dismiss a claim for bad-faith breach of contract. The resolution of the motion turns on whether the District of Columbia recognizes a tort claim for bad-faith breach of contract, asserted by Cellular Telecommunications and Internet Association ("CTIA") against its insurer, Hartford Casualty Insurance Company and Hartford's subsidiary Twin City Fire Insurance Company (collectively, "Hartford"). Having reviewed the case law and carefully considered the submissions of the parties, the Court concludes that a claim for bad-faith breach of contract is not recognized in the District of Columbia. Accordingly, the Court will grant Hartford's motion to dismiss Count III of CTIA's cross-claim and strike CTIA's request for punitive damages.

**BACKGROUND**

This civil action arises out of Hartford's alleged obligation to defend CTIA under its comprehensive general liability and umbrella liability insurance policies. CTIA, which has insurance policies with both Hartford and Fireman's Fund Insurance Company ("Fireman's Fund"), is a trade association and the international organization that represents the interests of the

-1-

wireless communications industry. Fireman's Fund Compl. ¶ 25. CTIA is a defendant in several lawsuits (collectively, the "cellular telephone litigation") alleging that it was the continued practice of the cellular telephone industry to misrepresent the safety of cellular telephones to the public. Id. ¶ 26; CTIA Answer ¶ 1. A number of these suits (the "brain cancer cases") involve plaintiffs who allege that they have developed brain cancer as a result of their use of cellular telephones. CTIA Cross-Claim ¶ 11. CTIA alleges that Hartford has a contractual obligation to pay one-hundred percent of the defense costs for the brain cancer cases, but that Hartford has in fact only been paying fifty percent. Id. ¶ 23. The remaining fifty percent of the defense costs have been advanced to CTIA by its other insurer, Fireman's Fund, subject to a reservation of rights. Id. ¶ 49; see also Fireman's Fund Compl. ¶ 2.

The remainder of the cases comprising the cellular telephone litigation, referred to by the parties as the "headset cases," are brought by plaintiffs alleging biological injuries other than brain cancer resulting from the use of cellular telephones. Id. ¶ 11. Although Hartford initially stated in 2002 that it would deny coverage to CTIA for defense of the headset cases, in practice it paid fifty percent of the defense costs for three-and-a-half years. Id. ¶¶ 24, 25. Again, the remaining fifty percent of the costs were advanced to CTIA by Fireman's Fund. Id. ¶ 49. Hartford has since refused to pay any further defense costs in the headset cases on the grounds that the plaintiffs in those cases have not alleged "bodily injury" as required under CTIA's policy. Id. ¶¶ 26-28. Fireman's Fund is now advancing the full amount of defense costs in the headset cases. Id. ¶ 49; see also Fireman's Fund Compl. ¶ 43.

The original complaint in this case was filed by Fireman's Fund in an attempt to recoup the defense costs that it had already paid to CTIA and to win a declaratory judgment stating that it

has no obligation to defend any of the cellular telephone litigation. CTIA Cross-Claim ¶ 50. CTIA filed both a counter-claim against Fireman's Fund and a cross-claim against Hartford. The cross-claim asserts four causes of action: (I) breach of contract, (II) breach of the implied covenant of good faith and fair dealing, (III) the bad-faith breach-of-contract claim at issue here, and (IV) a request for a declaratory judgment. Id. ¶¶ 31-57. In its prayer for relief, CTIA has also requested, "with respect to Count III, an order requiring Hartford to pay punitive damages and attorneys' fees in an amount the Court deems appropriate." Id. Prayer for Relief ¶ C. Hartford responded by filing a motion to dismiss the claim for bad-faith breach of contract and to strike the request for punitive damages.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure will not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Haynesworth v. Miller, 820 F.2d 1245, 1254 (D.C. Cir. 1987). All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Dura Pharmaceuticals, Inc. v. Broudo, 544 U.S. 336, 346 (2005) (quoting Conley, 355 U.S. at 47). "Given the Federal Rules' simplified standard for pleading, '[a] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).

Under Rule 12(b)(6), the plaintiff's factual allegations must be presumed true and should

be liberally construed in his or her favor.  Leatherman v. Tarrant County Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v. Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979).  The plaintiff must be given every favorable inference that may be drawn from the allegations of fact.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000).  However, "the court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint.  Nor must the court accept legal conclusions cast in the form of factual allegations." Kowal v. MCI Commc'n Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994); see also Domen v. Nat'l Rehab. Hosp., 925 F. Supp. 830, 837 (D.D.C. 1996) (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

## ANALYSIS

The question now before the Court is whether a plaintiff may state a cause of action sounding in tort for bad-faith breach of an insurance contract under District of Columbia law.  There is no binding authority that resolves the issue.  See Messina v. Nationwide Mut. Ins. Co., 998 F.2d 2, 4 (D.C. Cir. 1993) ("The D.C. Court of Appeals has not squarely addressed the question whether bad faith denial of an insurance claim constitutes an independent tort under D.C. law."); State Farm Mut. Auto. Ins. Co. v. Hoang, 682 A.2d 202, 208 (D.C. 1996) ("[E]ven if this court recognized a separate tort of bad faith denial of an insurance claim, an issue we do not decide here, Hoang did not plead that cause of action." (emphasis added)).  On a number of occasions, however, this Court has explicitly refused to recognize such a bad-faith claim, beginning most significantly with Judge Flannery's decision in Washington v. Gov't Employees Ins. Co., 769 F. Supp. 383 (D.D.C. 1991) ("GEICO").

The plaintiff in GEICO brought suit against an insurer that denied her claim for injuries sustained in an accident caused by an uninsured motorist. 769 F. Supp. at 384. The district court granted summary judgment for defendant on plaintiffs' claim for bad-faith breach of contract, holding that the tort is not recognized in the District of Columbia. Id. at 386-87. First, the court declined to follow the only prior decision that had recognized in the District of Columbia a tort claim for bad-faith breach of contract, see Washington v. Group Hospitalization, Inc., 585 F. Supp. 517 (D.D.C. 1984), because that decision was based on a misreading of an earlier District of Columbia decision, Cont'l Ins. Co. v. Lynham, 293 A.2d 481, 482 (D.C. 1972). See GEICO, 769 F. Supp. at 386. Judge Flannery also noted that the District of Columbia code, unlike the codes of other states, does not provide a statutory cause of action against an insurer based on a bad-faith refusal to pay a claim, even though it does provide certain remedies against an insurer that fails to pay for injuries caused by uninsured motorists. Id. The court invoked the maxim "the mention of one thing implies the exclusion of another" to decline to recognize in the common law a tort for bad-faith breach of contract that was not recognized by statute. See id.; see also Am. Registry of Pathology v. Ohio Cas. Ins. Co., 401 F. Supp. 2d 75, 78-79 (D.D.C. 2005) (stating that lack of statutory cause of action in the District of Columbia for bad-faith refusal to pay an insurance claim is "particularly significant because the D.C. Code has provided for other remedies in this arena, yet has remained silent on this particular issue"). Finally, Judge Flannery cited to other cases, including one from the District of Columbia Superior Court, that refused to recognize a tort for bad-faith breach of contract. See GEICO, 769 F. Supp. at 387 (citing Wash. Hosp. Ctr. Corp. v. Smith, Nos. 746-85 & 815-83 (D.C. Super. Ct. Mar. 23, 1987) ("The court rules that District of Columbia law does not recognize a cause of action of bad faith insurance claim denial between

insurer and insured, and does not recognize a tort claim for alleged breach of contract.")).

Three decisions issued since GEICO have declined to recognize a tort for bad-faith breach of contract; all three have relied upon Judge Flannery's "sound reasoning." Am. Registry of Pathology, 401 F. Supp. 2d at 79; see also Brand v. Gov't Employees Ins. Co., No. 04-01133, 2005 WL 3201322, at *5 (D.D.C. Nov. 29, 2005) (relying on persuasiveness of analysis in GEICO); Am. Nat'l Red Cross v. Travelers Indem. Co. of R.I., 896 F. Supp. 8, 12 n.4 (D.D.C. 1995) ("ARC II") (same). One of these cases involved facts remarkably similar to those in the action now before the Court. In ARC II, the American Red Cross ("ARC") alleged that its insurer stopped paying the defense costs for litigation arising out of ARC's use of HIV-contaminated blood after having done so for seven years. See id. at 10. ARC sought punitive damages against the insurer based on a "bad faith claim under a tort cause of action," but the district court, persuaded by GEICO, held that no such cause of action exists in the District of Columbia. Am Nat'l Red Cross v. Travelers Indem. Co. of R.I., 924 F. Supp. 304, 307 n.5 (D.D.C. 1996) ("ARC III").

CTIA argues nonetheless that its "bad faith breach of contract" claim is grounded in District of Columbia law. It relies primarily on the decision of the D.C. Court of Appeals in Cont'l Ins. Co. v. Lynham, 293 A.2d 481 (D.C. 1972), which it characterizes as adopting a "bad faith standard for insurance contracts," see CTIA's Opp'n to Hartford's Mot. to Dismiss ("CTIA's Opp'n") at 6-7, and on Washington v. Group Hospitalization, Inc., 585 F. Supp. 517 (D.D.C. 1984), which cites Lynham for the proposition that the District of Columbia recognizes a cause of action in tort for bad-faith refusal of an insurer to pay. Lynham, however, dealt only with whether the defendant insurer's conduct was in bad faith, vexatious, or wanton such that the plaintiff was

entitled to an award of attorneys' fees; in other words, the court addressed bad faith with respect to the conduct necessary to award attorneys' fees, and not to establish a tort cause of action based on an insurer's bad-faith conduct.  See 293 A.2d at 483.  This Court therefore agrees with GEICO and its progeny that Lynham does not support a cause of action for bad-faith breach of contract, and accordingly finds CTIA's reliance on Group Hospitalization equally unpersuasive.  See GEICO, 769 F. Supp. at 386 (reviewing Lynham); Am. Registry of Pathology, 401 F. Supp. 2d at 78 (same).

The result reached in GEICO is also consistent with Maryland law, which is the basis for the District of Columbia's common law and therefore is "an especially persuasive authority when the District's common law is silent," Napolean v. Heard, 455 A.2d 901, 903 (D.C. 1983).  Courts in Maryland "ha[ve] not recognized a bad faith claim against an insurer in a first-party context, that is, holding an insurer liable in tort for failing to pay [a] . . . claim." McCauley v. Suls, 716 A.2d 1129, 1133 (Md. Ct. Spec. App. 1998); see also Brand, 2005 WL 3201322, at *4 (quoting McCauley).  The Maryland Court of Appeals has found that an insurer's allegedly mistaken refusal to provide a defense gives rise to an action sounding in contract rather than tort.  See, e.g., Mesmer v. Md. Auto. Ins. Fund, 725 A.2d 1053, 1061 (Md. 1999) ("We have repeatedly indicated that the obligation to defend . . . [is] entirely contractual."); Vigilant Ins. Co. v. Luppino, 723 A.2d 14, 17 (Md. 1999) ("An insurer's obligation to defend is contractual, and, therefore, a cause of action for breach of the duty to defend sounds in contract.").  And while Maryland law does recognize a bad-faith tort based on an insurer's failure to settle a third-party claim, see Kremen v. Md. Auto. Ins. Fund, 770 A.2d 170, 177 (Md. 2001) (finding insurer liable for bad-faith failure to settle after undertaking defense), CTIA does not assert such a claim here.  Instead, CTIA alleges

that Hartford has refused to pay defense costs on the allegedly improper ground that the litigation is not covered under CTIA's policy. This is the quintessential failure-to-defend claim that Maryland does not recognize as a tort.

The Court finds unpersuasive CTIA's attempt to fit its claim into existing Maryland law. CTIA apparently concedes that a tort does not lie in cases in which an insurer refuses to defend or pay litigation costs from the outset. CTIA's Opp'n at 15. It argues, however, that Maryland distinguishes between insurers who deny coverage from the outset and those who (like Hartford, allegedly) initially agree to pay for the defense and then deny coverage. See id. CTIA contends that the latter course of action gives rise to a tort claim. An insurer's violation of a standard of care while undertaking a defense has been recognized as a tort in Maryland, but only in situations involving a bad-faith failure to settle a claim within policy limits. See, e.g., Mesmer, 725 A.2d at 1064. Maryland bases this tort on a fiduciary duty that arises when an insurer "has the exclusive control of settlement and defense of any claim or suit against the insured" and then violates that duty by improperly handling the settlement or defense. Id. at 1063. This Court is not aware of any Maryland cases allowing a tort cause of action based on a failure to pay defense costs, whether in full or in part.[1] Thus, CTIA's "bad faith breach of contract" claim, which alleges a

---

[1] This silence makes sense. The recognition of a tort claim predicated on a simple failure to pay defense costs would conflict with Maryland's view that the duty to pay defense costs arises from the insurance contract itself. See Mesmer, 725 A.2d at 1061. Conversely, a claim for bad-faith failure to settle can only be brought in tort because an insurance contract "makes no promise that [the insurer] will settle [a] claim within policy limits." Id. at 1065. Accordingly, when an insurer fails to pay for a defense, it is only obligated to pay damages in the amount of attorneys' fees and costs -- contract damages -- and not the amount of the excess judgment, which would be caused by a failure to properly undertake the actual defense. See, e.g., id. at 1064-65; Sherwood v. Hartford, 698 A.2d 1078, 1083 (Md. 1997) (noting that "the promise to defend is in the nature of litigation insurance, 'protecting the insured from the expense of defending suits brought against him,'" as distinguished from the "amount of any judgment rendered in the action").

failure to pay defense costs, would be cognizable only as a contract claim under Maryland law.

CTIA's remaining arguments in support of its tort claim for bad-faith breach of contract are also unpersuasive.  First, CTIA argues that it will be left without a remedy unless it can state a bad-faith tort claim.  See CTIA's Opp'n at 13 & n.7.  Although the lack of an express statutory remedy for the allegations in this case does not prevent the Court from recognizing a common-law remedy, it is informative that the District of Columbia has created statutory remedies for breach of an insurance contract in some circumstances but not others.  See, e.g., Am. Registry of Pathology, 401 F. Supp. 2d at 78-79 (noting that "the D.C. Code has provided for other remedies in this arena, yet has remained silent on this particular issue").  It also goes without saying that CTIA has pled two other causes of action based on the same allegations, namely breach of contract and breach of the implied covenant of good faith and fair dealing.  The Court therefore does not agree that the lack of a statutory cause of action for bad-faith breach of contract requires the recognition of a new common-law remedy.  Second, this Court fails to see a meaningful distinction (as urged by CTIA) in this context between a claim for bad-faith breach of contract based on a refusal to pay defense costs and a bad-faith action based on a refusal to pay an insured's claim.  See CTIA Opp'n at 10, 14.  Both forms of the proposed tort action are based on an alleged failure to abide by the terms of the insurance contract.  See Lee R. Russ & Thomas F. Segalia, Couch on Insurance § 205:1, at 205-9 (3d ed. 1999) ("As the duty to defend the insured is ordinarily set forth explicitly in the contract, breach of the duty to defend violates a contractual obligation."); id. § 207:1, at 207-9 ("Apart from such statutes [establishing penalties for insurer's delay or refusal to pay], an insured may bring a breach of contract action against an insurer which delays or refuses to pay benefits due under the policy.").

In a somewhat different vein, CTIA tries to distance itself from the GEICO line of cases by characterizing its third cause of action not as a tort, but instead as a contract-based claim that assumes the character of a willful tort.[2]  District of Columbia law is clearly established on one point:  "Where the basis of a complaint is . . . a breach of contract, punitive damages will not lie, even if it is proved that the breach was willful, wanton, or malicious."  Sere v. Group Hospitalization, Inc., 443 A.2d 33, 37 (D.C. 1982).  "The rule in this jurisdiction is that only where an alleged breach of contract merges with, and assumes the character of, a willful tort will punitive damages be available."  Id. (internal quotation marks omitted); see also Den v. Den, 222 A.2d 647, 648 (D.C. 1966) ("While there are cases in this jurisdiction indicating that punitive damages may be allowed for breach of contract where the acts of the breaching party are malicious, wanton, oppressive or with criminal indifference to civil obligations, it appears that such acts must, as was said in Brown [v. Coates, 253 F.2d 36, 39 (D.C. Cir. 1958)], merge with and assume the character of a willful tort.").  In Sere, for example, the plaintiffs alleged that a breach of contract assumed the character of the tort of intentional infliction of emotional distress ("IIED").  See id.  The D.C. Court of Appeals, reviewing the evidence in the light most favorable to the plaintiffs, found that the breach did not satisfy the elements of the IIED tort and affirmed the directed verdict against the plaintiffs.  Id. at 37-38.

The District of Columbia's exception to the general prohibition on punitive damages for contract claims applies most often if the breach of contract merges with an independent, recognized tort, such as IIED or fraud.  See, e.g., Allen v. Yates, 870 A.2d 39, 49 (D.C. 2005)

---

[2]The Court understands CTIA's argument to mean that the breach-of-contract claim asserted under Count I and the bad-faith breach-of-contract claim asserted under Count III are essentially identical except as to the damages requested under each count.

(cautioning, in case where "claims of fraud and of fraudulent transfer are closely related to the breach of the underlying contract," that upon remand, an "<u>intentional</u> breach of contract[,] i.e., here, a breach allegedly accompanied by a bad motive and by deceptive conduct, would sustain an award of punitive damages only if the breaching party's conduct assumes the character of a willful tort"); <u>GEICO</u>, 769 F. Supp. at 388 (allowing plaintiff to amend complaint to add IIED claim based on denial of insurance claim and reserving decision as to whether denial of claim rose to level of willful tort).  Hence, CTIA should not be allowed to import through a standard breach-of-contract claim the very tort that is otherwise unrecognized in the District of Columbia, i.e, the tort of bad-faith breach of an insurance contract.  See <u>Brand</u>, 2005 WL 3201322, at *5 (dismissing punitive-damages request attached to breach-of-contract action because bad-faith refusal to pay insurance claim is not a tort recognized under D.C. law); <u>ARC III</u>, 924 F. Supp. at 309 (stating that "ARC's bare assertion of bad faith does not, in and of itself, justify sending the punitive damages issue to the jury"); <u>McIntosh v. Aetna Life Ins. Co.</u>, 268 A.2d 518, 521 (D.C. 1970) (affirming denial of punitive damages where plaintiff did not demonstrate that breach of a contractual obligation to pay insurance claim assumed the character of a tort and stating that "this case falls squarely within the rule that there is no recovery for a malicious breach of contract"); <u>Couch on Insurance</u> § 207:74, at 207-90 & n.54 (noting that D.C. does not allow punitive damages "merely by virtue of willful failure or delay in making payments due under an insurance contract" and observing that, in such a jurisdiction, "the insured must show . . . that the conduct of the insurer rose to the level of deliberate, overt, and dishonest dealings constituting an independent tort").

      One case in this district, however, allowed punitive damages on a contract claim that

assumed the character of a tortious bad-faith breach of insurance contract.[3]  In Cent. Armature Works, Inc. v. Am. Motorists Ins. Co., 520 F. Supp. 283 (D.D.C. 1981), the district court held that an insurer could be liable for punitive damages on a contract action for failure to defend "even if its conduct did not amount to fraud or misrepresentation" because, under D.C. law, the relationship between an insurer and its insured is "subject . . . to more stringent standards of conduct than those normally imposed on parties to a contract."  520 F. Supp. at 292.  The district court extrapolated this higher standard of conduct from the following passage in Lynham:  "It is true that the insurer has a duty to process and pay claims expeditiously and in good faith, and that evidence as to the reasonableness or good faith of the insurer in refusing to pay is admissible in an action for attorney's fee [sic] based on vexatious refusal to pay."  Lynham, 293 A.2d at 483; see also Cent. Armature Works, 520 F. Supp. at 292 (noting that "[n]either party has presented any authority from the District of Columbia which establishes the relationship between an insurer and its insured," but that "[s]ome indication that insurers have additional obligations appears in [Lynham]").[4]

---

[3] CTIA argues that the district court in ARC also recognized an insured's bad-faith claim.  CTIA Opp'n at 13-14.  It is not clear from the three published opinions in ARC whether the insured actually pled an independent bad-faith claim.  The court explicitly stated, however, that "no cause of action in tort exists against an insurer for bad faith refusal to provide insurance coverage" and made clear that "the only cause of action that could potentially give rise to a punitive damages claim in this case is grounded in contract."  ARC III, 924 F. Supp. at 307 n.5.  Furthermore, the court took pains to explain that it "d[id] not intend this Opinion to state that evidence of Traveler's alleged bad faith automatically will be submitted to the jury for their consideration of punitive damages," and cited the D.C. rule that a contract claim must merge with and assume the character of a willful tort.  See id. at 308.  This Court therefore does not read ARC to state that punitive damages can be predicated on a bad-faith breach claim.

[4] Cent. Armature Works found additional support for punitive damages in the fact that, "like the real estate broker in Brown v. Coates, the insurance carrier is an industry regulated in the public interest by a comprehensive statutory scheme."  Id. at 292 (citing Brown, 253 F.2d at 39).

There is some support in District of Columbia law for the notion that punitive damages can be awarded for a breach of a fiduciary duty.  See Wagman v. Lee, 457 A.2d 401, 404 (D.C. 1983) ("Although punitive damages generally are not recoverable for breach of contract, this rule is inapplicable if there exists an independent fiduciary relationship between the parties.").[5]  See generally 11 Corbin on Contracts § 59.2, at 553 (rev. ed. 2005) ("[Punitive damages] also are awarded where the breach involves the malicious or wanton violation of a fiduciary duty even where the violation does not constitute an independent tort.").  This Court is not convinced, however, that in the District of Columbia the duty to defend gives rise to a fiduciary duty between an insurer and insured such that punitive damages may be awarded for its breach.  As a general matter, "[m]ost States treat the relationship between insurer and insured as a matter of contract, not a fiduciary relationship," John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank, 510 U.S. 86, 119 (1993), and both D.C. and Maryland view the duty to defend as arising from the

---

The comprehensive nature of D.C.'s insurance regulation cuts both ways; although the industry is highly regulated, the D.C. legislature has not found it appropriate to create special damages for bad-faith breach of insurance contracts, even though special remedies for such breaches do exist in other jurisdictions.  See generally Couch on Insurance § 204:44 (discussing statutory provisions for breaches generally); id. § 205:103 (reviewing statutory penalties for failure to defend).  Furthermore, Brown referenced a statute specifically requiring that the "real estate business in the District of Columbia be conducted by persons with 'a good reputation for honesty, truthfulness, fair dealing, and competency.'"  Brown, 253 F.2d at 39 (quoting D.C. Code § 45-1405 (1951)); see also D.C. Code § 42-1703 (2001) (stating purposes of real-estate regulation include "protect[ing] the public against incompetence, fraud and deception in real estate transactions" and "establish[ing] a Real Estate Guaranty and Educational Fund to compensate victims of unlawful real estate practices").  There is no equivalent statute with respect to insurance providers.

[5]It is unclear whether the breach of fiduciary duty itself constitutes an independent tort or instead obviates the need for an independent tort altogether.  In Wagman, the court found that the appellee's claim "sounded not in contract but in tort based upon the special relationship between escrow agent and depositor," and upheld the trial court's finding of breach of fiduciary duty "notwithstanding any contractual obligations" that may have existed between the parties.  See Wagman, 457 A.2d at 404.

insurance policy, see, e.g., Stevens v. United Gen. Title Ins. Co., 801 A.2d 61, 66 (D.C. 2002) (applying contract principles to determine whether duty to defend exists); Mesmer, 725 A.2d at 1061.  Furthermore, the breach of the duty to pay defense costs does not involve the type of heightened conflict of interest between insurer and insured that gives rise to a fiduciary duty in other insurance situations -- for example, when an insurer is involved in settlement of a third-party claim or directs the actual course of the defense.  See Mesmer, 725 A.2d at 1063 ("It is when the insurer undertakes to provide a defense that it has the exclusive control . . . of . . . settlement and defense of any claim or suit against the insured, and it is at this stage that the potential, if not actual, conflict of interest giving rise to a fiduciary duty comes into being." (alterations in original; internal quotation marks omitted)); see also Wagman, 457 A.2d at 404 (citing Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 323 A.2d 495, 511 (N.J. 1974), for proposition that "insurer's wrongful failure to settle breaches both contractual and fiduciary obligations" (emphasis added)).  This Court therefore disagrees with Cent. Armature Works that the observations in Lynham support punitive damages for a bad-faith breach of an insurance contract (in particular, breach of the duty to pay defense costs), especially given that Lynham, as explained above, simply does not justify recognizing an independent tort of that nature.

      In any event, the Court need not further address the tension created by Cent. Armature Works because CTIA has alleged nothing more than a willful breach of contract.  Specifically, CTIA alleges that Hartford has refused to cover anything more than half of the defense costs for the cellular telephone litigation, and more recently has refused all coverage in the headset cases.  CTIA Cross-Claim ¶¶ 46-47.  With respect to the bad-faith breach-of-contract claim, the cross-complaint states that "[g]iven Hartford's clear obligation in its policies to fund 100 percent of the

defense costs in the Underlying Litigation, Hartford has recklessly abused its position as CTIA's insurer to pay only what it wants to pay, regardless of its contractual or legal obligations." Id. ¶ 48. CTIA's use of the word "recklessly" -- itself a legal conclusion -- does not alone convert its routine breach-of-contract action into a claim merging with and assuming the character of a willful tort.

In addition to being a questionable source of law, Cent. Armature Works is also distinguishable on its facts. The evidence in Cent. Armature Works supported a finding that the insurer had, among other things, "dealt with its insured in bad faith by refusing to reveal its true position on coverage" and "acted oppressively in attempting to coerce the plaintiff into surrendering some of its rights under the policy as a condition of participation in the settlement." See 520 F. Supp. at 295. Even viewing the allegations in this case in the light most favorable to CTIA, Hartford's actions were not coercive or deceptive. Hartford has allegedly never paid the full defense costs for any of the cellular telephone litigation. And while Hartford did pay half of the headset defense costs for several years before declining coverage altogether -- allegations that on their own might suggest an effort by Hartford to conceal its true position with respect to that subset of claims -- CTIA also alleges that Hartford disclaimed coverage for the headset cases from the outset, see CTIA Cross-Claim ¶ 24. In short, there is nothing in the cross-complaint to place this case outside the District of Columbia's general "rule that there is no recovery [of punitive damages] for a malicious breach of contract." McIntosh, 268 A.2d at 521.

## CONCLUSION

The Court finds, on the basis of GEICO and its progeny, and in light of Maryland law, that the District of Columbia would not recognize a tort cause of action for bad-faith breach of an

insurance contract. Count III of CTIA's cross-claim against Hartford, asserting a tort claim for bad-faith breach of contract and seeking punitive damages, will therefore be dismissed. Furthermore, the Court concludes that CTIA cannot request punitive damages for its traditional breach-of-contract claim.

## ORDER

Upon consideration of [14] Hartford's motion to dismiss Count III of the cross-claim asserted against Hartford by CTIA, and the entire record herein, it is hereby

**ORDERED** that the motion is **GRANTED**; it is further

**ORDERED** that Count III is **DISMISSED**; and it is further

**ORDERED** that paragraph C of the prayer for relief in CTIA's cross-claim is stricken.

**SO ORDERED**.

                /s/ John D. Bates
                JOHN D. BATES
                United States District Judge

Dated: February 13, 2007